In the United States District Court
for the Southern District of Texas,
Houston Division

| | |
|---|---|
| Mark Flora,<br><br>    *Plaintiff*,<br><br>v.<br><br>Transocean Drilling (USA), Inc., *et al*,<br><br>    *Defendants*. | Civil Action No:<br>4:19-cv-02328<br>Jury Requested |

**Defendant Grand Isle Shipyard, LLC's
Motion for Summary Judgment**

To the Honorable Judge David Hittner:

Defendant Grand Isle Shipyard, LLC ("GIS") files its Motion for Summary Judgment. In support of same, GIS would show unto the Honorable Court as follows:

1. **Summary of the Argument**

GIS did not breach any duty to Plaintiff, nor are Plaintiff's injuries foreseeable at the time of GIS's alleged actions. Therefore, GIS cannot be found to be negligent. Furthermore, Plaintiff has not pleaded nor developed any facts that would hold GIS responsible for negligence *per se* or gross negligence. Therefore, GIS is entitled to

judgment as a matter of law, and all claims against it must dismissed with prejudice.

## 2. Introduction and Background Facts

Plaintiff sued Defendants[1] for personal injury damages he claims he allegedly sustained while loading cargo off a vessel, the *Maggie A*, on or about May 25, 2017.[2] Plaintiff has brought claims under theories of negligence, negligence *per se*, and gross negligence pursuant to the Jones Act, 46 U.S.S. 688 *et seq.*, and "general maritime law and the common law."[3] Plaintiff also alleges that the *M/V Maggie A* was not seaworthy at the time of the incident.[4] Defendants timely removed the matter on an independent federal question basis for jurisdiction, the

---

[1] Defendants initially were Transocean Drilling (USA) Inc.; Seadrill Gulf Operations Neptune LLC; Gulf Logistics LLC; Gulf Logistics Operating, Inc.; Gulf Logistics Services, LLC; and Grand Isle Shipyard, LLC. Transocean and Gulf Logistics Services, LLC, have never made an appearance in this matter, and Seadrill was dismissed with prejudice (*See* ECF No. 22). The current active defendants are GIS; Gulf Logistics LLC and Gulf Logistics Operating, Inc. (collectively "Gulf Logistics"); and LLOG Exploration Offshore, LLC ("LLOG").

[2] Although Plaintiff's First Amended Complaint (ECF No. 25) indicates the date as May 24, 2017, Plaintiff's deposition testimony and documentation of the incident indicate it was actually May 25, 2017.

[3] *See* Plaintiff's First Amended Complaint (ECF No. 25) at ¶ 8.

[4] *Id*. at ¶ 14.

Outer Continental Shelf Lands Act.[5]

In May 2017, Plaintiff was employed by Gulf Logistics Operating, Inc., as a deckhand assigned to the *M/V Maggie A*, although he was a qualified captain.[6] According to the logs of the *M/V Maggie A*, the vessel was at the "LLOG dock" in Fourchon, Louisiana, between 9:45 a.m. on May 24, 2017, and 12:30 a.m. on May 25, 2017.[7] Plaintiff has alleged that the "LLOG dock" is actually in the GIS' shipyards.[8]

Even if true, this would be GIS's only connection to this matter; Plaintiff only allegations against GIS is that it improperly loaded the *Maggie A*, which purportedly affected unloading operations.[9]

During that period, the logs indicate that 19 lifts were loaded from the dock to the vessel.[10] These 19 lifts included grocery boxes of

---

[5] *See* Notice of Removal (ECF No. 1) at ¶ 5.
[6] *See* Exhibit 1, Deposition Excerpts from Mark Flora, at 65:2-10; 85:22-86:7.
[7] *See* Exhibit 2, SAMM Master Log (produced by LLOG).
[8] *See* Exhibit 1 at 194:1-195:7.
[9] *See* ECF No. 25, Plaintiff's First Amended Complaint, at ¶ 11.
[10] See Exhibit 2.

approximately 8 feet to 10 feet wide and 8 feet to 10 feet high; these boxes were "pre-slung," meaning that they already had the sling in position around the box before they were handled in the course of dock operations.[11] *M/V Maggie A* departed the dock at 12:30 a.m. May 25, 2017 and arrived at drill ship West Neptune in Green Canyon 390 at 6 a.m. May 25, 2017, where the cargo was offloaded between 6 a.m. and 9:30 a.m.[12]

