IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARK FLORA | § | |
| | § | |
| VS. | § | C.A. NO. 4:19-CV-2328 |
| | § | |
| TRANSOCEAN DRILLING (USA), | § | |
| INC., ET AL. | § | |

**LLOG EXPLORATION OFFSHORE, LLC'S
MOTION FOR SUMMARY JUDGMENT**

NOW INTO COURT, through undersigned counsel, comes Defendant, LLOG

Exploration Offshore, LLC (hereinafter "LLOG") pursuant to Rule 56 of the Federal

Rules of Civil Procedure, and moves this Court for summary judgment to dismiss

all claims asserted against LLOG by Plaintiff Mark Flora, with prejudice, on the

grounds that LLOG did not exercise operational control over the work performed by

its various independent contractors that is the subject of this lawsuit.

## I.    Summary of Argument

The U.S. 5th Circuit Court of Appeals has consistently held that a principal is

not liable for the negligent acts of an agent independent contractor unless the

principal exercised operational control over the independent contractor's work.

Here, LLOG contracted with various independent contractors including Defendants

in this matter to perform services for LLOG in conjunction with the drilling of an oil

and gas well through the use of a contractor's drillship *West Neptune* temporarily

affixed to the Outer Continental Shelf in the Gulf of Mexico. During the offloading of a grocery box from a contractor's supply boat, the *M/V Maggie A* to the drillship *West Neptune*, plaintiff Mark Flora alleges that he was struck by a portion of the crane rigging causing injuries. Because LLOG did not control the step-by-step operations, processes or supervision of the cargo loading/unloading operations being conducted by employees of independent contractors, LLOG did not exercise operational control over those operations and therefore is not liable to the Plaintiff under controlling precedent.

## II.    Factual and Procedural Background

On May 25, 2017, Plaintiff, Mark Flora, was working as a deckhand aboard the vessel *M/V Maggie A,* a vessel owned by Defendant Gulf Logistics, LLC and operated by Flora's employer Defendant Gulf Logistics Operating, Inc. Flora was at the same time a licensed, seasoned and certified U.S. Coast Guard 1600 Ton vessel captain who took the job as a deckhand while waiting for a captain's position to come available.[1]   At the time of the incident complained of by Flora, the vessel *Maggie A* was providing marine transportation services to LLOG pursuant to a contract between C&G Boats, Inc. and LLOG.[2]   The contract between LLOG and

---

[1] **Ex. A**; Deposition of Plaintiff Mark Flora, p. 65, lines 2-10; P. 85, line 22 to p. 86 line 7.
[2] **Ex. B**; Blanket Time Charter Agreement between C & G Boats and LLOG.  The Gulf Logistics Defendants were sub-contractors of C&G Boats, Inc. See also **Ex. C**; Corporate Deposition of LLOG through James Bassi; p.35 lines 4-15 and p. 45 lines 4-6.

C&G Boats made clear that all operations, navigation, management, control, performance and use of the vessel was under the sole and exclusive command of the independent contractor and its captain, not LLOG, and that LLOG was only interested in the results obtained.[3]  The vessel *Maggie A* was utilized to transport men, material and supplies to the drillship *West Neptune*[4], a vessel owned and/or operated by Seadrill Gulf Operations Neptune, LLC[5].  Seadrill was under contract with LLOG[6] to provide manpower, supervision and the drillship *West Neptune* to drill LLOG's deep water offshore well #SSW002 located offshore Louisiana on the outer continental shelf at Green Canyon Block 390, OCS-G35865 ("the Well").[7] This contract also made clear that Seadrill was an independent contractor.[8] LLOG also had a contract with Defendant Grand Isle Shipyards ("GIS") to provide certain dock services at its shore base facility in Fourchon, Louisiana including but not limited to loading cargo aboard the vessel *Maggie A* to be transported to the drillship *West Neptune*.[9] This contract also made clear that in the performance of its work,

---

[3] **Ex. B** at p. 2, §11.
[4] **Ex. C**; p.12 lines 15-25; p. 45 line 4 to p. 46 line 5 and p.99 lines 5-8.
[5] Seadrill Gulf Operations Neptune, LLC was an earlier defendant, later dismissed with prejudice (ECF No. 22).
[6] **Ex. D**; LLOG/Seadrill Domestic Daywork Drilling Contract-Offshore w/ Appendixes, Amendments and Assignments.
[7] **Ex. E**; Unsworn Declaration of Steven L Stegeman; see also **Ex. B**; p.14 lines 14-24;  p. 45, lines 7-13 and p. 45 line 24 to p.46 line 5.
[8] **Ex. D**; p.3 at § 107.
[9] **Ex. F**; Master Service Contract between LLOG and GIS. See also **Ex. C**; Corporate Deposition of LLOG through James Bassi; p. 12 lines 15-25 and p.48 lines 10-16.

