# BLANKET TIME CHARTER AGREEMENT

This Blanket Time Charter Agreement is made and entered into on the __9th__ day of __July__, 200_3_, by and between:

C & G BOATS, INC.

and

LLOG EXPLORATION COMPANY, L.L.C.
LLOG EXPLORATION OFFSHORE, INC.
LLOG EXPLORATION & PRODUCTION COMPANY
LLOG EXPLORATION TEXAS, L.P.

WITNESSETH:

WHEREAS, C & G BOATS, INC. (hereinafter referred to as "Owner") is the owner of various vessels which it, from time to time, desires to time charter to LLOG Exploration Company, L.L.C., LLOG Exploration Offshore, Inc., LLOG Exploration & Production Company, LLOG Exploration Texas, L.P. (hereinafter collectively referred to as "Charterer");

WHEREAS, Charterer, from time to time desires to time charter vessels from Owner; and

WHEREAS, Charterer and Owner are desirous of entering into a Blanket Time Charter Agreement for the use of one or more of said vessels.

NOW, THEREFORE, in consideration of the mutual promises, covenants and agreements hereinafter provided, it is hereby agreed as follows:

1. The preamble hereinabove is made a part hereof.

2. This Blanket Time Charter Agreement shall control and govern in all situations in which Owner time charters a vessel or vessels to Charterer.

3. Upon reaching an agreement to time charter a vessel from Owner, Charterer shall issue to Owner a Charter Order Confirmation (hereinafter referred to as "Charter Order") in the form attached hereto as Exhibit "A", setting forth the agreed daily rate of hire, term, location where such vessel is to be delivered and re-delivered, and rates for subsistence, cellular telephone time and miscellaneous expenses.

4. This Blanket Time Charter Agreement does not obligate Owner to charter its vessels to Charterer, nor does it obligate Charterer to hire any vessel or vessels owned by Owner, but it, together with any Charter Order issued subsequent to the date hereof, shall govern the respective rights and duties of Owner and Charterer.

5. This Blanket Time Charter Agreement shall commence as of the effective date hereof, and shall continue thereafter until terminated by either party giving the other party thirty (30) days advance written notice thereof, but if any vessel is under time charter pursuant to a Charter Order, then this Blanket Time Charter Agreement shall be extended automatically until the term of said Charter Order has expired.

6. Pursuant to Charter Order issued by Charterer, Owner time charters to Charterer the exclusive right to the services of each vessel addressed in the Charter Order, her engines, machinery, equipment, tackle, apparel and crew, throughout the entire charter term as set forth in the Charter Order or as properly extended from time to time, subject to the terms and conditions of this Blanket Time Charter Agreement.

(Rev June 2003)

Exhibit B

7. Each vessel time chartered is to be made available to the Charterer for performance at the location designated by Charterer in the Charter Order, and is to be there released to Owner (unless lost) upon termination of said Charter Order.

8. Owner specifically warrants that each vessel shall be in all respects seaworthy and properly documented, equipped and fit for the service intended, and that each vessel shall be maintained in said seaworthy and fit condition, in good running order and in good, clean, neat appearance at all times. If the condition of a vessel under time charter becomes such that it is unavailable or incapable of performing the work for which it was chartered, or if in Charterer's opinion the vessel does not adequately perform the work for which it was chartered, the daily charter hire shall cease during such period of deficiency, unavailability, incapacity or failure, but such vessel shall remain available to Charterer and Owner shall immediately restore said vessel to its former seaworthy and fit condition. If such condition cannot be remedied within twenty-four (24) hours, Owner shall, upon demand of Charterer, replace the vessel with a vessel satisfactory to Charterer, at Owner's expense, or Charterer shall have the unqualified right to immediately cancel the Charter Order.

9. Owner, at its sole cost and expense, shall man each vessel with a captain and crew fully competent to perform the duties contemplated hereunder. In the event Charterer shall have any reason to be dissatisfied with the conduct of any captain or crewmember, Owner, upon receiving notice from Charterer to this effect, shall immediately investigate, and, if requested to do so by Charterer, make an immediate change in the captain or crewmember, as the case may be.

