# MASTER SERVICE CONTRACT

This **MASTER SERVICE CONTRACT** is made and entered into this _15_ day _February_, 20_06_, by and between **LLOG EXPLORATION COMPANY, L.L.C., LLOG EXPLORATION OFFSHORE, INC., LLOG EXPLORATION & PRODUCTION COMPANY,** and **LLOG EXPLORATION TEXAS, L.P.,** and their parent, affiliated and subsidiary entities (hereinafter called "Company"), and _Grand Isle Shipyard Inc._ (hereinafter called "Contractor").

In consideration of the mutual promises, covenants and agreements herein contained, the receipt and sufficiency of which are hereby acknowledged, Company and Contractor hereby agree as follows:

### 1.0 SCOPE OF AGREEMENT

1.1 Company may employ Contractor from time-to-time to perform work for Company in connection with Company's business of exploring for, developing and producing wells for oil, gas and other minerals. The work provided by Contractor may include the performance of services or the sale or rental of goods, equipment, materials, supplies, products or other tangible items. This Agreement sets forth the terms and conditions that govern the work that Contractor may perform or provide to Company. Company is not obligated by this agreement to retain Contractor for any work, nor is Contractor obligated to work for Company by virtue of entering into this Agreement. Company and Contractor agree that should Company order specific work in the future and Contractor accepts the work, this Agreement shall apply to the work of Contractor for Company.

### 2.0 MANNER OF PERFORMANCE OF WORK AND WARRANTIES

2.1 All work contemplated by this Agreement shall be timely performed by Contractor in accordance with the schedule as set forth by the Company. Where no specific schedule is provided, the work shall be performed in a timely manner. The work shall be diligently performed by Contractor in a good and workmanlike manner. Contractor agrees to perform the work where applicable in accordance with the specifications set forth by Company. When the work requires that Contractor provide goods, equipment, materials, supplies, products or other tangible items, Contractor warrants that these shall be free from all defects and fit for their intended purpose. Any and all defective goods, equipment, materials, supplies, products or other tangible items shall, as appropriate, be removed, repaired or replaced by Contractor without additional cost or risk to Company. Nothing contained in this paragraph 2.1 shall otherwise limit or restrict the rights of the parties to bring any claim at law or in equity arising out of the work of Contractor for Company, subject to the indemnity and insurance provisions provided for in this Agreement.

### 3.0 INDEPENDENT CONTRACTOR/STATUTORY EMPLOYEES

3.1 In the performance of Contractor's work, Contractor shall be deemed to be an Independent Contractor. Company shall designate the work it desires to be performed and the ultimate results to be obtained, but shall leave to Contractor the methods and details of performance of the work, Company being interested only in the results obtained and having no control over the manner and method of performance. It is the understanding and intention of the parties hereto that no relationship of master and servant shall exist between Company and Contractor or Contractor's employees, invitees, subcontractors or representatives. All work shall meet the approval of Company and shall be subject to the general right of inspection.

3.2 In all cases where Contractor's employees (defined to include Contractor's direct, borrowed, nominal, special, or statutory employees) are covered by the Louisiana Workers' Compensation Act, La. R.S. 23:1020 et seq., Company and Contractor agree that all work and operations performed by Contractor and its employees pursuant to the Contract are an integral part of, and are essential to, the ability of Company to generate Company's goods, products and services only for purposes of La. R.S. 23:1061(A)(1). Furthermore, Company and Contractor agree that Company is the statutory employer of Contractor's employees only for purposes of La. R.S. 23:1061(A)(3). Irrespective of Company's status as the statutory employer or special employer [as defined in La. R.S. 23:1061(C)] of Contractor's employees, Contractor and its insurers shall remain primarily responsible for the payment of Louisiana workers' compensation benefits to its employees and shall not be entitled to seek indemnification or contribution, nor co-insurance for any such payments from Company or its insurers.

3.3 Notwithstanding paragraph 3.1 above, should the employees of Contractor be deemed the borrowed employees of Company, Contractor and its insurers shall remain primarily liable for the payment of any workers' compensation benefits, maintenance and cure, or any other benefits due to Contractor's employees (defined to include Contractor's direct, borrowed, nominal, special, or statutory employees), and neither Contractor, or its insurers, shall be entitled to seek indemnification, contribution, nor co-insurance for any such payments from Company or its insurers.

### 4.0 PAYMENT

4.1 All work orders, delivery tickets and invoices shall bear Company's project name, including, without limitation, the specific lease name, well number and associated field name and number, the Contractor number assigned to Contractor by Company and shall be accurate and shall describe the work in reasonable detail, including equipment condition, item counts, applicable footage, measurements, weight, etc. and service and delivery dates.

