In the United States District Court
for the Southern District of Texas,
Houston Division

| | |
|---|---|
| Mark Flora,<br><br>    *Plaintiff*,<br><br>v.<br><br>Transocean Drilling (USA), Inc., *et al*,<br><br>    *Defendants*. | Civil Action No:<br>4:19-cv-02328<br>Jury Requested |

### Defendant Grand Isle Shipyard, LLC's
### Reply to Plaintiff's Response to
### Defendant's Motion for Summary Judgment

To the Honorable Judge David Hittner:

Defendant Grand Isle Shipyard, LLC ("GIS") files its Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment (ECF No. 59). In support of same, GIS would show unto the Honorable Court as follows:

### 1. Summary of the Argument

Plaintiff's Response to GIS' Motion to Summary Judgment fails to establish that GIS owed him a duty as a matter of law. Plaintiff has provided no authority, no document, and no competent or admissible

testimony that GIS owed Plaintiff a duty to eliminate alleged pinch points on the *M/V Maggie A*. To the contrary, the competent testimony on the issue establishes that the duty and responsibility for the arrangement and stowage of cargo rests with the appropriate parties: her captain and her crew.

In an effort to get around his inability to establish that GIS owed Plaintiff any such duty, plaintiff slices, dices, and flat out misrepresents the testimony of GIS' corporate representative. In line with the testimony from plaintiff's employer and defendant's liability expert, GIS corporate representative confirmed the responsibility lies with the *M/V Maggie A*'s captain and crew.

Plaintiff has failed to provide sufficient evidence to defeat GIS' summary judgment on the issue of whether GIS' conduct was a "substantial factor" in bringing about his injuries.

Plaintiff's self-serving, contradicted, conclusory, and uncorroborated testimony is inadmissible and insufficient to defeat GIS' summary judgment on his claims of gross negligence and request for punitive damages.

Plaintiff has failed to establish that his injury was a foreseeable result of GIS' actions. Plaintiff has failed on all fronts – GIS' Motion for Summary Judgment should, in all things, be granted.

## 2. Evidence

GIS provides the following documents as evidence and incorporates them for all intents and purposes:

- Exhibit 1: Affidavit of David H. Scruton, defendant GIS' marine operations expert.
- Exhibit 2: March 17, 2021 deposition testimony of Ralph Lagarde, Jr., General Manager of Operations for plaintiff's employer, Gulf Logistics Operating, LLC.
- Exhibit 3: May 25, 2017 Job Safety Analysis Worksheet

## 3. Arguments & Authorities

*A. Plaintiff has failed to establish that GIS[1] owed plaintiff a duty.*

The "[d]etermination of a tortfeasor's duty is a question of law

---

[1] Plaintiff's handwringing over GIS' purported "attempts to insinuate that GIS may have not loaded the Maggie A vessel" is insincere and for naught. First, GIS conceded for the purposes of its summary judgment that it had loaded the vessel ("Even if true..."). See ECF No. 45, pp. 3, 10-13. Second, GIS filed its motion for summary judgment on March 16, 2021. Id. At the time of its filing, GIS had not located any documents related to this load. Subsequently, they were located and produced prior to the deposition of GIS' corporate representative. The "insinuations" didn't fall apart; instead, the uncertainty was resolved.

and thus a function of the court...”[2] As GIS argued in its motion for summary judgment, "[a] plaintiff pursuing a maritime tort theory is owed a duty of ordinary care *under the circumstances.*"[3] The determination of the existence and scope of a duty "involves a number of factors, including most notably the foreseeability of the harm suffered by the complaining party." Again, duty "may be owed only with respect to the interest that is foreseeably jeopardized by the negligent conduct." Thus, if the injuries suffered allegedly as a result of the defendant's negligent conduct were not foreseeable, the defendant owed no duty to the plaintiff is not liable as a matter of law.[4]

