In the United States District Court
for the Southern District of Texas,
Houston Division

MARK FLORA,

  *Plaintiff,*

v.

TRANSOCEAN DRILLING (USA)
INC., *et al,*

  *Defendants.*

CIVIL ACTION NO:
4:19-cv-02328
Jury Requested

## <u>AFFIDAVIT OF DAVID H. SCRUTON</u>

Pursuant to 28 U.S.C. § 1746, David H. Scruton, under penalty of perjury, declares and says:

1. I am over the age of 21, of sound mind, and a resident of the State of Texas.

2. I, David H. Scruton, hold a valid Master's Unlimited Certificate of Competency and have been employed in the Maritime Industry my whole working career since 1970, serving on board vessels in all ranks from Cadet up to Captain, and subsequently employed as a Marine Consultant and Surveyor with substantial experience in the Maritime and Offshore Industry including inspection and assessment of damages to vessel's structures and cargo with respect to reporting on the cause, nature and extent of damages.

3. My expertise includes Marine Operations and Safety, Navigation, Rules of the Road, and Seamanship.

4. I am currently the Chief Executive Officer (CEO) of 3D Marine USA, Inc., whose head office is located at 12411 Donna Drive, Houston, Texas 77067.

5. 3D Marine work on behalf of clients on a worldwide basis, including vessel, platform and rig owners and operators, charterers, underwriters and various other parties who require accurate and detailed reporting.

6. I have been accepted as an expert in both Federal and State Courts in Texas and Louisiana and I have given expert testimony on issues of marine safety in collision/allision, personal injury cases, and cargo damage cases.

7.   I have been engaged by the law firm of Brown Sims to render opinions regarding the circumstances surrounding alleged injuries to Mr. Mark Flora on the morning of May 25th, 2017 when approximately nineteen (19) grocery boxes were discharged from M/V MAGGIE A to a platform in Green Canyon 390.

8.   According to the various Incident Reports, while in the process of hooking up one of the pre-slung grocery boxes to the WEST NEPTUNE's crane stringer wire, the crane headache ball got caught on either the upper bulwark (Flora written statement GLO-0027) or the top edge of the grocery box (witness statement of crane operator) and then the headache ball fell knocking Mr. Flora's safety hard hat off his head and then hit Mr. Flora's shoulder and the stinger hook fell on Mr. Flora's foot.

9.   After the incident, we understand that Mr. Flora refused medical treatment and continued to work on board M/V MAGGIE A for a further approximately two (2) weeks, during which time he continued with his regular duties.  (Flora deposition pages 173 and 174)

10.   The incident occurred at approximately 0700 hours on May 25th, 2017.

11.   While ashore after the incident, Mr. Flora visited Complete Occupational in Larose, Louisiana, and was released to return to work full-duty, without restrictions.  (Flora deposition page 175)

12.   Mr. Flora also later visited a specialist, who also released Mr. Flora without restrictions.  (Flora deposition pages 175 through 180)

13.   After the incident, Mr. Flora also worked for Smith Maritime for approximately 2-1/2 years and was capable of doing his job without restrictions, i.e. full-duty.  (Flora deposition pages 31, 32, 35 and 36)

14.   However, Mr. Flora subsequently retained an attorney and filed a lawsuit for the incident and his alleged injuries.

15.   The undersigned of 3D Marine Consultants has reviewed the following documentation concerning the above captioned case:

    a)   Original Petition;
    b)   Notice of Removal by Grand Isle Shipyard, LLC and Seadrill Gulf Operations Neptune, LLC;
    c)   Grand Isle Shipyard's Initial Disclosures;
    d)   Plaintiff's Initial Disclosures;
    e)   Gulf Logistics, LLC Initial Disclosures;
    f)   LLOG Exploration Offshore, LLC's Initial Disclosures;
    g)   Plaintiff's Answers to LLOG Exploration Offshore's 1st Interrogatories to Plaintiff;

    h)     Plaintiff's Responses to LLOG Exploration Offshore's 1st Request for Production to Plaintiff;

    i)      Gulf Logistics LLC's Objections and Responses to Plaintiff's 1st Request for Production and Interrogatories to all Defendants;

    j)      Gulf Logistic's Bates Labeled documents- GLO_000001-000158;

    k)     Deposition of Plaintiff Mark Flora;

    l)      LLOG's document production-
         a. LLOG Supervisor's First Report of Incident;
         b. GLO JSA;
         c. Maggie A Master Log;
         d. Maggie A May 24 Incident Report- M. Flora;
         e. Seadrill West Neptune Synergi Case;
         f. WNE-DP-witness statement;
         g. GLO personnel file;
         h. Flora statement

    m)    Smith Maritime, Inc. (employment) - Bates Labeled GIS-FLORA 000164-000220;

    n)    Preliminary Maritime Expert Witness Report by John Pierce of Range Light Maritime Consulting, LLC dated January 30, 2020; and

    o)    Deposition of Duroc Schexnaydre with Exhibits.

