IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| MARK FLORA § § *Plaintiff,* § § VS. § § TRANSOCEAN DRILLING (USA), § INC., ET AL. § *Defendants.* § § | CIVIL ACTION NO.: 4:19-CV-2328 |

**PLAINTIFF'S RESPONSE TO DEFENDANT GRAND ISLE SHIPYARD, LLC'S OBJECTIONS TO EVIDENCE ATTACHED TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff files this response to Defendant Grand Isle Shipyard, LLC's (GIS's) Objections to Evidence Attached to Plaintiff's Response to Defendant's Motion for Summary Judgment.

## I.   SUMMARY OF ARGUMENT

For years, GIS has been falsely claiming that it did not load the *Maggie A*. *See* GIS Motion for Summary Judgment p.12. ("…if GIS did in fact load the cargo…"). However, after GIS's charade was exposed (by evidence obtained from other parties—not GIS), GIS's corporate representative finally admitted that GIS loaded the *Maggie A*.

1

During the deposition of GIS's corporate representative, GIS further admitted (a) it had a duty to load the Maggie A safely; (b) it breached its duty by creating an unsafe condition aboard the Maggie A (pinch points); (c) it knew someone like Plaintiff would be working in the very pinch points it created; and (d) Plaintiff's ability to avoid injury while working in GIS-made pinch points would be compromised.[1]

In fact, GIS admitted that it knew that people working within GIS-created pinch points would have more difficulty avoiding falling objects (like a headache ball). See Exhibit 1 at 40:20-41:7 (Schexnaydre Deposition). Nevertheless, GIS created pinch points anyway. See Exhibit 1 at 43:13-15 (Schexnaydre Deposition). Evidence developed shows that GIS has engaged in a pattern and practice of neglecting safety concerns. See Exhibit 2 at 202:2-19 (Plaintiff's Deposition). "Bone Crusher" a GIS crane operator has practice of loading vessels during the "black of night" without proper lighting. See Exhibit 2 at 202:2-19 (Plaintiff's Deposition).

GIS now objects to most of the evidence briefed above on various grounds, each of which are baseless and/or waived and should be overruled.

## II. GIS's LATE-CLAIMED OBJECTIONS SHOULD BE OVERRULED BECAUSE (A) GIS'S OBJECTIONS HAVE BEEN WAIVED AND (B) THE CLAIMED OBJECTIONS ARE BASELESS

---

[1] *See* Exhibit 1 at 34:18-21; 36:1-6; 36:10-13; 36:14-20; 40:20-41:7 (Schexnaydre Deposition).

A. **ADMISSIBILITY OF "BONE CRUSHER" TESTIMONY**[2] **- PAGE/LINE 202:02-202:19**

Plaintiff agrees that "evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." *See* FED. R. EVID. 404. However, it is well-settled that evidence of prior bad acts is admissible for a variety of purposes, "such as demonstrating either plan, motive or *absence of mistake*." *See Arita v. Stagg*, 2013 WL 4551875, at *2 (M.D. La. Aug. 28, 2013) (emphasis added).

The evidence in this case shows that GIS crane operators routinely loaded vessels unsafely. *See* Exhibit 2 at 202:2-19 (Flora Deposition). The "Bone Crusher" testimony and evidence is admissible on this basis alone. Moreover, the fact that a GIS crane operator is called "Bone Crusher" is not character evidence—it is a nickname.

Additionally, Plaintiff's statement is admissible to establish a habit (*i.e.* a pattern and practice) of GIS crane operators to unsafely load vessels. *See* FED. R. EVID. 406 ("Evidence of a person's habit or an organization's routine practice may be admitted to prove that on a particular occasion the person or organization acted in accordance with the habit or routine practice…"). Further, the Court may admit

---

[2] Plaintiff has testified that "Bone Crusher" routinely loaded vessels unsafely (*i.e.* without adequate lighting) in the dead of night and that it was likely that similar practice occurred here. Plaintiff says nothing different in any other part of his testimony. GIS's claims that Plaintiff later contradicts this statement is false.