Around 7 a.m. on May 25, 2017, while in the process of hooking up one of the pre-slung grocery boxes to the *West Neptune*'s crane stinger wire, the crane headache ball got caught, according to Plaintiff, on the upper bulwark[13]. Then the headache ball then "free fell," hitting and knocking off Plaintiff's hard hat, and hitting Plaintiff's shoulder before falling on Plaintiff's foot.[14]

---

[11] *See* Exhibit 1 at 105:11-22; 115:12-116:25.

[12] *See* Exhibit 2.

[13] *See* Exhibit 1 at 154:3-16.

[14] *Id.*

In his Petition, Plaintiff alleges that the vessel was owned, operated, and/or managed by defendants, including GIS. Plaintiff alleged that the defendants, including GIS, were negligent, negligent per se, and grossly negligent for the following reasons:

- GIS failed to maintain the vessel; failed to maintain, inspect, and/or repair the vessel's equipment; and operated the vessel in an improper and unsafe manner.
    - GIS did not own, operate, or manage either the *M/V* Maggie A and still does not own, operate, or manage the M/V *Maggie A*.[15]
- GIS failed to provide adequate medical treatment and/or adequate safety equipment.
    - As GIS was not Plaintiff's employer, GIS had no duty to Plaintiff to do so.[16]
- GIS failed to properly supervise the crew, did not provide an adequate crew, and/or did not properly supervise the job.

---

[15] *See* Exhibit 3, Affidavit of Eric Callais.

[16] *Id.*

- o Plaintiff was not working for GIS. GIS did not provide crews for either the *M/V Maggie A*.[17]

### 3. Evidence

GIS provides the following documents as evidence and incorporates them for all intents and purposes:

- Exhibit 1: Deposition Transcript of Plaintiff Mark Flora
- Exhibit 2: *Maggie A* Master Log (GLO/LLOG 257-264)
- Exhibit 3: Declaration of Eric Callais, Corporate Safety Director of GIS

### 4. Arguments & Authorities

*A. Summary Judgment Standard*

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[18] When assessing whether a

---

[17] *Id.*

[18] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (citing Fed. R. Civ. P. 56(c)); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[19] All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions.[20] A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party."[21]

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim.[22] The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that

---

[19] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.,* 530 F.3d 395, 398 (5th Cir. 2008).

[20] *Little*, 37 F.3d at 1075.

[21] *Delta*, 530 F.3d at 399.

[22] *See Celotex*, 477 U.S. at 325.

a genuine issue exists.[23] The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial.[24]

*B. Jones Act and Unseaworthiness claims inapplicable to GIS*

Because GIS did not employ Plaintiff, nor did it own, operate, or manage the *Maggie A*,[25] Plaintiff's claims against GIS are limited to general negligence, negligent per se, and gross negligence.

The Outer Continental Shelf Lands Act, 43 U.S.C. § 1331 et. seq., prescribes the applicability of either maritime law or adjacent state law as "surrogate federal law" to govern the Outer Continental Shelf.[26]

---

[23] *See id.* at 324.

[24] *See, e.g., id.* at 325; *Little*, 37 F.3d at 1075

[25] *See* Exhibit 3.

[26] *Petrobras Am., Inc. v. Vicinay Cadenas, S.A.*, 815 F.3d 211, 215-216 (5th Cir. 2016) (citing *Hufnagel v. Omega Serv. Indus., Inc.*, 182 F.3d 340, 349 (5th Cir. 1999)).

These regimes are alternative, not overlapping.[27] OCSLA "was not intended to displace general maritime law."[28] The Fifth Circuit has interpreted the statute to compel borrowing adjacent state law if three conditions only if are met: "(1) The controversy must arise on a situs covered by OCSLA (i.e. the subsoil, seabed, or artificial structures permanently or temporarily attached thereto). (2) Federal maritime law must not apply of its own force. (3) The state law must not be inconsistent with Federal law."[29] The decisive question is then whether maritime law "applies of its own force," based on the tests of location and connection with maritime activity.[30]

Because this incident occurred on navigable waters at GC 390,[31] located on the Outer Continental Shelf off the coast of Louisiana. and in connection with maritime activity, general maritime law will apply.