GIS was at all times an independent contractor and that the methods and details of the performance of such work were left up to GIS; LLOG would have no control and was only interested in the results.[10]

The cargo included grocery boxes being loaded/unloaded were "pre-slung" meaning that the rigging used to load/unload the cargo boxes were already attached to the boxes before being they left the dock.[11] The equipment utilized by each of the independent contractors were provided by the independent contractors, not by LLOG.[12]   With respect to safety, LLOG requires independent contractors to hold Joint Safety Analyses or "JSA" meetings but that these meetings are conducted according to the various independent contractors own safety programs and LLOG does not direct the independent contractors or interfere with how this process is conducted.[13]

At the time of the May 25, 2017 incident, Flora and the crew of the vessel *Maggie A* were offloading pre-slung grocery boxes to the drillship *West* Neptune.[14] Flora alleges that he was attempting to connect the grocery box aboard the *Maggie*

---

[10] **Ex. F**; at p. 1, §3.1.
[11] **Ex. A**; Deposition of Mark Flora, p. 105 lines 11-22; p.115 line 12 to p.116 line 25.
[12] **Ex. C**; Corporate Deposition of LLOG through James Bassi; at p. 99 line 2 to p. 100 line 15.
[13] **Ex. C**; Corporate Deposition of LLOG through James Bassi; p. 36, lines 2-13 and p. 36 line 21 to p. 37 line 8.
[14] See Notice of Removal (ECF Doc. 1). At the time of the incident, the *West Neptune* was connected by drill pipe to the wellhead affixed to the seabed on the Outer Continental Shelf wherein the drill pipe extended below the mud line into the cased wellbore of the Well.  See **Ex. E**; Declaration of Steven L. Stegeman.

*A* to a stinger wire lowered from the crane mounted on the drillship *West Neptune* when the headache ball, a portion of the crane's own rigging got caught on the bulwarks of the vessel *Maggie A* then "free fell" striking the plaintiff's shoulder and thereafter falling on his foot.[15] Most notably, at the time of the incident, Plaintiff Flora and the crew of the *Maggie A* had already off-loaded several pieces of cargo from the deck of the *Maggie A* utilizing the same equipment and under the same conditions.[16] Flora participated in a total of 19 cargo lifts, before and after the subject incident.[17] It is undisputed that no employee of LLOG participated in the loading and unloading of the *Maggie A* on the date of the incident.[18] Further, LLOG employees did not provide supervision over the work being conducted by the various contractors, including over Seadrill's operations or the operations of Gulf Logistics' *Maggie A*.[19] In fact, the highest authority offshore for this operation was the Seadrill Offshore Installation Manager ("OIM") who had the ultimate authority on the job and Seadrill to see that the cargo was loaded onto the *West Neptune*.[20]

LLOG's corporate representative James Bassi confirmed that Defendants Seadrill, GIS, Gulf Logistics, LLC and Gulf Logistics Operating, Inc. were all

---

[15] **Ex. A**; Deposition of Mark Flora p. 154, lines 3-16.
[16] **Ex. A**; p. 143 lines 7-10; p. 156 lines 11-15. See also **Ex. G**; Deposition of Gulf Logistics through Ralph Lagarde p. 157 line 24 to p. 158 line 3.
[17] **Ex. H**; Gulf Logistics Master Log dated May 25, 2017.
[18] **Ex. C**; Deposition of LLOG through James Bassi, p. 57 lines 17-19 and p. 100 lines 12-15.
[19] **Ex. C;** p. 100 line 22 to p. 101 line 15.
[20] **Ex. C;** p. 100 line 22 to p. 101 line 15. See generally p. 60 line 16 to p. 61 line 20.

independent contractors hired to provide a particular expertise in support of drilling the Well.[21]   LLOG's shore-based engineers identified an area in which to drill for hydrocarbons and designed a well plan, thereafter providing this plan to the governmental/regulatory authorities for permits and approval to drill.[22] Almost everything that is accomplished offshore after development and governmental approval of the plan is done by independent contractors.[23] The Well plan in this instance was provided to the independent contractors to execute the plan.[24] LLOG does not give direction to the independent contractors on *how* they carry out their particular operations.[25] LLOG also does not direct Seadrill how to drill the well, how to maintain their rig or how they load/unload equipment on or off the drillship *West Neptune*.[26]   With respect to the loading and unloading work ongoing at the time of the incident, materials were sent out to the drillship *West Neptune* at Seadrill's request.[27] Seadrill orders materials and transportation of those materials is provided by the independent contractor Gulf Logistics providing vessel transportation via the *Maggie A*.[28] With respect to actual drilling operations, LLOG has an independent