10. Owner shall operate, navigate, victual and supply each vessel, except that Charterer agrees either to furnish fuel or to reimburse Owner in full for all fuel actually used while the vessel is operating in the exclusive service of Charterer. The vessel's fuel tanks shall be jointly sounded by Owner and Charterer on delivery and re-delivery of the vessel, and Charterer shall pay Owner for all fuel actually used while the vessel is operating in the exclusive service of Charterer, such payments to be based on the prevailing prices, respectively, at the ports of delivery and re-delivery on the dates of delivery and re-delivery.

11. Each vessel shall be employed only in lawful activities. Charterer shall have the sole and exclusive right to the services and full reach of each vessel time chartered to Owner, but nothing contained herein or elsewhere to the contrary shall be construed as a demise of the vessel to Charterer, and the entire operation, navigation, management, control, performance and use of each vessel shall be under the sole and exclusive command of, and be actually accomplished by, Owner as an independent contractor, Charterer being interested only in the results obtained. Charterer shall, however, have the right to designate the voyages to be undertaken and the services each vessel is to perform, subject always to the sole right of the Owner or the captain of each vessel to determine whether the movement may be safely undertaken, with the captain always being in charge.

12. Charterer agrees to pay Owner subsistence for each man housed aboard the vessel at the request of the Charterer, for the time utilized by Charterer on the vessel's cellular telephone, and for any miscellaneous expenses as outlined in the Charter Order. Rates for subsistence, cellular telephone time and miscellaneous expenses shall be as specified in the Charter Order.

13. After the last day of each calendar month, Owner shall invoice Charterer, in triplicate, for the charter hire earned during the calendar month just ended, such invoice to include itemization of hours and days and be accompanied by copies of such vessel's log for the month, and documentation supporting charges for subsistence, cellular telephone service and miscellaneous expenses. Within thirty (30) days after receipt of the invoice, Charterer shall make payment to Owner at Owner's notice address set forth in Article 23, unless any items thereon are questioned by Charterer, in which event Charterer shall have the right to withhold payment of such disputed amount until verification of both the amount claimed and the validity of said claim. Charterer's investigation thereof shall proceed as promptly as possible, with which investigation Owner shall provide complete cooperation. With respect to invoices so questioned and

later approved by Charterer, payment shall be made as promptly as practical after such approval. Payment shall be deemed made when Charterer's check, addressed to Owner as aforesaid, is placed in the United States mail, postage prepaid. If the vessel becomes a total or constructive total loss, hire shall be paid up to and including the day and time of the loss, except that if the time of the loss be uncertain, then up to and including the day and hour the vessel was last heard from.

14. Owner agrees to procure and keep in force during the term of any Charter Order all certificates, licenses and permits now and hereinafter required by laws, regulations, ordinances, or other rules issued by the United State Coast Guard or any other governmental bureau or department having jurisdiction, and to comply with any applicable laws, regulations, ordinances or other rules with respect to the vessel and the use thereof hereunder, including, but not limited to, the payment of all fines and penalties or liabilities resulting therefrom. Owner shall specifically comply with all applicable State and Federal laws regarding age, citizenship, discrimination, hours, wages and conditions of employment measured by wages of its employees required by the Federal Unemployment Tax Act, Federal Insurance Contributions Act and any other applicable payroll tax. Owner specifically acknowledges that the use, possession, or distribution of alcohol, controlled substances, firearms, and weapons on Charterer's premises, work sites, vehicles or vessels is strictly prohibited, and Owner will enforce this prohibition with respect to all of Owner's employees, contractors and subcontractors.

15. A. OWNER HEREBY AGREES TO RELEASE, PROTECT, DEFEND, INDEMNIFY, AND HOLD HARMLESS CHARTERER, ITS CO-LESSEES, CO-OWNERS, PARTNERS, JOINT VENTURERS AND JOINT INTEREST OWNERS, AND THEIR RESPECTIVE AFFILIATES, SUBSIDIARIES, OFFICERS, DIRECTORS, EMPLOYEES, AND VESSELS (ALL OF WHICH ARE HEREINAFTER IN THIS ARTICLE AND IN ARTICLE 17 REFERRED TO AS THE "INDEMNIFIED CHARTERER PARTIES"), AND THEIR RESPECTIVE INSURERS, FROM AND AGAINST ANY AND ALL CLAIMS FOR DAMAGES TO AND/OR LOSS OF EACH VESSEL HEREBY TIME CHARTERED TO CHARTERER, EVEN IF SAID DAMAGE AND/OR LOSS RESULTS, IN WHOLE OR IN PART, FROM NEGLIGENCE, STRICT LIABILITY, AND/OR UNSEAWORTHINESS ATTRIBUTABLE TO THE INDEMNIFIED CHARTERER PARTIES. THIS ACCEPTANCE OF RESPONSIBILITY BY OWNER SHALL EXTEND TO ANY AND ALL EQUIPMENT, MACHINERY AND/OR CARGO OWNED BY, LEASED TO, OR RENTED TO OWNER THAT IS ABOARD OR ABOUT ANY VESSEL TIME CHARTERED BY OWNER TO CHARTERER.