Rev. 12/03

**Exhibit F**

4.2  Contractor shall invoice Company on a monthly basis for all charges. Company agrees to pay the undisputed amount of all Contractor's invoices within sixty (60) calendar days of the receipt of Contractor's invoice at the rates agreed upon, subject to same being accepted by Company as fully complying with all the terms, conditions, specifications and requirements of this Contract and Company's approval of Contractor's work. In the event of a dispute, Company shall notify Contractor orally or in writing within sixty (60) calendar days of receipt of Contractor's invoice. If interest is due on any payments, it shall be at a rate no greater than the prime rate quoted by the Wall Street Journal on the last date payment was due.

## 5.0  LIENS

5.1  Contractor agrees to pay all claims for labor, materials, services and supplies furnished by or to Contractor in connection with its work under this Contract, and agrees to allow no lien or charge to be fixed upon any lease, well, land or other property of Company in connection with the work performed hereunder. Contractor agrees to indemnify, protect, defend and hold harmless Company from and against all such claims, charges and liens, unless caused by Company's failure to pay Contractor without good cause. If Contractor shall fail or refuse to pay any claims or indebtedness incurred by Contractor in connection with Contractor's work under this Contract, it is agreed that Company shall have the right (but not the obligation) to pay any such claims or indebtedness, together with all expenses, costs or legal fees related thereto, out of any money due, or to become due, to Contractor. Notwithstanding the foregoing, Company agrees that it will not pay any such claim or indebtedness as long as the same is being actively contested by Contractor and Contractor has taken all actions necessary (including the posting of a bond when appropriate) to protect the property interests of Company or any other party affected by such claim or indebtedness. Contractor agrees to require this same agreement from each of its subcontractors and to defend and indemnify Company for any breach of such agreements by any of its subcontractors. Company shall have no obligation to make payment for work until Contractor has furnished proof, reasonably satisfactory to Company, that there are no unsatisfied claims for labor, materials, services or supplies or breach of Contractor's contractual obligations to defend and indemnify Company for death or injuries to persons or property damage as otherwise provided for herein.

## 6.0  TAXES

6.1  In connection with any of the Contractor's work or the performance of this Contract, Contractor agrees to pay (i) all taxes, licenses and fees levied or assessed on Contractor or on the work by any governmental agency, (ii) unemployment compensation insurance, (iii) old age benefits, (iv) social security, and (v) any other taxes upon the wages of Contractor, its agents, employees, subcontractors and representatives (with (i) through (v) collectively referred to as the "Taxes"). Contractor agrees to require this same agreement from each of its subcontractors and to defend and indemnify Company for any breach of or failure to obtain such agreements.

6.2  Contractor agrees to reimburse Company on demand for all such Taxes that Company may be required to pay on account of Contractor or its subcontractors or their respective employees, agents or representatives. Contractor agrees to furnish Company with the information required to enable it to make the necessary reports and to pay such Taxes or charges. At its election, Company is authorized to deduct all sums paid for such Taxes from such amounts as may be or become due to Contractor.

## 7.0  INDEMNITIES

7.1  In order to eliminate controversies between Contractor, Company, and their respective insurers, Contractor and Company agree to allocate between themselves responsibility for certain losses, involving personal injury, death and/or property damage, which may arise out of the performance of this Agreement. For the purposes of indemnity, the following definitions will apply: "Contractor Group" shall mean Contractor, its parent, subsidiary and affiliated companies and its subcontractors and all of such entities' officers, directors, and employees, and "Company Group" shall mean Company, its joint venturers, partners, joint interest owners, co-owners, co-lessees and its and/or their parent, subsidiary and affiliated companies and all of such entities' officers, directors and employees.

7.2  The "losses" for which the responsibility for liability and indemnities apply herein shall include by way of illustration, but not exclusively, every claim, demand, cause of action, suit, judgment, loss, liability, expense, interest, defense cost, litigation cost, legal fees (including fees incurred to enforce the defense and indemnity provisions of this Contract), fines, penalties, assessments, liens, damages, and all other related expenses of any kind or character.

7.3  The responsibility for liability and indemnities herein shall apply to all losses without regard to the cause(s) thereof including, without limitation, strict liability, ultra hazardous activity, breach of express or implied warranty, failure of equipment, "ruin" or other condition of premises, including any conditions that pre-exist the execution of this agreement, or the sole or concurrent negligence or other fault of the indemnitee or its employees and agent; except as otherwise provided for hereinbelow for certain property losses.

7.4  Contractor shall be responsible for and shall release, defend, and indemnify Company Group and its other contractors (excluding Contractor and subcontractors) for all losses arising out of or in connection with personal injury, illness or death of any employees of Contractor Group.

7.5  Company shall be responsible for and shall release, defend, and indemnify Contractor Group for all losses arising out of or in connection with personal injury, illness or death of any employee of Company Group.

7.6  Contractor shall be responsible for and shall release defend and indemnify Company Group for all losses arising out of damage to or destruction of any property of Contractor Group while performing Contractor's work for Company unless such property is lost downhole, and Contractor shall obtain waivers of subrogation in favor of Company Group from any insurers that insure Contractor Group's equipment.