GIS owes plaintiff no duty of care *under the circumstances* as it did not employ him, did not direct or supervise his work, and was not responsible for training him. Moreover, plaintiff has failed to point to a single statute, case, or document that imposes upon GIS a duty to oversee the arrangement of the cargo on the vessel. Concomitantly,

---

[2] *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 211 (5th Cir. 2010) (quoting *Miss. Dep't of Transp. V. Signal Int'l LLC (In re Signal Int'l LLC)*, 579 F.3d 478, 490 (5th Cir. 2009).
[3] *Id.* (quoting *Withhart v. Otto Candies, L.L.C.*, 431 F.3d 840, 842 (5th Cir. 2005)) (emphasis added).
[4] *Id.*

plaintiff has failed to establish that *under the circumstances of this case*, GIS owed him any such duty. To the contrary, GIS owed him no such duty as a matter of law.

> B. *The stowage and securing of cargo are the responsibility of the vessel's crew under the vessel's command.*

It is undisputed that plaintiff was not injured during the loading of the cargo. Plaintiff claims he was injured while *unloading* the cargo at another dock. The absence of any opinion from plaintiff's own liability expert is glaring. Instead, plaintiff relies solely on his own testimony and misleads the Honorable Court as to the testimony of GIS' corporate representative (discussed below).

David Scruton, defendant's expert, is unequivocal and uncontradicted:

- The stowage and securing of cargo, and appropriate placement of pre-slung slings and "D" rings, are the responsibility of the vessel's crew under the direction of the vessel's command.[5] When

---

[5] *See* Exhibit 1, Affidavit of Defendant's expert in marine operations and safety, David H. Scruton.

cargo is loaded on a vessel, the vessel's command is totally responsible for the cargo stowage and securing. Before the vessel departed the dock, the Captain and Chief Mate would have to inspect the cargo stow and approve it. That is part of a vessel's industry standard responsibility.[6]

- The position of the "D" ring, as alleged, between the grocery box and the ship's bulwarks/cargo rails, was neither unusual, out of the ordinary, nor in violation of any industry practices or procedures.[7]

- Plaintiff's bald allegation that there should have been more space between the grocery boxes is contrary to all industry standards for safe stowage. Cargoes are typically stowed tightly against each other to avoid cargo shifting during the vessel's motion while on passage.[8]

The corporate representative for plaintiff's employer, Ralph Lagarde confirmed as much:

---

[6] *Id.*
[7] *Id.*
[8] *Id.*

> Q. In fact, before the MAGGIE A leaves the dock, are the riggers onboard the boat required to do a visual inspection of the cargo and the rigging that's loaded?
>
> **A. Yeah. So that's part of the – their post-voyage, that's one of the things that the crew should do, is walk around the boat and make sure that everything is secure.**
>
> **Q. You mean pre-voyage?**
>
> **A. Yes.**
>
> Q. Okay. All right.
>
> A. Did I say post?
>
> Q. You said post.
>
> A. I'm just looking toward the end, I guess, huh.
>
> **Q. But you meant before -- before the boat leaves the dock --**
>
> **A. Yes.**
>
> Q. -- right?
>
> A. Yes.[9]

The sentiment was echoed by GIS' corporate representative:

> Q. Is this something that just takes a few seconds, or how long

---

[9] Exhibit 2, March 17, 2021 deposition of Ralph Lagarde (159:12 to 160:4).

do the -- does the company spend doing a JSA for a crane operation?

A. No, it's -- it's a process. It could be up to 30 minutes.

Q. Okay. And in that -- in those 30 minutes, you would discuss, you know, things you needed to look out for, you know, would you -- would you take into account, you know, we need to put these things down in a way that they can be offloaded, once they get to the next stop?

**A. That part of the job is done by the people on the vessel.**

Q. Okay. Is it -- is it true that GIS wants to make sure that its employees load items onto vessels safely?

A. Yes.

Q. And is it important for the company, to make sure that when they're loading materials onto vessels safety, that they don't create pinch points or confined spaces?