16.    Consequently our review, discussions and opinions below are based on the author's professional education, training, hands-on experience, and understanding of maritime and offshore industry and shipboard customs and safety practices.  Accordingly, based on our above analysis of the case in question, we reiterate our opinions, as detailed in our report dated July 13, 2020, but also detail additional opinions based on further review of additional documentation received:

    1)    We are of the opinion that LLOG/GIS had no involvement in the stowage and positioning of the grocery box, or the placement of the "D" ring on the side of the grocery box on board the vessel.

    2)    We are of the opinion that stowage and securing of cargo, and appropriate placement of pre-slung slings and "D" rings, are the responsibility of the vessel's crew under the direction of the vessel's command.

    3)    However, we are further of the opinion that the position of the "D" ring, as alleged, between the grocery box and the ship's bulwarks/cargo rails, was neither unusual, out of the ordinary, nor in violation of any industry practices or procedures.

    4)    We are also of the opinion that, if the positioning/placement of the "D" ring was considered incorrect or unsafe, then it was the vessel's crew's responsibility, under the vessel's command, to rectify the situation before arrival at the offshore facility, i.e. WEST NEPTUNE.

5)  We are of the opinion that the weather conditions were safe for cargo operations to be carried out, based on the fact that approximately half the cargo had been discharged, and passengers transferred, from the vessel up to the rig with no adverse comments, up to the time of the incident, and the fact that no one exercised the industry standard of Stop Work Authority.

6)  We are of the opinion, based on Mr. Flora's testimony, that the vessel did not drift and that the vessel's up and down motion did not contribute to the incident.

7)  We are also of the opinion that, if the headache ball did contact the cargo rails, bulwark, or cargo, on prior lifts, or if the crane stinger wire was too short, as alleged by Mr. Flora, then he personally had the opportunity and responsibility to exercise the industry standard practice and procedure of Stop Work Authority.

8)  We are of the opinion, based on the written signed statement of the crane operator, Mr. Thomas H. Pean, that the crane wire headache ball was lowered too close to the vessel, cargo, and personnel working on deck.

9)  We are of the opinion that under no circumstances should a headache ball be lowered to such an extent that it can contact a deckhand working on the vessel's deck and that the very purpose of fitting a stinger wire is to avoid such.

10) We are of the opinion that, if the stinger was in fact 8 feet long, such was too short for the operation in question.

11) Accordingly, we are of the opinion that it was the crane operator's responsibility to fit a longer stinger and to ensure that the headache ball was not lowered to the extent it was, and certainly not to contact the vessel, the cargo, or the deckhands.

12) We are of the opinion that the crane operator's actions were contrary to details in API RP 2D and by reference were not in conformity with 33 CFR 250.108.

13) The undersigned notes that the Plaintiff's appointed expert is unwilling to attribute any fault to GIS.

14) We are of the opinion that when a cargo is loaded on a vessel, the vessel's Command is totally responsible for the cargo stowage and securing. Before the vessel departed the dock, the Captain and Chief Mate would have to inspect the cargo stow and approve it. That is part of a vessel's industry standard responsibility. The stow would have been "Open and Obvious" to the Captain and crew if paying even the slightest attention.

15) We are of the opinion that for the Plaintiff to allege there should have been more space between the grocery boxes is contrary to all industry standards for safe stowage. Cargoes are typically stowed tightly against each other to avoid cargo shifting during the vessel's motion while on passage.

16)     We are further of the opinion that the operations offshore were completely out of
        the control of GIS, which in my view had nothing to do with pinch points, but
        directly associated with offshore crane operations when the headache ball made
        contact with the cargo rail.

Conclusion

17)     In conclusion, we are of the opinion that GIS did not violate any industry standard
        practices or procedures and were not involved in any way with the operations or
        conditions at the time of the incident.

18)     Finally, we are of the opinion that the crane operations were not in conformity
        with industry standard requirements, as detailed in API RP 2D, and accordingly,
        were not in compliance with 33 CFR 250.108, such operations which, in our
        opinion, were the primary actions that led to the incident in question.

17.     I have attached a copy of my Curriculum Vitae outlining my education and experience as
        Exhibit "A".

I declare under penalty of perjury under the laws of the United States of America that the
foregoing is true and correct.

        Thus done in Houston, Texas on this _6th_ day of July 2021.

        **DAVID H. SCRUTON**

SWORN TO AND SUBSCRIBED BEFORE ME, NOTARY PUBLIC, THIS _6th_ DAY
OF JULY, 2021.