3

evidence of habit and routine practice regardless of whether it is corroborated or witnessed. *See* Fed. R. Evid. 406 ("The court may admit this evidence regardless of whether it is corroborated or whether there was an eyewitness.").

Plaintiff's testimony that "Bone Crusher" routinely loaded vessels in the dead of night without proper lighting is based on Plaintiff's personal experiences with "Bone Crusher" is admissible to prove habit. Plaintiff's testimony does not need to be corroborated and he did not need to witness GIS's unsafe loading practices the day GIS loaded the *Maggie A*.

For these reasons, GIS's objection to the "Bone Crusher" testimony should be overruled.

### B. PLAINTIFF TESTIFIED AS TO WHY THE D-RING WAS IN A BLIND SPOT AND PINCH POINT – PAGE/LINE 166:16-166:20

GIS's claim that there is no evidence supporting Plaintiff's contention that the D-Ring was in a blind spot and pinch point is as false. Plaintiff's testimony is replete with support:

```
13 Q All right. So why was it in a blind spot?
14 A Well, that's a good question.
15 Q Every once in a while I do one. Not often,
16 though.
17 A Yeah. It's a good question.
18 I would like to know -- I would like to
19 know that, too. I would like to know why it was in a blind
20 spot.
21 Q But how was it in blind spot? Could it have
22 fallen off to the side of the Conex box?
23 A Well, there's -- it's a box, there's four sides
```

4

24 to it. And when you load it, there's an option, when you
25 lower the cable, to allow the stinger to come alongside
1 because this is a tall box.
2 Q Right.
3 A You see, it's as tall as the ceiling. The D-ring
4 obviously has to come below that --
5 Q Yes, and it was?
6 A -- and it can go in any position to drop down to
7 disconnect.
8 Now, generally, whenever you drop that --
9 it's a four-point sling, coming up to one stinger --
10 Q Right.
11 A -- off the -- off the --
12 Q To one D-ring, you mean?
13 A -- off the D-ring.
14 Well, it might be four slings to a D-ring,
15 or it could be four slings going to a single sling that
16 goes to a D-ring.
17 Q Yeah.
18 A There's different assemblies.
19 Anyway, when you let the cable down to
20 disconnect, you have four options of where to place it.
21 Q Oh. I see.
22 A Why would you want to place it in the pinch point
23 in the emergency walkway area, your area to -- your point
24 of escape? Why would you want to work in your area of
25 point of escape? Why wouldn't you want to work in the
1 broad open, spacious area before or aft deck.
2 Q I see what you're saying. So whoever -- whoever
3 set that box down --
4 A Uh-huh.
5 Q -- the D-ring, of course, needs to be overlapping
6 one of the sides of the box --
7 A Yes.
8 Q -- so you can handle it.
9 A Yes.
10 Q And whoever did it, overlapped it in an area that
11 you consider to be a pinch point?
12 A Yes. And blind spot.

5

*See* Exhibit 2 at 167:7-169:12 (Flora Deposition). Moreover, GIS's corporate representative admits that if you took a picture of the vessel, it would have been a big pinch point. *See* Exhibit 1 at 43:12-15 (Schexnayder Deposition) (…if you would see a picture of a vessel that's loaded, the entire vessel is a pinch point.). Therefore, regardless of the placement of the D-ring, it would have been in a GIS-made pinch point.

GIS's objections to Plaintiff's testimony regarding the placement of the D-ring should be overruled on this basis alone.