---

[27] *Petrobras Am., Inc.,* 815 F.3d at 216 (citations omitted).

[28] *Gas Pipeline v. Hous. Cas. Ins.*, 87 F.3d 150, 154 (5th Cir. 1996)

[29] *Petrobras Am., Inc.,* 815 F.3d at 216 (citations omitted)

[30] *Id.* (citing *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.,* 513 U.S. 527 (1995)).

[31] *See* Exhibit 2.

The elements of the negligence under general maritime law "are 'essentially the same as land-based negligence under the common law.'"[32] To prevail on a claim of negligence under maritime law, the plaintiff must prove that (1) there was a duty owed by the defendant to the plaintiff; (2) the duty was breached; (3) the plaintiff suffered injury; and (4) a causal connection between the defendant's conduct and the plaintiff's injury.[33]

### C. Plaintiff's injuries are not foreseeable with regard to GIS's actions; therefore, GIS had no duty.

A plaintiff pursuing a maritime tort theory is owed a duty of ordinary care under the circumstances.[34] The determination of the existence and scope of a duty "involves a number of factors, including most notably the foreseeability of the harm suffered by the complaining party." Duty "may be owed only with respect to the interest that is fore-

---

[32] *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 211 (5th Cir. 2010)(quoting *Withhart v. Otto Candies, L.L.C.*, 431 F.3d 840, 842 (5th Cir. 2005)).

[33] *Id.* at 211 (citing *Canal Barge Co. v. Torco Oil Co.*, 220 F.3d 370, 376 (5th Cir. 2000)).

[34] *Id.* (citing Daigle v. Point Landing, Inc., 616 F.2d 825, 827 (5th Cir. 1980).

seeably jeopardized by the negligent conduct." Thus, if the injuries suffered allegedly as a result of the defendant's negligent conduct were not foreseeable, the defendant owed no duty to the plaintiff is not liable as a matter of law.[35]

In *Jones v. ES&H, Inc.,* the Court found that ES&H owed no duty of care to that plaintiff because it did not employ him, it did not direct or supervise his work, it was not responsible for providing the plaintiff's training.[36] Additionally, the plaintiff himself admitted that nothing ES&H did or did not do caused or contributed to his injuries.[37] The same is true regarding Plaintiff and GIS's relationship – GIS did not employ Plaintiff; GIS did not supervise his work; and did not provide any training to him.[38]

Plaintiff's only claims of conduct that can even remotely be attributable to GIS is the loading of the cargo ship at the docks – activity

---

[35] *Id.*

[36] *Jones v. ES&H, Inc.*, 2012 U.S. Dist. LEXIS 151331, *10-11 (E.D. La. October 22, 2012)

[37] *Id.*

[38] See Exhibit 3; see also Exhibit 1 at 51:15-55:2; 64:2-65:10.

that occurred at least six hours after any alleged conduct of GIS and at a completely different location, in a completely different activity. It is not foreseeable that GIS's alleged method of loading the cargo in the shipyard, if GIS did in fact load the cargo, could have led to the problems with the crane headache ball getting caught, then striking Plaintiff.

### D. GIS' alleged actions are not a substantial factor in causing Plaintiff's injuries.

A maritime plaintiff seeking to establish causation must show that the defendant's negligence "is the 'legal cause' of the plaintiff's injuries," which is "something more than 'but for' causation[;]" that is, "the negligence must be a substantial factor" in causing the plaintiff's injuries.[39]

In this matter, GIS's alleged actions (i.e. loading the cargo at the dock) were not a substantial factor in causing Plaintiff's injuries when the cargo was being unloaded at its destination. Plaintiff testified that during the unloading, the cargo area was "really tight" and that it did

---

[39] *Id.* at 213-214 (citing *Donaghey v. Ocean Drilling & Explor. Co.*, 974 F.2d 646, 649 (5th Cir. 1992)).

not have two-feet of clearance.[40] When he was hooking the D-ring to the hook:

> [I]t was difficult to do that, because the weight of the hook and the hook wasn't lowered far enough and the D-ring and slings pulling it down, so I had to lift one while I'm trying to manhandle the other to connect them – and to do this as quick as possible to get of that tight position.
>
> And as I was doing that, I felt a tremendous weight come down and knock my hard hat off, and it felt like it just crushed my left side. And I went into a little bit of a shock, I think. The hook fell on my foot and hurt like hell. The hard hat flew off towards the stern, and then all of a sudden I'm surrounded by steel cable and a headache ball, which isn't really a ball; it's like a three-foot steel cylinder that's maybe ten inches or a foot in diameter. It's several hundred pounds plus the weight of all the cable, and I'm surrounded with it.[41]

Plaintiff's own testimony establishes that his injuries were caused by the problems with the crane and headache ball in the unloading procedure, not by GIS's actions in loading the *M/V Maggie A*.

E. *Plaintiff has not alleged violations of any statutes*.

In his First Amended Complaint, Plaintiff has not alleged that

---

[40] See Exhibit 1 at 106: 13-21.

[41] *Id*. at 107: 7-23.

GIS has violated any specific statutes, nor has he developed any violations through discovery. Therefore, his claims must fail.

*F. Plaintiff has not alleged or developed facts that demonstrate gross negligence.*

Gross negligence is defined as reckless and wanton misconduct.[42] Gross negligence is distinguished from ordinary negligence in that it "encompasses harm that is willfully inflicted or is caused by the wanton and reckless disregard for the safety of others."[43]

In this matter, Plaintiff has not alleged facts demonstrating that GIS acted willfully or with wanton and reckless disregard for safety, either in his Petition or developed throughout discovery. Although Plaintiff alleged in his First Amended Complaint that all defendants, including GIS, were "grossly negligent" for their own acts and vicariously liable for their "employees' negligence and gross negligence," he

---

[42] *See Miles v. Melrose*, 882 F.2d 976, 989 (5th Cir. 1989); see also *In re Marquette Transp. Co. Gulf-Inland, LLC*, No. 13-5114, 2016 U.S. Dist. LEXIS 52883, at *10 (E.D. La. 2016).

[43] *See Computalog U.S.A., Inc. v. Blake Drilling & Workover Co., Inc.*, No. 95-3009, 1996 U.S. Dist. LEXIS 19074, 1996 WL 720761, at *2 (E.D. La. Dec. 9, 1996) (*citing Todd Shipyards Corp. v. Turbine Serv., Inc.*, 674 F.2d 401, 411 (5th Cir. 1982)).

provided no factual allegations to support these conclusions. The facts Plaintiff alleged in the First Amended Complaint – i.e. failed to properly load the vessel, utilizing improper tools and equipment – suggest ordinary negligence, not reckless and wanton misconduct.[44] Plaintiff has provided no evidence that such conduct was reckless and wanton.

### 5. Conclusion and Prayer

For the foregoing reasons, Plaintiff has not established its claims of negligence, negligence *per se*, and gross negligence. Therefore, GIS is entitled to judgment as a matter of law, and all claims against it must dismissed with prejudice.

---

[44] *See, e.g. In re Marquette Transp. Co. Gulf-Inland, LLC*, No. 13-5114, 2016 U.S. Dist. LEXIS 52883, at *11 (E.D. La. 2016).

Respectfully submitted,

Brown Sims,

/s/Michael D. Williams
Michael D. Williams
Texas Bar No. 21564330
Federal ID No. 6982
mwilliams@brownsims.com
1177 West Loop South, 10th Floor
Houston, Texas 77027
Tel. 713.629.1580
Fax 713.629.5027

*Attorney in Charge for Defendant, Grand Isle Shipyard, LLC*

of Counsel:

John G. H. Davis
Texas Bar No. 24012507
Federal ID No. 24428
jdavis@brownsims.com
Melanie G. Fordyce
Texas Bar No. 24067602
Federal I.D. No. 1179595
mfordyce@brownsims.com
Brown Sims
1177 West Loop South, 10th Floor
Houston, Texas 77027
Tel. 713.629.1580
Fax 713.629.5027

**Certificate of Service**

I hereby certify that on March 16, 2021, I electronically served the foregoing with all parties of record pursuant to the Federal Rules of Civil Procedure.

<u>/s/   Michael D. Williams</u>