---

[21] **Ex. C**; p.13 line 16 to p.14 line 9; p.21, line 23 to p. 22 line 14.
[22] **Ex. C**; p.13 line 16 to p.14 line 9.
[23] **Ex. C**; p.13 line 16 to p.14 line 9.
[24] **Ex. C**; Deposition of LLOG through James Bassi, p.21, line 23 to p. 22 line 14 and p. 22 line 25 to p. 23 line16.
[25] Id.
[26] Id. See also p. 26 line 12 to p. 27 line 7 and p.70 lines 15-23.
[27] **Ex. C**; p.35 lines 4-15.
[28] **Ex. C**; Deposition of LLOG through James Bassi, p.35 lines 4-15.

contractor company man that monitors the execution of the plan and his responsibilities primarily have to do with the downhole or wellbore issues, not loading and unloading of vessels.[29]   LLOG is interested in the results of what the independent contractors do, and not the step by step way in which they do it.[30] At the time of the incident, the company man was W. Walley[31] who was working aboard Seadrill's drillship *West Neptune* for Eagle Consulting, LLC, another independent contractor of LLOG.[32] LLOG's contract with Eagle Consulting was clear that Walley was an independent contractor that had exclusive control of the methods and details of the performance of his work and that LLOG would have no control over the management and performance of same.[33] LLOG also hired an independent contractor to provide Health, Safety and Environment ("HSE") services.[34] S. Sepulvedo provided this contract service to LLOG to monitor the well plan from an HSE standpoint and to take care of HSE related tasks.[35] In summary, and with respect to the subject incident, no LLOG employee performed the dock services of loading the *Maggie A*, no LLOG employee was part of the crew that transported cargo from the GIS dock to the drillship *West Neptune,* and no LLOG employee participated in

---

[29] **Ex. C**; p. 26 line 12 to p. 27 line 7;  p. 64 line 14 to p. 65 line 15.
[30] **Ex. C**; Deposition of LLOG through James Bassi, p. 26 line 12 to p. 27 line 7;  p. 64 line 14 to p. 65 line 15.
[31] **Ex. C**; p. 27, line 23 to p. 28 line 2.
[32] Id. at p. 91 line17 to p. 92 line 4.
[33] **Ex. I**; LLOG contract with Eagle Consulting, LLC p. 1 at §3.1
[34] **Ex. C**; p. 89 line 23 to p. 90 line 3.
[35] **Ex. C**; p. 28 lines 3-23.

or supervised the unloading of cargo at the drillship.[36] All of these tasks, including drilling the Well were carried out by independent contractors.

On or about October 25, 2019, Plaintiff, Flora, joined LLOG in Plaintiff's First Amended Complaint (ECF Doc. 25) as a defendant in the case alleging that LLOG provided personnel and services at the *West Neptune* and had "responsibility for operations, safety…and activities" involving the drillship *West Neptune*. With respect to the case as a whole, and among other things, Flora alleges that the cargo was improperly loaded at the GIS dock onto the vessel *Maggie A* which allegedly affected unloading operations. Flora also alleges that Seadrill's crane rigging aboard its drillship *West Neptune* was inadequately-sized and improperly operated by Seadrill's crane operator and that the operations were generally conducted under conditions that were unsafe and utilizing vessels that were improperly operated, supervised and/or staffed. Flora alleges that these various acts or omissions constitute negligence, negligence per se and gross negligence giving rise to punitive damages under the general maritime law. As will be shown below, LLOG owed no duty to Mark Flora under the premises because LLOG did not exercise operational control over the cargo loading and unloading operations being conducted by employees of independent contractors from the shore side loading by GIS to

---

[36] **Ex. C**; Deposition of LLOG through James Bassi, p. 96 line 11 to p. 97 line 3 and p. 100 line 22 to p. 101 line 1.

offloading at the drillship by Seadrill and the Gulf Logistics Defendants.  As a result, and under controlling 5th Circuit precedent, a principal such as LLOG is not liable for the alleged negligent acts of independent contractors.