B. IF ANY CLAIMS, DEMANDS, SUITS AND/OR CAUSES OF ACTION ARE EVER ASSERTED AGAINST THE INDEMNIFIED CHARTERER PARTIES OR THEIR RESPECTIVE INSURERS FOR ILLNESS OF, INJURY TO AND/OR DEATH OF OWNER'S EMPLOYEES, OWNER WILL PROTECT, DEFEND, INDEMNIFY AND HOLD HARMLESS THE INDEMNIFIED CHARTERER PARTIES AND THEIR RESPECTIVE INSURERS, EVEN IF SAID CLAIMS, DEMANDS, SUITS AND/OR CAUSES OF ACTION ARISE, IN WHOLE OR INPART, FROM NEGLIGENCE, STRICT LIABILITY, AND/OR UNSEAWORTHINESS ATTRIBUTABLE TO THE INDEMNIFIED CHARTERER PARTIES. THE SOLE RESTRICTION ON THIS PARAGRAPH B IS THAT THE AFORESAID CLAIMS, DEMANDS, SUITS AND/OR CAUSES OF ACTION MUST HAVE ARISEN OUT OF, BE RELATED TO, AND/OR BE INCIDENTAL TO, IN ANY WAY, THE CHARTERING OF A VESSEL (INCLUDING INGRESS AND EGRESS) PURSUANT TO THIS BLANKET TIME CHARTER AGREEMENT.

C. IF ANY CLAIMS, DEMANDS, SUITS AND/OR CAUSES OF ACTION ARE EVER ASSERTED AGAINST OWNER, ITS AFFILIATED, SUBSIDIARY AND RELATED COMPANIES, AND ALL OF THEIR RESPECTIVE OFFICERS, DIRECTORS, EMPLOYEES, AND VESSELS (ALL OF WHICH ARE HEREINAFTER IN THIS ARTICLE REFERRED TO AS THE "INDEMNIFIED OWNER PARTIES") OR THEIR RESPECTIVE INSURERS FOR ILLNESS OF, INJURY TO, AND/OR DEATH OF CHARTERER'S EMPLOYEES, CHARTERER WILL PROTECT, DEFEND, INDEMNIFY AND HOLD HARMLESS THE

INDEMNIFIED OWNER PARTIES, EVEN IF SAID CLAIMS, DEMANDS, SUITS AND/OR CAUSES OF ACTION ARISE, IN WHOLE OR IN PART, FROM NEGLIGENCE, STRICT LIABILITY, AND/OR UNSEAWORTHINESS ATTRIBUTABLE TO THE INDEMNIFIED OWNER PARTIES. THE SOLE RESTRICTIONS ON THIS PARAGRAPH CARE THAT THE CLAIMS, DEMANDS, SUITS AND/OR CAUSES OF ACTION MUST HAVE ARISEN OUT OF, BE RELATED TO, AND/OR BE INCIDENTAL TO, IN ANY WAY, THE CHARTERING OF A VESSEL (INCLUDING INGRESS AND EGRESS) PURSUANT TO THIS BLANKET TIME CHARTER AGREEMENT

D.   THE RELEASE, DEFENSE AND INDEMNITY OBLIGATIONS IN A., B., AND C. SHALL NOT INCLUDE THE INDEMNITEE'S CONTRACTUAL DEFENSE AND INDEMNITY OBLIGATIONS TO OTHERS. HOWEVER, IN THE EVENT THAT BOTH OWNER AND CHARTERER SEPARATELY OWE CONTRACTUAL DEFENSE AND INDEMNITY OBLIGATIONS TO THE SAME PARTY, OWNER WILL SATISFY OWNER'S OBLIGATIONS TO SAID PARTY WITHOUT OWNER'S INSURERS SEEKING RECOUPMENT, SHARING, OR OTHER RECOVERY AGAINST CHARTERER.