Rev. 12/03

7.7 Contractor may relieve itself from and set aside all responsibility and indemnity obligations undertaken herein to Company for Contractor's subcontractors and/or the officers, directors and employees thereof by obtaining enforceable release, indemnity and defense obligations from these subcontractors in favor of Company with supporting insurance obligations as required in this Section 7.0 and Section 8.0 hereinbelow.

7.8 Company shall be responsible for and shall defend release and indemnify Contractor Group for all losses arising out of damage to or destruction of property of Company Group except to the extent such damage to or destruction of property is caused by or results from the sole or concurrent fault and/or the wanton and/or willful misconduct of Contractor Group and/or the failure, malfunction or defective condition of any of Contractor Group's goods, equipment, materials, supplies, products or other tangible items.

7.9 Contractor assumes full responsibility for and agrees to release, defend, and indemnify Company Group from and against any and all Losses of every kind and character on account of pollution or contamination, including control and removal thereof, which originates above the surface of the land or water from spills or leaks of fuels, lubricants, motor oils, pipe dope, paint, solvents, ballast, bilge, garbage, sewage and other liquids or materials emanating from equipment or substances used by Contractor Group which arises out of, in connection with, incident to or results directly or indirectly from Contractor's work for Company.

7.10 Notwithstanding anything contained in Paragraphs 7.7 through 7.9, Company shall be responsible for and shall release, defend, and indemnify Contractor Group for all losses arising out of the following exclusive list of enumerated losses even when caused by or resulting from the sole or concurrent fault of Contractor Group or the failure, malfunction or defective condition of any of Contractor Group's goods, equipment, materials, supplies, products or other tangible items:

 (a) An uncontrolled well blowout condition (including the cost to control a wild well, the removal of debris, and any pollution or contamination associated therewith;
 (b) Damage to any reservoir, geological formation or underground strata;
 (c) Damages resulting from the downhole use of radioactive tools or any contamination resulting therefrom (including retrieval and/or containment and clean-up);
 (d) Downhole loss of uninsured property of Contractor Group but limited to depreciated value only.

Company shall not be responsible for nor shall Company defend and indemnify Contractor Group for any of the above items (a) through (d) when the loss arises out of or results from the wanton and/or willful misconduct of Contractor Group.

7.11 In the event that both Company and Contractor separately owe enforceable contractual defense and indemnity to the same entity, Contractor will satisfy Contractor's obligations to said entity without Contractor or Contractor's insurer seeking recoupment, sharing, or other recovery from Company.

## 8.0 INSURANCE

8.1 Contractor agrees to procure and maintain insurance of the types and amounts set forth in Exhibit "A" during the term of this Contract at its sole expense with deductibles for its own account and with responsible insurance companies that are acceptable to Company and authorized to do business in the jurisdictions in which the work is to be performed. It is the intent of the parties that the insurance obligations of Contractor under this Contract support the indemnity obligations under this Contract and operate concurrently and consistently therewith. Prior to the commencement of any work or service contemplated by this Contract, Contractor shall provide or cause its insurance carriers to provide to Company on a form acceptable to Company a certificate of insurance signed by authorized representatives of the insurance company evidencing all coverages, extensions, endorsements and limits required to be carried under the provisions of this Contract. Failure to maintain said insurance shall constitute sufficient grounds for immediate cancellation or suspension of this Contract by Company. It is expressly understood and agreed that the insurance required in Exhibit "A" represent the Contractor's minimum requirements and are not to be construed to void or limit the parties indemnity obligations as contained in the Contract.

8.2 All insurance required by this Contract shall be endorsed to be primary insurance and receive no contribution from all other insurance of Company Group as defined in 7.1 herein, and such endorsement shall take precedence over any "other insurance" clause contained in the policy of insurance. All insurance policies shall waive subrogation against Company Group as defined in 7.1 herein. With the exception of workers' compensation insurance, all insurance policies shall be endorsed to provide that Company Group as defined in 7.1 herein is an additional insured. No insurance policy shall be cancelled, altered or amended without thirty (30) days written notice to Company.

8.3 To the extent Contractor subcontracts any of the work to be performed by Contractor herein, Contractor agrees to require its subcontractors to provide identical insurance to that required of Contractor in this Contract.

8.4 In order to comply with the public policy of Louisiana, Contractor shall procure and shall cause Company to be separately invoiced for the underwriting costs of the waivers of subrogation and additional insured endorsements required herein. The amount charged to Company for the underwriting cost shall be requested at a rate based upon the gross revenues paid to Contractor for the work performed by Contractor under this Contract and shall be separately calculated on an annual basis and paid by Company directly to Contractor's insurer or its designated agent. Payment by Company shall constitute an acknowledgement by the insurer that Company has borne the actual cost of the insurance coverage provided and is in compliance with LSA R.S. 9:2780. Upon payment by Company of the underwriting costs on an annual audited basis, the underwriters shall be required by Contractor to acknowledge the existence of coverage as required by this Contract for all occurrences during the applicable policy year, even though the payment may not yet have been issued or received by the underwriter prior to the date of the occurrence.