A. Say that again.

Q. Sure. Is it important to GIS to load materials onto vessels in such a way that they don't create pinch points or confined spaces?

**A. It's important to us to load the vessel. We don't have control over how a vessel's placed; that is totally on the captain and deckhand of that vessel.**

Q. Okay.

**A. We place it where they tell us to place it, and**

10  how they tell us to place it.[10]

*C. Plaintiff is misleading the Honorable Court- GIS has not admitted duty, breach, or foreseeability*

Plaintiff's representation to the Honorable Court regarding GIS' representative's testimony is nothing short of astounding. In one such representation, plaintiff had to omit over half the answer to try to make the testimony fit his purposes.

What follows are some of the false representations made by plaintiff to the Honorable Court and the actual testimony:

- "GIS admits it **must load** items onto vessels safely."

    - **Actual testimony**:

        Q.  Okay.  Is it -- is it true that *GIS* **wants to** make sure that its employees load items onto vessels safely?
        A.  Yes.[11]

- "GIS admits it **should not** create pinch points when loading materials onto vessels."

    - **Actual testimony:**

        Q.  When -- when GIS loads materials onto vessels,

---

[10] Plaintiff's Exhibit 1, Deposition of Duroc Schexnaydre, (34:6 to 35:10)

[11] *Id.* at 34:18-21.

>> is it -- is it im-- **do they want to** create pinch points or confined spaces?
>
> A.  *Do we want to --*
>
>> MR. DAVIS:  Objection, form.
>
> A.  -- no.
>
>> MR. MECHE:  Same objection.
>
> Q.  Yes, sir.  Do they -- do you want to?
>
> A.  **Do we want to?  No.**[12]

- "GIS admits that creating pinch points on a vessel (as was done here) **is unsafe**."

    - **Actual testimony:**

    > Q.  Okay.  Because if something is loaded in such a way that creates pinch points or confined space, that **could be unsafe**, right?
    >
    > A.  That is correct.[13]

- "GIS admits it knew someone like Plaintiff **would have to work in the very pinch points it created.**"

    - **Actual testimony:**

    > Q.  Okay.  Because you know that down the road, someone is going to have to **potentially work in that** pinch point or confined space, right?
    >
    >> MR. DAVIS:  Objection, form.

---

[12] *Id.* at 36:1-9.
[13] *Id.* at 36:10-13.

>   MR. MECHE:  Same objection.
>
>   Q. Is that correct, sir?
>
>   A. Yes. **Somebody has to offload it**, yes.[14]

- "GIS admits it (a) **created pinch points all over the Maggie A** and (b) knew that working in pinch points is **incredibly dangerous** which could prevent a person from avoiding a falling headache ball ( as happened here)"

    - **Actual Testimony**:

      > Q. What I want to ask you is what makes working in them **dangerous**?
      >
      >   MR. DAVIS:  Objection, form.
      >
      >   MR. MECHE:  Objection, form.
      >
      >   THE WITNESS:  A pinch point is a pinch point. It **could be dangerous** because you could be pinched between two items -- two objects.
      >
      > Q. And, also, does it make it more difficult to get out of the way of something that's -- like a headache ball or a stinger that's coming down on a crane?
      >
      >   MR. DAVIS:  Objection, form.
      >
      >   MR. MECHE:  Same objection.
      >
      >   THE WITNESS:  **Could be**.[15]

- "GIS created pinch points anyway. (43:13-15)"

---

[14] *Id.* at 36:14-20.
[15] *Id.* at 40:20-41:7.

The testimony cited omits the question and crops off the complete testimony in an effort to mislead the Honorable Court into believing that the GIS corporate representative testified that GIS created pinch points: "creates -- the whole vessel -- if you would see a picture of a vessel that's loaded, the entire vessel is a pinch point."