PATRICIA LYNNE WITT
Notary ID #125581707
My Commission Expires
March 13, 2022

NOTARY PUBLIC

EXHIBIT "A"

## CURRICULUM VITAE

| | | |
|---|---|---|
| Name | : | David Harold Scruton |
| Date of Birth | : | October 21, 1952 |
| Citizenship | : | British Born |
| Office Address | : | 12411 Donna Dr., Houston, Texas 77067 |
| Qualifications | : | Certificate of Competency as Master Mariner (Unlimited, Foreign Going) issued by Department of Transport (UK) |
| | : | Bachelor of Science Degree in Nautical Studies (Commendation) 1978 |
| | : | Qualified as Lead Assessor by International Register of Certificated Auditors |

## CAREER INFORMATION :

| | |
|---|---|
| 2004 - Present | 3D MARINE USA, INC. - Chief Executive Officer (CEO) / Marine Consultant and Surveyor |
| 1999 - 2004 | 3D MARINE Belize, Ltd. - President / Owners / Operators / Interim Captain of Push/Workboats/Tank Barges |
| 1989 - 2004 | 3D MARINE USA, INC. - Vice President / Marine Consultant and Surveyor/Quality Auditor |
| 1988 - 1989 | STANTON MARINE USA, INC. - Vice President / Marine Consultant & Marine Surveyor |
| 1987 - 1988 | STANTON MARINE Ltd. (UK) - Marine Surveyor / Sales and Marketing Manager |
| 1986 - 1987 | UNITED STATES LINES (UK) - Account Manager - Sales/Pre-Shipment Audits |
| 1982 - 1986 | ZAPATA MARINE SERVICE (UK) - Chief Officer/Master (including vessel's Safety Officer) - Offshore Supply, Towing & Anchor Handling Vessels |
| 1970 - 1982 | OCEAN TRANSPORT AND TRADING LTD., (UK) - All Ranks from Apprentice (Cadet) up to Chief Officer (including vessel's Safety Officer) on Various Vessel Types |

| | |
|---|---|
| Professional Associations: | Chartered Institute of Transport (MCIT); Nautical Institute (NI); Houston Maritime Arbitrators Association (HMAA); Houston Mariners Club (HMC); Royal Yachting Association |

## CAPTAIN DAVID H. SCRUTON, Master Mariner, BSc (Comm), M.C.I.T., M.N.I.

Has been employed in the Maritime Industry his whole working career with more than 16 years of practical seagoing experience, his extensive knowledge of Dry Cargo operations was obtained while employed by one of the United Kingdom's most respected Shipowners. He served on a variety of vessel types, particularly General Cargo (including heavy lift vessels), Bulk Carriers and Container Vessels. He served in the North Sea and other locations internationally on Offshore Support Vessels (OSVs), Towing, Anchor Handling and Pipe Carriers. His degree specialized in Marine Operations and included courses covering Business and Maritime Law for the Shipmaster, Maritime Economics, Sea Transport Practices, and Maritime Safety at Liverpool Maritime College. Since graduating he has been continuously employed within the Marine Industry gaining valuable across the board knowledge. During the past thirty (30) plus years as Marine Consultant and Marine Surveyor, he has become experienced in other areas of the maritime industry, including Dredging Operations, Crude Oil Carriers, Chemical Tankers, etc. and has been retained in numerous legal proceedings, including, but not limited to, expert testimony in dredging, collision/allision cases, personal injuries, steel and general cargoes and safety practices and procedures on board vessels, to name a few. When managing 3D Marine Belize, Ltd., Captain Scruton was responsible for overseeing training of vessel's crews in vessel handling, maneuvering, towing, pushing of both tank and deck barges, and in line handling. In addition, he was Captain of the company vessels for interim periods during on site attendances in Belize. He has been appointed by Cypriot Government to carry out Safety Administration surveys. Additionally, he has extensive experience with a variety of Pleasure Craft including Sail and Power Yachts, Ski Boats and Personal Water Craft (PWC). He has been appointed as an Expert in a variety of legal cases concerning personal injuries whilst using Personal Water Craft. He is a certified Boaters Education Instructor by The Texas Parks and Wildlife Department. He also served on the Board of Governors of The Downtown Club at the Met and the Board of Directors of the Houston Squash Racquets Association. He also serves as an Arbitrator in Maritime disputes. Additionally, he has served on the Board of Directors, including Past President, of the Houston Maritime Arbitrators Association (HMAA).

| | |
|---|---|
| Hobbies/Interests: | Squash, Pickleball, Skiing, Sailing, Wind Surfing and Boating, Golf, Hiking/Outdoor Activities, Climbing, Model Making, DIY |