### C. GIS's Objections as to Speculation, Incomplete/Improper Hypothetical, and Foundation have Been Waived

Pursuant to Rule 30(c)(2), "[a]n objection must be stated concisely in a nonargumentative and nonsuggestive manner." *See* Fed. R. Civ. P. 30(c)(2); *REC Marine Logistics, L.L.C. v. Richard*, CV 19-11149, 2020 WL 1527766, at *5 (E.D. La. Mar. 27, 2020), *appeal dismissed*, 829 Fed. Appx. 51 (5th Cir. 2020) and *appeal dismissed*, 829 Fed. Appx. 51 (5th Cir. 2020). Objections to form or foundation require a concise explanation. *See* FED. R. CIV. P. 30(C)(2); *see also Henderson v. B & B Precase & Pipe, LLC*, 2014 WL 4063673 at *1 (M.D. Ga. Aug. 14, 2014); *Sec. Nat. Bank of Sioux City, Iowa v. Abbott Labs.*, 299 F.R.D. 595 (601-02) (N.D. Iowa 2014), *rev'd on other grounds sub nom., Sec. Nat. Bank of Sioux City, IA v. Day*, 800 F.3d 938 (8th Cir. 2015); *Fletcher v. Honeywell Int'l, Inc.*, 2017 WL 775852 at *1 (S.D. Ohio Feb. 28, 2017).

GIS merely objected to "form" and did not specify its objection on the record. *See* Exhibit 1 at 36:17-18; 40:22-23; 41:5-6 (Schexnaydre Deposition). After failing to specify its objections on the record, GIS appears to ask the Court to guess what objection GIS could have made during the deposition of its corporate representative. However, "[w]hen called upon to rule on an unspecified form objection, a judge either must be clairvoyant or must guess as to the objection's basis. Neither option is particularly realistic or satisfying. This is reason enough to require a specific objection." *Sec. Nat. Bank of Sioux City, Iowa v. Abbott Labs*., 299 F.R.D. 595, 603 (N.D. Iowa 2014), *rev'd sub nom. Sec. Nat. Bank of Sioux City, IA v. Day*, 800 F.3d 936 (8th Cir. 2015).

For this reason alone, the Court should overrule GIS's objections.

### D. GIS's Objections as to Speculation, Incomplete/Improper Hypothetical, and Foundation Are Baseless and Should be Overruled

i.   Page/Line 36:14-36:20

GIS objects to the following testimony:

```
14      Q.  Okay.  Because you know that down the road,
15   someone is going to have to potentially work in that
16   pinch point or confined space, right?
17           MR. DAVIS:  Objection, form.
18           MR. MECHE:  Same objection.
19      Q.  Is that correct, sir?
20      A.  Yes.  Somebody has to offload it, yes.
```

7

*See* Exhibit 1 at 36:14-20 (Schexnaydre Deposition). GIS claims that this testimony (which shows foreseeability) amounts to an incomplete/improper hypothetical and calls for speculation. GIS's objections lack merit.

It is without question that Plaintiff had to work in a GIS-made pinch point. GIS's corporate representative admitted "…if you would see a picture of a vessel that's loaded, the entire vessel is a pinch point." Exhibit 1 at 43:12-15 (Schexnaydre Deposition). There is nothing speculative or incomplete about GIS's response to this question—it is merely an admission that GIS knew Plaintiff would have to work in a GIS-made pinch point when the *Maggie A* was later unloaded.

GIS's objections should be overruled on this basis alone.

  ii.  Page/Line 43:13-15

The testimony here is not misleading, incomplete, or edited. This uncontroverted testimony was brought to the attention of the Court because it demonstrates that GIS admitted to creating pinch points when loading the *Maggie A*. GIS's corporate representative testified that "…if you would see a picture of a vessel that's loaded, the entire vessel is a pinch point." Exhibit 1 at 43:12-15 (Schexnaydre Deposition). GIS admits that the entire deck of the *Maggie A* was a pinch point. Moreover, while this admission certainly demonstrates the dangerous capacity of a company that hires crane operators that can earn the nickname "Bone Crusher" (and keep their jobs), it is not misleading, incomplete, or edited. Those are

the words GIS's corporate representative made under oath. *See* Exhibit 1 at 43:13-15 (Schexnaydre Deposition).[3]

GIS's objections to this testimony are baseless and should be overruled.