## III.    Evidence

Defendant LLOG offers and introduces the following Exhibits in support of its Motion for Summary Judgment and incorporates the same herein for all purposes:

1.    Exhibit A: Deposition of Mark Flora;

2.    Exhibit B: LLOG/C&G Boats, Inc. Blanket Time Charter Agreement;

3.    Exhibit C: Corporate Deposition of LLOG through James Bassi;

4.    Exhibit D: LLOG/Seadrill Domestic Daywork Drilling Contract-Offshore w/ Appendixes, Amendments and Assignments;

5.    Exhibit E: Unsworn Declaration Of Steven L. Stegeman;

6.    Exhibit F: LLOG/GIS Master Service Contract;

7.    Exhibit G: Corporate Deposition of Gulf Logistics through R. Lagarde Jr.;

8.    Exhibit H: Gulf Logistics Master Log;

9.    Exhibit I: LLOG/Eagle Consulting, LLC Contract.

## IV.    Law and Argument

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The U.S. Supreme Court has held that the plain language of Rule 56(c) mandates the

entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Where no such showing is made, '[t]he moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.'"[37] Plaintiff Flora must come forward with "specific facts" showing that a genuine factual dispute exists for trial on whether LLOG exercised operational control over the work of its independent contractors.[38]

In *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc), the Fifth Circuit further elaborated:

> [The parties'] burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence. We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. *We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts*. …[S]ummary judgment is appropriate in *any case* 'where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.' (citations omitted).

---

[37] *Lujan v. National Wildlife Federation*, 497 U.S. 871, 884, 888-89, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

[38] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

Federal jurisdiction in this matter is predicated on the Outer Continental Shelf Lands Act (OSCLA), 43 U.S.C. § 1331 *et seq.* OCSLA adopts the law of the adjacent state (Louisiana) as surrogate federal law, to the extent that it is not inconsistent with other federal laws and regulations.[39] Thus the law applicable is "federal law, supplemented by state law of the adjacent state."[40] Under the general maritime law (and Louisiana law), a principal is not liable for the negligent acts of its independent contractor.[41]

### a.   LLOG Owed No Duty to Flora: LLOG Had No Operational Control

It is well established that a principal is not liable for the torts committed by an agent who is an independent contractor in the course of performing its contractual obligations.[42] An exception exists when a principal maintains operational control over the activity in question.[43],[44] Here, the Court must determine if LLOG

---

[39] *Bartholomew v. CNG Producing Co.,* 832 F.2d 326, 328 (5th Cir.1987); 43 U.S.C. § 1333(a)(2)(A).

[40] *Rodrigue v. Aetna Cas. & Sur. Co.,* 395 U.S. 352, 355, 89 S.Ct. 1835, 1837, 23 L.Ed.2d 360 (1969).

[41] *Robideaux v. Hebert,* 43 So. 887, 889 (1907); *Landry v. Huthnance Drilling Co.,* 889 F.2nd 1469, 1471 (5th Cir.1989); see also Skinner v. Schlumberger Tech. Corp., 655 Fed. App'x 188, 192 (5th Cir. 2016) (quoting Wilkins v. P.M.B. Sys. Eng'g, 741 F.2d 795, 800 (5th Cir. 1984).

[42] *Roberts v. Cardinal Servs.*, 266 F.3d 368, 380 (5th Cir. 2001).

[43] *Roberts v. Cardinal Servs.*, 266 F.3d 368, 380 (5th Cir. 2001).

[44] Another exception is available under Louisiana but does not apply here either.  A principal may be liable if the activity engaged in by the independent contractor is considered "ultra-hazardous" as that term has been defined by law.  The following activities have been categorized as ultrahazardous as a matter of Louisiana law:  (1) storage of toxic gas, (2) crop dusting with airplanes, (3) pile driving, and (4) blasting with explosives.[44]  Each of these four undertakings is an activity that "can cause injury to others, even when conducted with the greatest prudence and care."[44]  The jurisprudential test for ultrahazardous activities follows that an activity is

maintained operational control over the Plaintiff's activity: unloading the *Maggie A* by connecting a cargo grocery box to a stinger cable connected to a crane located on the drillship *West Neptune*.  Operational control exists only if the principal has direct supervision over the step-by-step process of accomplishing the work such that the contractor is not entirely free to do the work in his own way.[45]  The evidence is clear that LLOG did not participate in the operation of the loading and unloading of cargo on the date of the incident either on the *M/V Maggie A* or the drillship *West Neptune.*[46]  Additionally, LLOG's contracts with the owner/operator of the *Maggie A* and *West Neptune* specifically provide that those companies shall be an independent contractor with respect to the performance of the work.[47]  The summary judgment evidence shows that Seadrill, the owner/operator of the *West Neptune* was in charge of loading/unloading operations and that this oversight was not directed or interfered with by LLOG.  The summary judgment evidence also establishes that this oversight was provided by an independent contractor, namely the OIM for