E.   THE PROVISIONS OF PARAGRAPHS A, B, C AND D ABOVE SHALL NOT BE AFFECTED OR LIMITED BY THE INSURANCE PROVISIONS OF THIS BLANKET TIME CHARTER AGREEMENT.

16.   Owner shall immediately notify Charterer in writing of the occurrence of any and all accidents involving personal injury or death, or involving property damage, in any way arising out of, relate to and/or incidental to the chartering of a vessel pursuant to this Blanket Time Charter Agreement.

17.   A.   Owner agrees to procure and thereafter continuously maintain, at its sole cost and expense (including the cost of all deductibles and premiums) in companies and under forms approved by Charterer at the time of execution of this Blanket Time Charter Agreement, and during the entire term of this Blanket Time Charter Agreement, the following insurance:

(1)   Hull and Machinery Insurance on each vessel per the American Institute Hull Clauses (June 2, 1977) or equivalent, covering fire, explosions and marine perils, together with full four-fourths collision and running down clauses [including Tower's Liability Insurance per the American Institute Tug Form (August 1, 1976) or equivalent, if vessel is a tug] in an amount equal to the full insurable value of the vessel.

(2)   Primary Protection and Indemnity Insurance and Excess Protection and Indemnity Insurance per the SP-23 Form (Revised 1/56) or equivalent including excess Collision (and excess Tower's Liability Insurance, if vessel is a tug) with limits of liability of not less than $10,000,000 each accident on each vessel.

(3)   Comprehensive General Liability Insurance, with limits of liability of not less than $10,000,000 each accident, with the watercraft exclusion deleted through, specifically including coverage for all of the contractual defense and indemnity obligations assumed by Owner under the terms of this Blanket Time Charter Agreement and an "action over indemnity buyback" (unless those contractual defense and indemnity obligations are insured in the Primary and Excess Protection and Indemnity Insurance), and deleting any provisions that might exclude coverage of claims by Owner's employees against the Indemnified Charterer Parties on the basis of that employment relationship.

(4)   Pollution Insurance for pollution liabilities including containment, cleanup and third party liability risks in the maximum amount required by

any applicable statute or treaty, but in no event for an amount less than $10,000,000 per occurrence.

B. The aforementioned policies maintained by Owner shall unconditionally waive subrogation in favor of the Indemnified Charterer Parties.

C. The policies required in (2, (3) and (4) above shall name the indemnified Charterer Parties as additional assureds to the full extent of the release, defense and indemnity obligations assumed by Owner in this Blanket Time Charter Agreement, and shall be endorsed to provide that their coverages are primary as respects any insurance maintained by the Indemnified Charterer Parties regardless of any "other insurance", "cover elsewhere" or similar provisions.

D. Owner, upon execution of this Blanket Time Charter Agreement, shall have executed and furnished to Charterer the Certificate of Insurance attached hereto as Exhibit "B."

E. All such policies of insurance shall provide thirty (30) days prior written notice by the underwriters to Charterer of cancellation or material alteration.

F. Owner's insurance obligations hereunder shall in no way whatsoever limit or restrict Owner's release, defense and indemnity obligations set forth in this Blanket Time Charter Agreement.

18. Neither party shall be liable for failure to perform any obligation hereunder in the event and to the extent that such performance is prevented or delayed by Acts of God (such as storms, floods, lightening, hurricanes, tornadoes, earthquakes, etc.), fire or explosion, stoppage of labor, strikes, lockouts, riots or civil commotions, or other differences with employees, laws, regulations, orders, acts of the United States or any state, city, parish or county, or any other governmental authority, arrest or restraint by princes, rulers or people. (The foregoing sentence shall have no application to the release, defense, indemnity and insurance provisions of this Blanket Time Charter Agreement, which provisions shall continue in effect.) During any such delays, charter hire shall not be earned by or paid to Owner.

19. Owner shall bear and pay all federal, state, city, municipal, parish and/or county taxes on each vessel and its operations hereunder. Each party will bear its own income taxes.

20. In the event that either party shall become insolvent or shall commit any act of bankruptcy or take advantage of any law for the benefit of debtors, or if a receiver shall be appointed for either party or for that party's property, either party may terminate this Blanket Time Charter Agreement by giving ten (10) days written notice to the other party.