8.5 Whenever the indemnity and insurance requirements in this Contract are governed by Texas law, both Contractor and Company acknowledge that in that instance, each party provides insurance in equal amounts so as to qualify for the mutual indemnity obligation exception provided for in Section 127.005 of the Texas statutes.

8.6 All naming and waiving on Contractor's insurance shall apply in favor of Company only to the extent Contractor has agreed to indemnify Company under this contract.

Rev. 12/03

## 9.0 FORCE MAJEURE

9.1 When either party is rendered unable, wholly or in material part, by reason of Force Majeure to fulfill any of its ongoing obligations under this Contract, such obligation of the affected party shall be suspended during the continuation of the effects of the force majeure. When the work provided by Contractor to Company involves the provision of a rig and/or vessel, to the extent a force majeure causes such rig and/or vessel to be separated from the well site platform or location, Company is relieved of any obligations it has to Contractor as the result of any loss that occurs subsequent thereto. "Force Majeure" shall mean acts of God (such as storms, floods, lightening, hurricanes, tornadoes, earthquakes, etc.), fire, warlike action, insurrection, revolution, piracy, civil war, labor disputes, acts of public enemies, or rules or regulations of any governmental authorities, but only to the extent that the "force majeure" could not have been avoided or overcome by the exercise of due diligence by such party.

## 10.0 TERMINATION

10.1 Either party may terminate this Contract upon ten (10) days written notice to the other party. Termination of the Contract shall not terminate any parties' rights and obligations for work performed or entitlement to be paid on a pro rata basis prior to termination. Contractor and Company agree that the law of substantial performance shall not apply to Contractor's work for Company under this Contract. In the event a specific job order for work is to be completed after notice of termination, this Contract shall remain in effect until the work is completed. Company, at is sole discretion, in addition to its right to terminate this Contract, may terminate any job order issued hereunder immediately upon written notice to Contractor.

## 11.0 PATENTS

11.1 In addition to all other indemnifying provisions contained herein, Contractor represents and warrants that the use or construction of any and all components included in Contractor's work, and the methods used by Contractor to perform the work, do not infringe on any license, patent, copyright or trademark that has been issued or is pending for issuance. Contractor agrees to defend and indemnify Company Group from any and all Losses relating to, resulting from or in connection with such infringement of a license, patent, copyright or trademark, including, but not limited to, claims for inducement, conspiracy or contribution to an infringement.

## 12.0 LAWS, RULES and REGULATIONS

12.1 Contractor agrees to abide by and conduct all work for Company in compliance with all applicable federal, state and local laws, rules, regulations, orders and/or ordinances. As respects the compliance requirements of this Contract with federal laws, rules, regulations, orders and/or ordinances, Contractor shall comply with the non-exclusive, illustrative list of federal laws, rules, regulations, orders and/or ordinances as set forth in Exhibit "B" of this Contract, as amended or modified, but Contractor is relieved of any compliance requirements with the provisions of any federal laws, rules, regulations, orders and/or ordinances that are revoked or repealed subsequent to execution of this Contract. Furthermore, Contractor acknowledges that the work performed for Company may be located in areas where Company is required by law or contract to conduct its operations in compliance with certain laws, rules, regulations, order and/or ordinances including, but not limited to, those set forth in Exhibit "B." In the event Company is required by any governmental entity to engage in any activity, perform any tests, and/or conduct any surveys or in the event Company is fined or assessed a penalty for non-compliance with any laws, rules, regulations, orders and/or ordinances as the result of or arising in connection with the work conducted by Contractor, Contractor agrees to be directly responsible for the performance of the activity, test and/or survey so required of Company; but to the extent Company performs the activity, test and/or survey arising or resulting from Contractor's work for Company or Company pays the fine or penalty arising or resulting from Contractor's work for Company, Contractor agrees to reimburse and/or indemnify Company for, or to allow any funds due to be paid to Contractor by Company to be set-off by the amount paid by Company for the activity, test or survey so required or the amount of the fine or penalty assessed; including any costs, expenses and/or attorney's fees incurred by Company to obtain reimbursement and/or indemnity or to defend against any action taken as a result of set-off. The fact that the activity, test and/or survey required and/or the fine or penalty assessed shall be following or connected with a "force majeure" as set forth in Paragraph 9.0 shall not relieve Contractor of its obligations under this paragraph.

## 13.0 SAFETY

13.1 Contractor warrants that all work conducted by Contractor for Company shall be performed in a safe and workmanlike manner for both the protection of others and for protection of the environment. In order to work safely, Contractor warrants that Contractor maintains a safety program and requires its employees to undergo all safety training necessary for Contractor's work to be performed in a safe and workmanlike manner. Contractor further warrants that all equipment owned or furnished by Contractor in connection with Contractor's work, including equipment that is rented, leased or borrowed from others, shall be maintained in accordance with manufacturer, industry and/or governmental standards and that any such equipment shall possess all safety or operational features appropriate or necessary for its use in a manner that is safe for both the protection of others and for protection of the environment. Company relies upon Contractor's skill and expertise as an independent contractor to properly train its employees in safety and to maintain equipment furnished by Contractor as described above in a safe manner.