Here's the actual testimony (42:22-43:23):

> Q. Okay. My understanding is, you know, ultimately, you said the vessel kind of takes -- takes a little bit of control on some of the -- where things go, but as -- on the principle, the company does a -- has a -- would prefer to load things on a vessel in such a way that, you know, they're not creating a pinch point or some other hazardous condition, right?
>
> A. I think the -- the intent here was -- **I don't think you understand how a vessel's loaded, and the entire vessel, it's up to the captain and the rigger on boat, which is the deckhand on the boat --**
>
> Q. Uh-huh.
>
> A. **-- to load -- to tell us to load the vessel them way they want it. They tell us --**
>
> Q. Uh-huh.
>
> A. **-- where to place everything. If that creates -- the whole vessel -- if you would see a picture of a vessel that's loaded, the entire vessel is a pinch point.**
>
> Q. Okay.

> **A. It's -- it's up to the guys, offshore, to offload that vessel if -- I don't know how to say this. If we load the vessel, right to left, so to speak, it's our understanding, offshore, it's usually offloaded left to right, because all -- everything you've put down is loaded a certain way; it has to come out the opposite way –**

GIS' corporate representative did not admit it owed a duty, breached that duty, or admit that plaintiff's injury was foreseeable. On the contrary, GIS' corporate representative made it clear that: (1) the responsibility for cargo layout is on the captain and the crew; and (2) that what plaintiff is calling a pinch point is the way all cargo is stowed.

Additionally, plaintiff has not even established that the creation of a pinch point when loading cargo is below the standard of care. Not all pinch points can be eliminated and plaintiff has provided no evidence that this alleged pinch point could have been or should have been. This is evidenced by the fact that plaintiff attended a Job Safety Analysis ("JSA") meeting just prior to his accident in which he was cautioned to "be aware of pinch points."[16]

---

[16] *See* Exhibit 3, May 25, 2017 Job Safety Analysis Worksheet.

### D. *GIS' actions were not a substantial factor in causing plaintiff's injuries.*

Plaintiff has failed to show that GIS' actions were a substantial factor in bringing about his injury, as required to hold GIS accountable. Plaintiff testified that he had no warning of being struck; therefore, an alleged "pinch point" could not have led to his injury:

> Q. But am I to understand that to mean for whatever reason a whole bunch of cable had been let out of the crane?
>
> A. Yes.
>
> **Q. Okay. Is there anything that you perceived before being struck by the headache ball that could explain what might have happened?**
>
> **A. No.**
>
> Q. I mean, did you hear something? Did you see something? Did you feel something else before the impact with the headache ball?
>
> A. No. I just had an uneasy feeling when I saw the headache ball was closer than usual. It just didn't seem like standard operating procedures.
>
> **Q. Okay. Didn't that whole thing happen in a split second?**
>
> A. When the --
>
> Q. The impact with the headache ball and the spooling of all of the extra cable?
>
> **A. (SNAPPING FINGERS.) Like that.**

**Q. Did you have time to get out of the way?**

**A. No.**

Q. Did you have an escape route?

A. Did I have an escape route? I didn't know which way to go. But yes. Yeah.

Q. You did?

A. Yeah.

Q. But quite frankly, you didn't even have time to escape is what you're telling me.

A. No.

**Q. You had the route, just not enough time to use it?**

**A Yes.**[17]

E. *Plaintiff has provided no evidence to substantiate his gross negligence claims.*

Plaintiff again uses his own self-serving and uncorroborated testimony about a crane operator named "Bone Crusher" unsafely lifting in the dark the night before or on past occasions to insinuate that GIS had a "pattern and practice of neglecting safety concerns."[18] However, as noted in defendant's objections, such testimony about alleged bad

---

[17] *See* Response, Exhibit 3, at 130:6 to 131:13.
[18] *See* Response, p. 15.

acts is admissible to prove wrongdoing on the occasion at issue.[19] Furthermore, Plaintiff immediately contradicts his own testimony by confirming that he had no recollection as to how the boxes were loaded on the boat.[20]