### iii. *Page/Line 40:20-41:7*

GIS objects to the following testimony:

```
20            What I want to ask you is what makes
21   working in them dangerous?
22            MR. DAVIS:  Objection, form.
23            MR. MECHE:  Objection, form.
24            THE WITNESS:  A pinch point is a pinch
25   point.  It could be dangerous because you could be
 1   pinched between two items -- two objects.
 2      Q.   And, also, does it make it more difficult to
 3   get out of the way of something that's -- like a headache
 4   ball or a stinger that's coming down on a crane?
 5            MR. DAVIS:  Objection, form.
 6            MR. MECHE:  Same objection.
 7            THE WITNESS:  Could be.
```

*See* Exhibit 1 at 40:20-41:7 (Schexnaydre Deposition).

---

[3] As GIS has accused Plaintiff of misleading the Court here and in its summary judgment reply, Plaintiff notes that this admission by GIS's corporate representative is sandwiched between statements where he claims the captain, rigger, and deckhand decide where GIS loads vessels, only to later admit GIS has the authority to countermand loading decisions made by the Captain, rigger, and deckhand. See Exhibit 1 at 42:22-44:19; 46:2-5 (Q. And if GIS is told to load something, unsafely, is GIS going to blindly follow that instruction and load a vessel, unsafely? A. No.); 46:7-18 ("Q. GIS does not want to do that. GIS wants to load things safely because they want to make sure that people don't get hurt, right? A. Correct. Q. And if GIS thought that the way the materials were being loaded on the MAGGIE A were unsafe, they had the authority to call off the operation, with stop work authority, correct? A. We had the authority -- the stop work authority, and call for a meeting, yes. Q. Okay. And that wasn't done here, right? A. Not to my knowledge.") (Schexnayder Deposition). Additionally, GIS's admission that it turned the Maggie A into one large pinch point follows admissions that GIS must load cargo onto vessels safely, that it should not create pinch points when loading cargo, that creating pinch points is unsafe, and that it knew Plaintiff would have to work in the pinch points GIS created. See Exhibit 1 at 34:18-21; 36:1-6, 10-20 (Schexnaydre Deposition).

It cannot be disputed that the entire deck of the *Maggie A* was one big pinch point. *See supra.* It is without question that GIS knew Plaintiff had to work in a GIS-made pinch point when the *Maggie A* was unloaded. *See supra.* This objected-to testimony shows that GIS also knew that it would be difficult for Plaintiff to avoid a falling headache ball due to working in a GIS-made pinch point.

GIS's objections are baseless and should be overruled.

    iv.    *Objections to Photos of Headache Balls*

These are demonstrative photos to aid the Court. Headache balls come in all shapes and sizes. Counsel for Plaintiff believed the Court may want to know what a headache ball looked like and provided demonstrative photos that contained within the expert report of Captain John Pierce. *See* Exhibit 3 (Pierce Expert Report).

### a. EXHIBITS[4]

| | |
|---|---|
| Exhibit 1 | Schexnaydre Deposition |
| Exhibit 2 | Plaintiff's Deposition |
| Exhibit 3 | Pierce Expert Report |

### b. CONCLUSION AND PRAYER

Plaintiff respectfully requests that the Court overrule GIS's objections and for all other relief Plaintiff is justly entitled.

---

[4] Plaintiff incorporates these exhibits into this Response.

Respectfully submitted,

MORROW & SHEPPARD LLP

/s/ *Daniel E. Sheppard*
John D. Sheppard
State Bar No. 24051331
Federal I.D. 635193
Daniel E. Sheppard
State Bar No. 24103929
Federal I.D. 3120079
*msfiling@morrowsheppard.com*
*dsheppard@morrowsheppard.com*
*jsheppard@morrowsheppard.com*
5151 San Felipe Street
Houston, Texas 77056
Telephone: (713) 489-1206
Facsimile: (713) 893-8370

*Attorneys for Plaintiff*

### CERTIFICATE OF SERVICE

I hereby certify that on July 12, 2021, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF filing system. Notice of this filing will be sent to counsel for all parties by operation of the Court's electronic filing system.

/s/Daniel E. Sheppard
Daniel E. Sheppard