---

ultrahazardous if it (1) relates to land or to other immovables; (2) causes the injury, and the defendant was directly engaged in the injury-producing activity; and (3) does not require the substandard conduct of a third party to cause injury.  See *Roberts v. Cardinal Servs.*, 266 F.3d 368, 380 (5th Cir. 2001). *Id.* citing *Kent v. Gulf States Utilities*, 418 So. 2d 493, 498 (La. 1982). *Perkins v. F. I. E. Corp.*, 762 F.2d 1250 (5th Cir. 1985).[44]

[45] *LeJeune v. Shell Oil Co*., 950 F.2d 267–270 (5th Cir.1992); *McCormack v. Noble Drilling Corp*., 608 F.2d 169, 175 n. 9 (5th Cir.1979)

[46] **Ex. C**; Deposition of LLOG through James Bassi, p. 96 line 11 to p. 97 line 3 and p. 100 line 22 to p. 101 line 1.

[47] **Ex. B** at p. 2, §11.  **Ex. D**; p.3 at § 107.  **Ex. F**; at p. 1, §3.1. **Ex. I**; p. 1 at §3.1.

Seadrill.[48] Although the monitoring conducted on behalf of LLOG was conducted by independent contractors, supervisory inspections by a principal do not equate to retention of control over the operations conducted by an independent contractor.[49] Operational control may exist if the principal has direct supervision over the step-by-step process of accomplishing the work such that the contractor is not entirely free to do the work in his own way.[50] However, there is no evidence in the record indicating that LLOG had supervision over Plaintiff's work.  Absent an express or implied order to the contractor to engage in an unsafe work practice leading to an injury, a principal cannot be liable under the operational control exception.[51] There is no evidence that any representative of LLOG witnessed an unsafe act. There is also no evidence that Seadrill's OIM, who had the ultimate work authority, or the contract company man observed any unsafe act or condition.  Courts have held that observing and failing to object to an unsafe work practice does not rise to the level of an express or implied authorization, even if this work is observed by LLOG's independent contractor representatives.[52]

---

[48] **Ex. C;** p. 100 line 22 to p. 101 line 15.  See generally p. 60 line 16 to p. 61 line 20.
[49] *Ainsworth v. Shell Offshore, Inc.*, 829 F.2d 548, 550 (5th Cir. 1987), *cert. denied*, 485 U.S. 1034 (1988)
[50] *LeJeune v. Shell Oil Co.*, 950 F.2d 267, 270 (5th Cir. 1992).
[51] *Coulter v. Texaco, Inc.*, 117 F.3d 909, 912 (5th Cir. 1997).
[52] Graham Amoco Oil Co. 21 F. 3rd 643, 646-647 (5th Cir. 1994). See also Ainsworth, 829 F. 2nd at 551.

**b.     Plaintiff has no evidence of negligence per se or gross negligence**

Flora makes allegations generally against all parties in the First Amended Complaint of the violation of statutes, but has not in a pleading or discovery identified any such statutes violated by LLOG that caused or contributed to Flora's incident. Further, the Plaintiff has not alleged specific facts demonstrating that any LLOG employee acted willfully or with wanton and reckless disregard for his safety. Plaintiff has no evidence to support a negligence per se or gross negligence claim against LLOG.

## V.     Conclusion

For the foregoing reasons, there is no genuine issue of material fact at issue here and LLOG Exploration Offshore, LLC is entitled to summary judgment and dismissal of all claims asserted against LLOG by Plaintiff Mark Flora, with prejudice, on the grounds that LLOG Exploration Offshore, LLC did not exercise operational control over the work performed by its various independent contractors conducting the work that is the subject of this lawsuit.

Respectfully submitted:

ALLEN & GOOCH
A LAW CORPORATION

_____
ALAN J. MECHE (SBOT#24025530)
2000 Kaliste Saloom Road, Suite 400
Lafayette, LA  70598-1129
Telephone:  (337) 291-1480
Fax:  (337) 291-1485
Email:  AlanMeche@AllenGooch.com
*Attorney in Charge for LLOG Exploration Offshore, LLC*

Of Counsel:
ALLEN & GOOCH
A LAW CORPORATION
Randy Theunissen (SBOT #00795174)
2000 Kaliste Saloom Road, Suite 400
Lafayette, LA  70598-1129
Telephone:  (337) 291-1240
Fax:  (337) 291-1245
Email:  RandyTheunissen@AllenGooch.com
*Attorney for LLOG Exploration Offshore, LLC*