21. Owner shall not have the right to assign this Blanket Time Charter Agreement without the written consent of Charterer, but Charterer shall enjoy the right to assign this Blanket Time Charter Agreement without the consent of Owner, provided, however, that Charterer shall remain responsible for the payment of hire on any vessel under charter at the time said Blanket Time Charter Agreement is signed.

22. No waiver by either party of any covenant, term or condition of this Blanket Time Charter Agreement shall be construed as a waiver of any other covenant, term or condition thereof, nor shall a waiver of any one breach thereof be construed as a waiver of any other or subsequent breach thereof.

23. Every notice required or permitted under this Blanket Time Charter Agreement shall be in writing, and shall be directed to the party for whom intended, at such party's address hereinafter specified, or such other address as may be substituted therefor by proper written notice. Notice shall be deemed given when such notice is deposited in the United States mail, properly addressed and postage prepaid.

EXHIBIT "A"

CHARTER ORDER CONFIRMATION

Pursuant to the terms of the Blanket Time Charter Agreement dated _____, LLOG Exploration Company, L.L.C., LLOG Exploration Offshore, Inc., LLOG Exploration & Production Company, LLOG Exploration Texas, L.P. (collectively "Charterer") hereby time charters the _____ from _____ ("Owner") at a rate of _____ said vessel to be delivered hereunder at _____ _____ no later than _____ and re-delivered at _____; provided, however, that if such vessel is not at the place of re-delivery at the time Charterer advises Owner that it is terminating this Charter Order, any delays in returning such vessel to the port of re-delivery caused by adverse weather conditions shall be limited to forty-eight (48) hours.

The term of this Charter Order shall be _____ _____.

In the event that this Charter Order shall be on a day-to-day, week-to-week, or month-to-month basis, at Charterer's option, Owner shall have the right to cancel said Charter Order on giving Charterer fifteen (15) days written notice.

Daily subsistence rate per person housed at Charterer's request on vessel shall be $_____.

Per minute charges for Charterer's use of vessel's cellular telephone shall be $_____.

Any miscellaneous expenses to be charged to Charterer are as follows:

_____
_____
_____

> LLOG Exploration Company, L.L.C.
> LLOG Exploration Offshore, Inc.
> LLOG Exploration & Production Company
> LLOG Exploration Texas, L.P.
>
> **Charterer**
>
> BY: _____
> Bob McMann
> Rig Operations Manager
>
> DATE: _____

Owner:    C & G Boats, Inc.
       P. O. Box 789
       Golden Meadow, LA 70357

Charterer:  LLOG Exploration Company, L.L.C.
      433 Metairie Road, Suite 600
      Metairie, Louisiana 70005

24. Regardless of when or how this Blanket Time Charter Agreement is terminated, Owner's warranty undertakings and Owner's release, defense, indemnity and insurance obligations shall remain in effect with respect to all pre-termination work and activities and with respect to all pre-termination accidents and occurrences.

25. THIS BLANKET TIME CHARTER AGREEMENT SHALL BE DEEMED TO BE AN AGREEMENT MADE UNDER THE GENERAL MARITIME LAWS OF THE UNITED STATES AND SHALL BE CONSTRUED, INTERPRETED AND ENFORCED IN ACCORDANCE THEREWITH.

IN WITNESS WHEREOF this Blanket Time Charter Agreement is executed in the presence of the undersigned competent witnesses on the ___9th___ day of __July__ 200_3_.

WITNESSES:      **OWNER:**

            C & G Boats, Inc.

*Jamie Adams*

*Justina Doucet*     BY: _[signature]_

            TITLE:  Office Manager

WITNESSES:      **CHARTERER:**

            LLOG EXPLORATION COMPANY, L.L.C.
            LLOG EXPLORATION OFFSHORE, INC.
            LLOG EXPLORATION & PRODUCTION
             COMPANY
            LLOG EXPLORATION TEXAS, L.P.

*Pam Baughn*     BY: _[signature]_
               Kemberlia K. Ducote
               Secretary-Treasurer

*Sandra Kuilman*    DATE:  7/18/03

# EXHIBIT "B"

## BLANKET TIME CHARTER AGREEMENT
## CERTIFICATE OF INSURANCE

** **PLEASE ATTACH A CURRENT COPY OF YOUR CERTIFICATE OF INSURANCE.**