Rev. 12/03

13.2  Contractor acknowledges that Contractor's work for Company may be within the jurisdiction of certain federal, state or local governmental agencies that require operations and/or equipment to be conducted and/or used in accordance with certain standards or in a certain manner for the protection of persons or the environment. Such agencies, by way of example, may include OSHA, MMS, or the USCG. Contractor acknowledges that such federal, state or local governmental agencies are empowered with police powers to enforce compliance with applicable rules and regulations for the safety of persons and the environment. In the event that Company is issued a fine or penalty by any such governmental agency as the result of the work conducted by Contractor for Company, Contractor agrees to be responsible for the payment of the fine or penalty. Furthermore, should such governmental agency require the abatement of a condition resulting from or connected with the work conducted by Contractor for Company, Contractor agrees to be responsible for the costs thereof. In the event Company pays any such fine or penalty or the costs of abatement of such a condition, Contractor agrees to reimburse and/or indemnify Company for, or to allow any funds due to be paid to Contractor by Company to be set-off by, the amount paid by Company for the fine or penalty or the costs of abatement of the condition; including any costs, expenses and/or attorney's fees incurred by Company to obtain reimbursement and/or indemnity from Contractor or to defend against any action taken as a result of set-off.

## 14.0  ALCOHOL, DRUGS AND FIREARMS

14.1  Company prohibits the transportation, use or possession of any deadly weapons, explosives, alcoholic beverages, illegal drugs, narcotics, or other controlled, dangerous substances for which a person does not have a current prescription, at any location utilized by Contractor in connection with work performed by Contractor for Company, including all transportation utilized to access any location where any part of the work is being performed. Contractor acknowledges that it maintains a policy prohibiting its employees or any other person who performs its work for Company from using, transporting or possessing any deadly weapons, explosives, alcoholic beverages, illegal drugs, narcotics or other controlled substances for which a person does not have a current prescription.

14.2  Contractor agrees, prior to the commencement of any work for Company, to obtain consent from any person who conducts such work to allow unannounced periodic inspection of his/her person or property. Contractor further agrees to conduct these inspections whenever randomly requested to do so by Company to confirm that this policy is being followed and enforced. Contractor agrees that any person used by Contractor to perform its work for Company who either violates this policy or refuses to submit to an inspection when requested will be removed from the work.

## 15.0  MISCELLANEOUS PROVISIONS

15.1  Exclusive Contract: It is contemplated that from time to time during the term of this Contract Company may request either orally or in writing specific work by Contractor for Company. In the event that Contractor agrees to undertake such work as requested, then the provisions of this Contract shall govern and be fully applicable to all such work and the relationship of the parties relating to or arising out of the performance of such work shall be controlled and regulated hereby. In each instance, the consideration to be paid by Company to Contractor shall be as agreed by the parties.

15.2  Preemption: This Contract shall preempt and supersede all other writings or understandings between the parties, whether oral or written. In the event of any conflict between the provisions hereof and any prior or subsequent oral or written work order, delivery ticket, invoice, or other agreement between the parties, the provisions of the Contract shall control, unless this Contract is modified by a subsequent written document signed by an authorized representative of both parties.

15.3  Interpretation: Should any provision of this Contract require interpretation it is agreed that the court interpreting or considering the provision shall not apply any presumption that the terms of the Contract shall be more strictly construed against the party that itself or through its agent prepared the document.

15.4  Modification / Entire Agreement: No change, modification, amendment, extension, renewal, ratification or waiver of this Contract or any of its provisions shall be binding unless it is in writing and signed by both parties. This Contract constitutes the entire understanding between the parties and supercedes all prior contracts or agreements between the parties for any work ongoing at the time the Contract is executed or for any future work after its execution. Furthermore, any written waiver of any of the provisions of this agreement in a particular instance(s) shall not preclude subsequent enforcement thereof.

15.5  Assignment: Contractor agrees that it will not assign nor delegate this Contract or any of Contractor's work pursuant to this Contract and will not assign any sum that may accrue to Contractor hereunder, without the prior written consent of Company.

15.6  Maintenance of Records – Right to Audit: Company shall have the right to audit Contractor's books and records relating to all invoices issued with respect to work provided during the term of this Contract. Contractor agrees to maintain such books and records for a period of three (3) years from the date such work was completed and to make such books and records available to Company at any time or times during business hours within such three (3) year period.

15.7  Gifts and Gratuities: It is considered to be in conflict with Company's interests for its employees or any member of their immediate family to accept payment, extravagant gifts or entertainment, services, or loans in any form from anyone soliciting business, or who may already have established business relations with Company. Gifts of nominal value and entertainment, meals, and social invitations that are customary and proper under the circumstances and do not place the recipient under obligation are acceptable. If any employee of Company should solicit a gift or gratuity from Contractor, Contractor hereby agrees to notify Company's designated representative of such act. It is agreed that the Company will hold such notification in confidence. It is further understood that failure by Contractor to comply with Company's policies regarding gifts and gratuities may, at the Company's option, result in the termination of this Contract and may further preclude any future dealings between the parties.