Additionally, plaintiff again tries to use the same misrepresented, incomplete snippet of testimony from GIS' corporate representative to survive his gross negligence claims. He insinuates that GIS "knowingly" and willfully created pinch points and knew that others would have to work in them, but the testimony he cites is incomplete and is related to hypothetical pinch points. As noted above, pinch points are a known potential hazard to the job, as indicated in the Job Safety Analysis Worksheet signed by plaintiff before beginning this job.[21]

### 4. Conclusion and Prayer

GIS provided a crane operator to physically lift pre-slung cargo

---

[19] *See Jones v Southern P. Railroad*, 962 F.2d 447, 449 (5th Cir. 1992); ("Evidence of habit is not lightly established . . . To offer evidence of a habit, a party must at least demonstrate a 'regular practice of meeting a particular kind of situation with a specific type of conduct.'" (citation omitted)); see also Fed. R. Evid. 404(b).
[20] *See* Plaintiff's Response, Exhibit 3, to at 200:09 to 200:20.
[21] *See* Exhibit 3, Job Safety Analysis Worksheet.

to the *M/V Maggie A* at the direction of her captain and her crew. That crew included plaintiff, a qualified rigger and qualified Captain. While a crane operator physically lifts the relevant cargo on board, it is the vessel's command who makes the decision where the cargo is actually positioned and stowed on board. This is for various vessel operational reasons, including cargo securing, vessel stability (both transverse and longitudinal), access around the vessel, vessel drifts and trim, to name a few factors.

There is no doubt that the arrangement of the cargo is the responsibility of the captain and his crew. Understandably, plaintiff is unable to provide any authority to suggest otherwise as the outcome would be preposterous: crane operators dictating operational safety of a vessel they do not own and the stowage of cargo they did not rig.

Instead, plaintiff relies solely on his own self-serving testimony and intentionally misleads the Honorable Court regarding the testimony of GIS' corporate representative because his attempted reptilian deposition tactics failed. Neither are enough to establish a duty as a matter of law and GIS' Motion for Summary Judgment should be

granted.

Foreseeability as a function of duty is for the Honorable Court to decide as a matter of law. GIS could not have reasonably foreseen that by following the instructions of the captain and his crew in loading the vessel that plaintiff would had been blindly struck by a headache ball during the unloading of the vessel later that day.

Plaintiff has failed to show that GIS' actions were a substantial factor in bringing about his injury. Indeed, plaintiff testified that he had no warning of being struck. An alleged "pinch point" could not have been a substantial factor in bringing about his injury because he never had an opportunity to perceive the danger and then escape.

Finally, as to the claim of gross negligence and punitive damages, plaintiff's self-serving testimony is the sole evidence offered in support. This conclusory, self-serving, uncorroborated, and conflicted testimony is inadmissible and insufficient to support such a claim as a matter of law.

For the foregoing reasons, GIS is entitled to judgment as a matter of law, and all claims against it must dismissed with prejudice.

Respectfully submitted,

Brown Sims,

/s/Michael D. Williams
Michael D. Williams
Texas Bar No. 21564330
Federal ID No. 6982
mwilliams@brownsims.com
1177 West Loop South, 10th Floor
Houston, Texas 77027
Tel. 713.629.1580
Fax 713.629.5027

*Attorney in Charge for Defendant, Grand Isle Shipyard, LLC*

of Counsel:

John G. H. Davis
Texas Bar No. 24012507
Federal ID No. 24428
jdavis@brownsims.com
Melanie G. Fordyce
Texas Bar No. 24067602
Federal I.D. No. 1179595
mfordyce@brownsims.com
Brown Sims
1177 West Loop South, 10th Floor
Houston, Texas 77027
Tel. 713.629.1580
Fax 713.629.5027

## Certificate of Service

I hereby certify that on July 7, 2021, I electronically served the foregoing with all parties of record pursuant to the Federal Rules of Civil Procedure.

/s/   Michael D. Williams