15.8  Confidentiality: Contractor agrees to keep the terms and conditions of this Contract and all information or documentation obtained by Contractor in the conduct of Contractor's work under this Contract confidential and agrees that

Rev. 12/03

neither it nor anyone on its behalf will disclose such information without the express written consent of Company. Contractor specifically promises not to release the terms, conditions or any other information regarding this Contract to any trade publication, professional publication, industry association or organization, news media or to anyone else whatsoever, either directly, indirectly, through third parties or otherwise.

15.9 Accidents: Contractor shall immediately notify Company of all accidents or incidents and shall prepare and furnish Company with a copy of an accident report within three days of any accident or incident arising out of or during the course of work for Company.

15.10 Aircraft and Watercraft: In the event the work involves the use of aircraft or watercraft of any type owned or operated by Contractor, Contractor shall comply with Paragraphs B and C of Exhibit "A".

15.11 Governing Law: This Contract shall be governed by the General Maritime Law of the United States when Contractor's work is over or upon navigable waters, whether onshore or offshore. Otherwise, this Contract shall be governed by the laws of the State in which Contractor's work is performed.

15.12 Severability: If any provision, in whole or in part, of this Contract is declared invalid or unenforceable, the remaining provisions shall not be affected thereby and the Contract shall be valid and enforceable in all other respects.

15.13 Titles: The titles of the sections and subsections of this Contract are for convenience and reference only and are not to be considered in the meaning of any of the provisions of this Contract.

15.14 Punitive Damages: Both Company and Contractor agree that in connection with any legal action taken by one against the other, neither will seek recovery of punitive damages; and any such claims available to Company or Contractor against the other for punitive damages are hereby waived.

15.15 Consequential Damages: Both Company and Contractor agree that in connection with any legal action or claim made by one against the other, neither will seek recovery of consequential damages. Nothing contained herein shall prevent neither Company nor Contractor from seeking recovery of consequential damages arising out of or resulting from the wanton and/or willful misconduct of the other.

15.16 Attorney's Fees: Should it be necessary for either party to retain an attorney to enforce any of the provisions of this Contract, that party shall be entitled to recover the attorney fees and litigation costs incurred in enforcing this contract.

15.17 Notice: All notices to be given pursuant to this Contract shall be in writing and shall be sent to Company at:

    433 Metairie Road, Suite 600
    Metairie, Louisiana 70005
    Attention: Kemberlia K. Ducote

and to Contractor at:
    P.O. Box 820
    Galliano, La. 70345

Attention: Bryan Pregeant

**ORIGINAL EXECUTED** by the parties hereto the day and year first above written.

LLOG EXPLORATION COMPANY, L.L.C.
LLOG EXPLORATION & PRODUCTION COMPANY
LLOG EXPLORATION OFFSHORE, INC.
LLOG EXPLORATION TEXAS, L.P.

BY: _____
Kemberlia K. Ducote
Secretary-Treasurer

(CONTRACTOR)

BY: _____
TITLE: _____

# EXHIBIT "A"
## MINIMUM INSURANCE REQUIREMENTS
## TO BE MAINTAINED BY CONTRACTOR

The following coverages, where applicable, maintained in accordance with Section 8.0 of this Contract, including the endorsements required in Section 8.0, shall also contain the following designated special endorsements.

A. FOR ALL CONTRACTORS PERFORMING WORK UNDER THIS CONTRACT:

1. Workers' Compensation and Employer's Liability Insurance with the following special endorsements:

   a. Coverage extension to include the Longshore and Harbor Workers' Compensation Act and the Outer Continental Shelf Lands Act.

   b. "Maritime" coverage endorsement, including Transportation, Wages, Maintenance and Cure, and Death on the High Seas Act.

   c. "Borrowed Servant" and/or alternate employer Endorsement.

   d. Employer's Liability shall be with limits not less than $1,000,000.00.

   e. In the event primary maritime endorsements limits are set at an amount less than $1,000,000.00, following form excess maritime liability insurance shall be maintained to increase the combined coverage to $1,000,000.00.

2. Broad Form Commercial General Liability insurance with limits of not less than $1,000,000.00 per occurrence including the following supplementary coverages.

   a. Contractual Liability to cover liabilities assumed under this agreement.

   b. Watercraft Exclusion or Protection and Indemnity Exclusion deleted.

   c. Sudden and Accidental Pollution and Contamination Coverage provided.

   d. The care, custody and control exclusion deleted or, alternatively, coverage provided for under a separate inland marine policy form.

   e. Completed operations/products liability.

   f. Broad form property damage liability.

   g. <u>In Rem</u> endorsement.

   h. Explosion, underground resource coverage, blowout and cratering and independent contractor coverage.

   i. Gulf of Mexico extension.

3. Comprehensive Automobile Liability insurance. Such insurance shall extend to owned, non-owned and hired automobiles used by Contractor in the performance of this agreement. The limits of liability of such insurance shall be not less than a combined single limit of $1,000,000.00 per occurrence for bodily injury and for property damage.

4. Inland Marine/Equipment Floater – Such insurance shall provide all risk replacement cost coverage with waterborne exclusion removed.

5. Excess Liability or Umbrella insurance following form with (1.), (2.) and (3.) above with limits of not less than $5,000,000.00 for contractors who perform work solely on land based, onshore, non-maritime

Page 7 of 10

Rev. 12/03

locations. All other contractors shall maintain excess liability or umbrella insurance following form with (1.), (2.) and (3.) above, with limits of not less than $10,000,000.00.

B. WHERE THE WORK PERFORMED BY CONTRACTOR FOR COMPANY INVOLVES THE PROVISION, USE AND/OR CHARTER OF VESSELS OR MARINE EQUIPMENT, IN ADDITION TO THE COVERAGES REQUIRED IN SECTION A. ABOVE, THE FOLLOWING INSURANCE IS REQUIRED:

    1. Full Form Hull and Machinery insurance equivalent to the American Institute Time Hulls Form Amended December, 1995, including Collision Liability, with the sistership clause unamended, with limits of liability at least equal to the full value of the vessel and with navigational limits adequate for Contractor to perform the work and services hereunder. Where the vessel(s) engage in towing operations, said insurance shall include full Tower's Liability with the sistership clause unamended. Said policy shall be endorsed to provide that additional assureds may, but shall not be obligated to, sue and labor. This insurance may exclude coverage for Collision and Liability and Tower's Liability, provided such risks are fully covered under the Full Form Protection and Indemnity Liability insurance as described below. Any language in this policy which limits the coverage to an insured who is not the Owner or is not entitled to limitation of liability shall be deleted.

    2. Full Form Protection and Indemnity insurance including, but not limited to, coverage for injuries to or death of masters, mates and crews of vessels with limits of not less than $1,000,000.00, including insurance for voluntary removal of wreck and/or debris, and liability for seepage, pollution, containment and cleanup per Water Quality Improvement Act as amended. This insurance shall be equivalent to Form SP-23, including coverage for crew, Collision and Liability (with the sistership clause unamended), sue and labor and salvage charges, and Contractual Liability, pollution. Where the vessel(s) engage in towing operations, said insurance shall include full Tower's Liability with the sistership clause unamended. Navigational limits to include Inland and Coastal waters of the states where work is to be performed including sufficient extension in to the Gulf of Mexico to provide for the location where work is to be performed. Any language in this policy which limits the coverage to an insured who is not the Owner or who is not entitled to limitation of liability shall be deleted.

    3. Contractor may elect to insure crew and third party maritime risks under coverages required pursuant to Paragraphs A.1 and A.2 above in lieu of obtaining the coverage required by Paragraph B.2 but, in such instance, Contractor agrees that the coverages afforded as required in Paragraphs A.1 and A.2 shall be as broad as and meet the minimum requirements of Paragraph B.2.

    4. Excess/Umbrella insurance coverage as required under Paragraph A.5 shall be endorsed to include Excess Protection and Indemnity, Excess Collision and Tower's Liability, all following form of the primary insurance coverages.

C. WHERE THE WORK PERFORMED BY CONTRACTOR FOR COMPANY INVOLVES THE PROVISION, USE AND/OR CHARTER OF AIRCRAFT OR HELICOPTERS, IN ADDITION TO THE COVERAGES REQUIRED IN SECTION A. ABOVE, THE FOLLOWING INSURANCE IS REQUIRED:

    1. Aircraft Liability, including Hull Insurance, All Risk Ground and Inflight Insurance and Non-Owned Aircraft Liability Insurance, including passenger liability, with $25,000,000.00 single limit bodily injury and property damage for use of owned or non-owned aircraft.

Rev. 12/03

EXHIBIT "B"
COMPLIANCE WITH FEDERAL, STATE AND LOCAL LAWS,
STATUTES, EXCUTIVE ORDERS, RULES AND REGULATIONS

In accordance with Paragraph 12.0 of this Agreement, the following is an illustrative, non-exclusive list of laws, rules, regulations, orders or ordinances with which Contractor shall comply, where applicable:

a. Equal Employment Opportunity: Executive Order 11246; 41 C.F.R. §60-1.4; 48 C.F.R. §52.222-26.

b. Affirmative Action Compliance Program: Executive Order 11246; 41 C.F.R. §60-1.40; 41 C.F.R. Part 60-2

c. Equal Employment Opportunity Employer Information Report: Employer Information Report; EEO-1; Executive Order 11246; 41 C.F.R. §60-1.7

d. Certificate on Non-Segregated Facilities: Executive Order 11246; 41 C.F.R. §60-1.8

e. Affirmative Action for Disabled Veterans and Veterans of the Vietnam Era: Vietnam Era Veteran's Readjustment Assistance Act of 1972, as amended; 41 C.F.R. §60-250.4; 41 C.F.R. §61.250.10; 48 C.F.R. §52.222-35

f. Affirmative Action Compliance Program: Vietnam Era Veterans Readjustment Act of 1972, as amended; 41 C.F.R. §60-250.5

g. Affirmative Action for Individuals with Disabilities: Rehabilitation Act of 1973, as amended, 29 U.S.C. §793 *et. seq.*; Executive Order 11758; 41 C.F.R. Part 60-741; 48 C.F.R. §52.222-36

h. Affirmative Action Compliance Program: Rehabilitation Act of 1973, as amended, 29 U.S.C. §793 *et. seq.*; 41 C.F.R. Part 60-741

i. Utilization of Small Business, Small Disadvantaged and Women-Owned Small Business Concerns: Small Business Act, as amended; 48 C.F.R. §52.219-8

j. Small Business, Small Disadvantaged and Women-Owned Small Business Subcontracting Plan: Small Business Act, as amended; 48 C.F.R. §52.219-9

k. Occupational Safety and Health: Occupational Safety and Health Act of 1970, as amended, 29 U.S.C. §651 *et. seq.*; 29 C.F.R. §1901 *et. seq.*

l. Age Discrimination: Age Discrimination in Employment Act of 1967, as amended; 29 U.S.C. §621 *et. seq.*; Executive Order 11141; 29 C.F.R. §850 *et. seq.*

m. Non-Discrimination in Outer Continental Shelf Contracting: Outer Continental Shelf Lands Acts, 30 C.F.R. §270 *et. seq*

n. Clean Air and Water Certification: Clean Air Act, as amended, 42 U.S.C. §7401 *et. seq.*; Clean Water Act, as amended, 33 U.S.C. §1251 *et. seq.*; Executive Order 11738

o. National Environmental Policy Act of 1969, as amended, 42 U.S.C. §4321 *et. seq.*

p. Noise Control Act of 1972, as amended, 42 U.S.C. §4901 *et. seq.*

q. Solid Waste Disposal Act, as amended, 42 U.S.C. §6901 *et. seq.*

r. Safe Drinking Water Act, as amended, 42 U.S.C. §201; as amended, 42 U.S.C. §300f *et. seq.*

s. Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, 42 U.S.C. §9601 *et. seq.*

t. Toxic Substances Control Act, 40 C.F.R. Subchapter R

u. Resource Conservation and Recovery Act of 1976, as amended, 42 U.S.C. §6901 *et. seq.*

Rev. 12/03

v. The Certification of Compliance with Environmental Laws prescribed in 40 C.F.R. 15.20

w. Paragraphs 1 through 7 of the contract clauses contained in Section 202 of Executive Order 11246 of September 24,1965 (30 F.R. 12,319), and any future amendments or revisions thereto

x. The Civil Rights Act of 1964 as amended

y. Executive Order 11246, as amended by Executive Order 11375

z. Executive Order 11246, Section 202, as amended by Executive Order 11375; 41 C.F.R. Chapter 60

aa. Executive Order 11701 dealing with listing of employment openings

bb. Executive Order 11458 dealing with the utilization of minority business enterprises which are fully incorporated herein by reference

cc. Vietnam Era Veterans Readjustment Assistance Act of 1974

dd. The Rehabilitation Act of 1973

ee. Fair Labor Standards Act of 1983, Sections 6, 7 and 12, as amended

ff. Executive Order 11625 dealing with minority business enterprises

gg. All rules and regulations promulgated by the Administrator of the Environmental Protection Agency, including, but not limited to, Clean Air and Water, 48 C.F.R. §52.223-2; Hazardous Material Identification and Material Safety Data, 48 C.F.R. §52.223-3; and the Clean Water Act, as amended, 42 U.S.C. §1251 *et. seq.*

hh. If the value of this Master Service Agreement exceeds $10,000.00, Contractor shall provide a Certificate of Non-Segregated Facilities, 41 C.F.R. §60-1.8, to Company

ii. Immigration Reform and Control Act of 1986, as amended, 8 C.F.R. Part 274a. Contractor agrees and covenants that none of its employees, or employees of its subcontractors, who provide services to Company pursuant to the attached Master Service Agreement are unauthorized aliens as defined in 8 C.F.R. §274a.1(a)

jj. Well Control and Production Safety Training: Subpart O, 30 C.F.R. 250

kk. Drug Testing Program, 49 C.F.R. Part 40. Immediately following the execution of the Master Service Agreement, Contractor shall send a copy of its drug testing program, and any amendments thereto as they become effective, as well as copies of its quarterly reports to the Department of Transportation, to the following address:

        LLOG Exploration Company
        433 Metairie Road, Suite 600
        Metairie, LA 70005
        Attention: Kemberlia K. Ducote