IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARK FLORA | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| VS. | § | CIVIL ACTION NO.: |
| | § | 4:19-CV-2328 |
| TRANSOCEAN DRILLING (USA), | § | |
| INC., ET AL. | § | |
| *Defendants.* | § | |

**PLAINTIFF'S RESPONSE TO LLOG EXPLORATION OFFSHORE, LLC'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Mark Flora, files this response to LLOG Exploration Offshore, LLC's ("LLOG's") Motion for Summary Judgment. LLOG's Motion for Summary Judgment only challenges (a) the duty element of Plaintiff's negligence claim, (b) Plaintiff's negligence per se claim, and (c) Plaintiff's gross negligence claim.[1]

### I.   SUMMARY OF ARGUMENT

In this case, Plaintiff suffered injuries when cargo was being offloaded from the Maggie A (Plaintiff was part of the crew aboard the Maggie A) and loaded onto the West Neptune. LLOG has taken the position (incorrectly) that LLOG workers

---

[1] LLOG's Motion for Summary Judgment does not challenge any other element of negligence (e.g., breach, causation, and damages). Therefore, Plaintiff only addresses the duty element of his negligence claim.

(directed by other LLOG employees), that work in offices assigned to LLOG, wearing shirts embroidered with LLOG's logo, using computers provided by LLOG, sending emails from LLOG email accounts, and enforcing LLOG's HSE policies are not employees of LLOG.[2]

Scott Sepulvado ("Sepulvado") is LLOG's SEMS/HSE Advisor and/or Lead HSE Tech. At the time of the Incident, Sepulvado was responsible for ensuring operations on the *West Neptune* were carried out safely. The evidence demonstrates that workers like Sepulvado, Charlie Culver ("Culver"), LLOG's Drilling HSE Manager & SEMS Manager, and Brian Weydert ("Weydert"), LLOG's HSE Manager, are employees of LLOG—not independent contractors.

At the time of the Incident, LLOG personnel were responsible for ensuring work aboard the *West Neptune* was being carried out safely. LLOG failed in their duty. By failing in their duty to ensure work is carried out safely, LLOG's actions were a cause of Plaintiff's injuries. Moreover, LLOG's failure to train and inspect equipment used in offloading operations amounts to gross negligence.

## II. BACKGROUND

A. THE INCIDENT

---

[2] In candor to the Court, there is self-serving testimony that Sepulvado and Culver are independent contractors. However, as will be discussed below, other documentary evidence discovered creates a fact issue on this point.

Plaintiff was injured on or about May 25, 2017, while working aboard the *Maggie A* as a deckhand. At the time of the Incident, cargo was being offloaded from the *Maggie A* to the *West Neptune* by a crane on the *West Neptune*. *See* Exhibit 1 at 115:10-116:11 (Plaintiff's Deposition). During the offloading operation, the headache ball attached to the crane got caught, the *Maggie A* heaved, and the headache ball struck Plaintiff. *See* Exhibit 1 at 154:3-16 (Flora Depo). The stringer used in the offloading was not the appropriate size. *See* Exhibit 1 at 108:7-10 (Flora Depo). At the time of the Incident, LLOG personnel on the *West Neptune* should have been supervising the operations taking place aboard the *West Neptune*, specifically the offloading operation. LLOG personnel failed to supervise the unloading of the *Maggie A*. Given the lack of supervision by LLOG, *inter alia*, Plaintiff was injured.

### B. LLOG Hired Sepulvado to Make Sure Operations Were Carried Out Safely; Sepulvado Worked Exclusively for LLOG for 7 Years

The Scope of Agreement in LLOG's MSA with Dynamic Contract & Consultant Services, LLC ("Dynamic"), Sepulvado's lending employer, opens by stating Dynamic (and by extension, Sepulvado) is being employed by LLOG "to perform work for [LLOG] in connection with [LLOG's] business of exploring for, developing and producing wells for oil, gas and other minerals." *See* Exhibit 2 at 1 (LLOG MSA). Sepulvado worked aboard the *West Neptune* for approximately 5 years and has been working exclusively for LLOG for the past 7 years and no one

- 3 -

else.  *See* Exhibit 3 at 39:19-40:3; 40:16-21 (Sepulvado Deposition).  Sepulvado's sole employer for 7 years was LLOG.  *Id.*

It was Sepulvado's job to walk around the *West Neptune* and make sure work was being completed safely.  *See* Exhibit 3 at 16:18-22 (Sepulvado Depo). Sepulvado admits that his primary job was to stop work when it was being done unsafely and ensure things are done correctly.  *See* Exhibit 3 at 17:12-17 (Sepulvado Depo).

C. SEPULVADO HOLDS HIMSELF OUT AS AN EMPLOYEE OF LLOG AND CONCEDES LLOG CAN TERMINATE HIM

Sepulvado's job titles at the time of the incident were: SEMS/HSE Advisor and Lead HSE Tech.  *See* Exhibit 3 at 8:20-23; 14:21-23 (Sepulvado Depo).[3] Currently, Sepulvado represents to the world that he is the SEMS/HSE Manager, D&C at LLOG Exploration Company.  *See* Exhibit 3 at 41:14-18 (Sepulvado Depo); *see also* Exhibit 4 (Sepulvado Email); Exhibit 5 (Sepulvado LinkedIn Page). Sepulvado concedes LLOG could terminate him for any reason.  *See* Exhibit 3 at 37:10-18 (Sepulvado Depo).

D. LLOG PROVIDED SEPULVADO WITH EQUIPMENT, SHIRTS WITH THE LLOG LOGO, AN LLOG EMAIL ACCOUNT, AND ANNUAL TRAINING

---

[3] Mr. Sepulvado has held himself out as an employee of LLOG since April 2014.  *See* Exhibit 3 at 41:14-18 (Sepulvado Depo); *see also* Exhibit 5 (Sepulvado LinkedIn Page).

LLOG provided Sepulvado with multiple work shirts that had the LLOG company logo on them.  *See* Exhibit 3 at 12:25-13:1 (Sepulvado Depo).  LLOG provided Sepulvado with a computer to complete his work for LLOG.  *See* Exhibit 3 at 80:1-8 (Sepulvado Depo).  LLOG provided Sepulvado with an office.  *See* Exhibit 3 at 9:10-12 (Sepulvado Depo).  Sepulvado had exclusive access to the computer furnished by LLOG.  *See* Exhibit 3 at 80:12-14 (Sepulvado Depo).  Sepulvado was given an LLOG email address to use when he was working for LLOG.  *See* Exhibit 3 at 80:9-11 (Sepulvado Depo).  LLOG provided annual training to Sepulvado.  *See* Exhibit 3 at 25:16-26:22 (Sepulvado Deposition).

E. SEPULVADO WAS REQUIRED TO FOLLOW AND ENFORCE LLOG'S POLICIES AND WOULD REMOVE WORKERS FROM THE *WEST NEPTUNE* WHEN NECESSARY

LLOG retained the right and ordered Sepulvado to hold JSA's.  *See* LLOG's Motion for Summary Judgment at p. 4.  Sepulvado had to follow LLOG's SEMS policies.  *See* Exhibit 3 at 30:14-19 (Sepulvado Depo).  Sepulvado's job function required him to enforce LLOG's SEMS policies.  *See* Exhibit 3 at 30:21-31:3.  Sepulvado had the ability to prevent others from working aboard the *West Neptune* if they lacked the necessary training.  *See* Exhibit 3 at 31:17-24 (Sepulvado Deposition).

F. LLOG'S INTERNAL DOCUMENTS REFLECT THAT SEPULVADO'S BOSS IS A LLOG EMPLOYEE[4]

---

[4] Culver is not identified as a contractor in the organizational chart provided by LLOG, whereas other workers are identified as contractors.

Sepulvado testified that he reports to Charlie Culver ("Culver"). *See* Exhibit 3 at 77:9-11 (Sepulvado Depo). Culver is identified as a Drilling Supervisor for LLOG (not a contractor). *See* Exhibit 3 at 113:17-24 (Sepulvado Depo). Other documents produced by LLOG, including an organization chart, distinguish Culver from "contractors." *See* Exhibit 6 (LLOG Organizational Chart).

G. SEPULVADO AGREES HE WOULD FOLLOW INSTRUCTIONS PROVIDED TO HIM BY CULVER, THE DRILLING HSE MANAGER AND SEMS MANAGER FOR LLOG

Sepulvado admits he follows the instruction of Culver, the Drilling HSE Manager and SEMS Manager for LLOG. *See* Exhibit 3 at 20:13-20 (Sepulvado Depo). Sepulvado admits if someone at LLOG's corporate offices told him to do something, he would not ignore their order. *See* Exhibit 3 at 20:21-25 (Sepulvado Depo). Instead, he would call Culver and let him know what he had been told. *See* Exhibit 3 at 20:25-21:1 (Sepulvado Depo). Sepulvado agrees that he would follow directives issued by LLOG corporate personnel, such as LLOG's HSE Manager, Brian Weydert. *See* Exhibit 3 at 21:8-16 (Sepulvado Depo).[5] Like Culver, Weydert is not identified as a contractor on LLOG's organizational chart. *See* Exhibit 6 (LLOG Organizational Chart).

---

[5] Sepulvado testified that he does not jump the chain of command. If Weydert gave Sepulvado an instruction, Sepulvado would let Culver know and Weydert and Culver would figure out what Sepulvado should do. *See* Exhibit 3 at 21:8-23 (Sepulvado Depo).

- 6 -

## III. ARGUMENT AND AUTHORITY

A. SUMMARY JUDGMENT STANDARDS

Summary judgment is only proper if the movant shows there are no genuine disputes of material fact and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Tolan v. Cotton,* 572 U.S. 650, 657, 134 S. Ct. 1861, 1866, 188 L. Ed. 2d 895 (2014); *Rogers v. Bromac Title Servs., L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014). The purpose of summary judgment is to pierce the pleadings and to assess the proof offered by the parties to determine whether there is a genuine need for a trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). It is designed to isolate and dispose of factually unsupported claims and defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

A defendant moving for summary judgment must demonstrate the absence of a genuine dispute of material fact by either (1) submitting summary-judgment evidence that negates the existence of a material element of the plaintiff's claim or (2) showing there is no evidence to support an essential element of the plaintiff's claim. *J. Geils Band Emp. Benefit Plan v. Smith Barney Shearson, Inc.*, 76 F.3d 1245, 1251 (1st Cir. 1996); *see Celotex Corp.*, 477 U.S. at 324-25. Only if Defendant meets this burden is Plaintiff required to respond by summary-judgment proof to show genuine disputes of material fact. *See* FED. R. CIV. P. 56(e)(3).

In determining whether there are genuine disputes of material fact that prevent summary judgment, the Court must consider all evidence and inferences in the light most favorable to Plaintiff as the nonmovant. *Rogers*, 755 F.3d at 350; *Garcia v. Pueblo Cty. Club*, 299 F.3d 1233, 1236-37 (10th Cir. 2002). Similarly, the Court must resolve all reasonable doubts about the acts in favor of Plaintiff as the nonmovant. *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 455-56 (5th Cir. 2005). If, however, the party moving for summary judgment fails to satisfy its initial burden of demonstrating the absence of a genuine issue of material fact, the motion must be denied, regardless of the nonmovant's response. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). Also, a court may make no credibility determinations, weigh any evidence, and must disregard all evidence favorable to the moving party that the jury is not *required* to believe. *Rivas de Rios v. Wal-Mart Stores Texas, L.L.C.*, No. 1:15-217, 2017 WL 1032118, at *2 (S.D. Tex. Feb. 8, 2017) (emphasis added).

Summary judgment may be appropriate when the questions to be decided are issues of law. *Flath v. Garrison Pub. Sch. Dist.*, 82 F.3d 244, 246 (8th Cir. 1996). However, the line between legal issues and factual disputes can be difficult to draw. *Pullman-Standard v. Swint*, 456 U.S. 273, 288 (1982). When the application of a rule of law depends on the resolution of disputed facts, the motion presents a mixed question of law and fact. In that situation, the granting of summary judgment is not

appropriate. *See*, *e.g.*, *Lujan v. National Wildlife Fed'n*, 479 U.S. 871, 889 (1990) (plaintiff's standing to sue depended on disputed activities of plaintiff); *St. Romain v. Indus. Fabrication & Repair Serv., Inc*., 203 F.3d 376, 378 (5th Cir. 2000).

B. SEPULVADO IS LLOG'S BORROWED SERVANT[6]

### 1. Borrowed Servant Factors

Sepulvado is LLOG's borrowed servant. Courts have developed a nine-factor test to determine whether borrowed servant status exists[7]

This nine-factor test is commonly referred to as the "borrowed servant" or "borrowed employee" test. *See*, *e.g.*, *Brown v. Union Oil Co*., 984 F.2d 674, 676 (5th Cir. 1993)("To determine borrowed employee status, we consider nine factors…."). "[N]o one of these factors, or any combination of them, is decisive,

---

[6] LLOG recategorizes workers as employees or independent contractors based on how the classification of the worker will affect their liability to others. For example, Sepulvado (and others) are employees of LLOG if they are injured as a result of LLOG's negligence (because it benefits LLOG to classify Sepulvado and others as employees in that situation). See Exhibit 2 (LLOG MSA)(LLOG MSA designates Dynamic employees as employees of LLOG for the purpose of limiting Dynamic employees to workers' compensation benefits as opposed to damages available in tort lawsuits). Here, LLOG is seeking to recategorize Sepulvado as an independent contractor because it benefits LLOG to classify Sepulvado as an independent contractor in this situation. LLOG is attempting to have its cake and eat it too.

[7] (1) Who has control over the employee and the work he is performing, beyond mere suggestion of details or cooperation?; (2) Whose work is being performed?; (3) Was there an agreement, understanding, or meeting of the minds between the original and borrowing employer?; (4) Did the employee acquiesce in the new work situation?; (5) Did the original employer terminate his relationship with the employee?; (6) Who furnished tools and place for performance?; (7) Was the new employment over a considerable length of time?; (8) Who had the right to discharge the employee?; (9) Who had the obligation to pay the employee?

and no fixed test is used to determine the existence of a borrowed-servant relationship." Ruiz, 413 F.2d at 313.

>  i. *LLOG Exercised Control over the Work of Sepulvado*

Some courts emphasize the control factor, others de-emphasize the control factor. *Melancon v. Amoco Production Co.*, 834 F.2d 1238, 1244-45 (5th Cir. 1988).; *Ruiz v. Shell Oil Co.*, 413 F.2d 310 (5th Cir. 1969) (citing *Standard Oil Co. v. Anderson*, 212 U.S. 215 (1909)); *Capps v. N.L. Baroid*, 784 F.2d 615 (5th Cir. 1986); *Gaudet v. Exxon*, 562 F.2d 351, 1978 AMC 591 (5th Cir. 1977) ("The principle focus within the *Ruiz* test should be the questions of (1) who was responsible for the working conditions experienced by the employee and the risks inherent therein, and (2) was the employment with the new employer of such duration that the employee could reasonably be presumed to have evaluated the risks of the work situation and acquiesced thereto[.]"). *Id*. at 357. To determine who has control over the employee, "the court is required to distinguish between authoritative direction and control, and mere suggestions as to details, or necessary cooperation where the work furnished is part of a larger undertaking." *Ruiz*, 413 F.2d at 313, quoting *Standard Oil Co. v. Anderson*, 212 U.S. 215, 222, 29 S.Ct. 252, 254, 53 L.Ed. 480 (1909).

In the present case, Sepulvado was required to follow and enforce LLOG's policies. *See* Exhibit 3 at 30:14-19; 30:21-31:3 (Sepulvado Depo). Sepulvado took

direction from Drilling HSE Manager & SEMS Manager, Culver.[8] *See* Exhibit 3 at 77:9-11 (Sepulvado Depo). Sepulvado would not ignore orders given to him by LLOG's corporate personnel, including LLOG's HSE Manager, Weydert. Moreover, if Weydert gave Sepulvado an instruction, Sepulvado would let Culver know and Weydert and Culver would figure out what Sepulvado should do. See Exhibit 3 at 21:8-23 (Sepulvado Depo). LLOG exerted control over Sepulvado's work.

*ii. LLOG's Work Was Being Performed*

Sepulvado was performing LLOG's work. The contract between LLOG and Sepulvado's lending employer states: "[LLOG] may employ Contractor from time-to-time to perform work for LLOG in connection with LLOG's business of exploring for, developing and producing wells for oil, gas and other minerals."

*iii. Sepulvado Holds Himself Out as an LLOG Employee*

While a contract exists between LLOG and Dynamic (Sepulvado's lending employer) designating Dynamic as a "Contractor," it cannot be disputed that Sepulvado holds himself out as an LLOG employee. *See* Exhibit 3 at 40:22-42:5 (Sepulvado Depo); *see also* Exhibit 5 (Sepulvado's LinkedIn Page). The conflicting

[8] Notably, Culver is not identified as an LLOG contractor on the LLOG organizational chart. *See* Exhibit 6 (LLOG Organizational Chart).

evidence here presents the jury with a question regarding whether there was a meeting of the minds for LLOG, Dynamic, and Sepulvado.

### iv. Sepulvado Acquiesced to His Work Situation with LLOG

The fourth factor centers on whether the employee "was aware of his work conditions and chose to continue working in them." *Brown*, 984 F.2d 678 (citing *Melancon*, 834 F.2d at 1246). Courts assessing this factor have considered the amount of time spent aboard the vessel, and the worker's appreciation of, and acquiesce in, his new work conditions. *See e.g. Robertson*, 2010 WL 1956 706, 8-9. Courts typically weigh this factor in favor of borrowed employee status, when the employee spent a considerable amount of time aboard the vessel, eating, sleeping, and working in the field. *Id.* at 12.

Sepulvado worked 14-day hitches aboard the *West Neptune* from 2014 until 2019. *See* Exhibit 3 at 39:19-40:3 (Sepulvado Deposition). Sepulvado worked aboard the *West Neptune* for 5 years and slept out there following his shifts. *See* Exhibit 3 at 39:6-14. Sepulvado spent a considerable amount of time aboard the *West Neptune* performing work for LLOG.

### v. Neither LLOG nor Dynamic Terminated Sepulvado

The Fifth Circuit has held that, "it is not necessary that the lending employer completely sever its relationship with the employee," since such a requirement would effectively eliminate the borrowed employee doctrine as there never could be

two employers. *Capps*, 784 F.2d at 617. "Instead, the focus should be on the lending employer's relationship with the employee during the employee's period of employment by the borrower." *Id.* at 618. The facts here show Sepulvado remained, always, an active worker who kept in regular contact with LLOG throughout the course of his work conducted aboard the *West Neptune*. Specifically, he kept in regular contact with LLOG through his supervisor, Culver. *See* Exhibit 3 at 20:13-20 (Sepulvado Depo).

### vi. *LLOG Furnished the Tools for His Performance Aboard the West Neptune*

LLOG provided Sepulvado with work shirts that had the LLOG company logo on them. *See* Exhibit 3 at 12:25-13:1 (Sepulvado Depo). LLOG provided Sepulvado with a computer to complete his work for LLOG. *See* Exhibit 3 at 80:1-8 (Sepulvado Depo). LLOG provided Sepulvado with an office. *See* Exhibit 3 at 9:10-12 (Sepulvado Depo). Sepulvado had exclusive access to the computer furnished by LLOG. *See* Exhibit 3 at 80:12-14 (Sepulvado Depo). Sepulvado utilized a LLOG email address while he was working for LLOG. *See* Exhibit 3 at 80:9-11 (Sepulvado Depo). LLOG provided annual training to Sepulvado. *See* Exhibit 3 at 25:16-26:22 (Sepulvado Deposition). LLOG provided Sepulvado with the tools he needed to work for LLOG.

### vii. *Sepulvado Has Been Employed by LLOG for a Considerable Amount of Time*

Sepulvado worked aboard the *West Neptune* for approximately 5 years and has been working exclusively for LLOG for the past 7 years. *See* Exhibit 3 at 39:19-40:3; 40:16-21 (Sepulvado Deposition). Sepulvado has worked for LLOG for a considerable amount of time.

   viii. *LLOG Could Terminate Sepulvado*

Sepulvado concedes LLOG could terminate him for any reason. *See* Exhibit 3 at 37:10-18 (Sepulvado Depo).

   ix. *LLOG Paid Dynamic Invoices, Including Invoices for Labor*

Sepulvado's understanding regarding his payment of wages is that he would send his timesheet to Dynamic, Dynamic would send the timesheet to LLOG, and funds would be deposited into his account by Dynamic. *See* Exhibit 3 at 38:13-17 (Sepulvado Deposition). LLOG agreed to pay the invoices sent to it by Dynamic. *See* Exhibit 2 at 1-2 (LLOG MSA). This would include invoices for labor performed by Sepulvado. *Id.* There is conflicting evidence as to who was required to pay Sepulvado for the work her performed for LLOG.

In weighing these factors, there is evidence that Sepulvado is LLOG's borrowed servant.

 C. ALTERNATIVELY, LLOG EXERCISED OPERATIONAL CONTROL OVER SEPULVADO, WHICH OBVIATES THEIR INDEPENDENT CONTRACTOR DEFENSE

As discussed *supra*, Sepulvado admits he follows the instruction of Culver, the Drilling HSE Manager and SEMS Manager for LLOG. *See* Exhibit 3 at 20:13-

20 (Sepulvado Depo). Sepulvado testified that he reports to Culver. *See* Exhibit 3 at 77:9-11 (Sepulvado Depo). Culver is identified as a Drilling Supervisor for LLOG (not a contractor). *See* Exhibit 3 at 113:17-24 (Sepulvado Depo). The LLOG Organizational Chart produced by LLOG does not identify Culver as an independent contractor. *See* Exhibit 6 (LLOG Organizational Chart). Sepulvado admits if someone at LLOG's corporate offices told him to do something, he would not ignore their order. *See* Exhibit 3 at 20:21-25 (Sepulvado Depo). Sepulvado agrees that he would follow directives issued by LLOG corporate personnel, such as LLOG's HSE Manager, Brian Weydert. *See* Exhibit 3 at 21:8-16 (Sepulvado Depo).[9] Like Culver, Weydert is not identified as a contractor on LLOG's organizational chart. *See* Exhibit 6 (LLOG Organizational Chart). Sepulvado's decision-making is not that of an independent contractor as even Sepulvado concedes that he will follow the instruction of his boss, Culver.

D. LLOG Had A Duty to Exercise Reasonable Care

Whether Sepulvado is LLOG's borrowed servant or LLOG exercised operational control over Sepulvado (thereby obviating LLOG's independent contractor defense), the duty owed to third parties (like Plaintiff) is the same:

> 'Generally, a person owes a duty to exercise reasonable care to protect others against the foreseeable risks of his misconduct.' 'Louisiana courts routinely

---

[9] Sepulvado testified that he does not jump the chain of command. If Weydert gave Sepulvado an instruction, Sepulvado would let Culver know and Weydert and Culver would figure out what Sepulvado should do. *See* Exhibit 3 at 21:8-23 (Sepulvado Depo).

analyze personal injury and property damage cases arising from drilling activities under negligence principles.' When contractor liability is concerned, 'a contractor owes third parties a duty to exercise ordinary care and refrain from creating hazardous conditions in the fulfillment of its contractual obligations.' The Louisiana First Circuit Court of Appeal has set forth the range of duties imposed upon co-independent contractors as follows: 'at the very least, [an independent contractor] owe[s] [a fellow independent contractor] the duty to refrain from gross, willful or wanton negligence, and at the most the duty to refrain from creating an unreasonable risk of harm or a hazardous condition.' Therefore, the duty imposed upon Clary is that imposed on all persons, the exercise of reasonable care. Thus, plaintiffs claim must be analyzed under Louisiana Civil Code article 2315, which codifies the principle that 'every act whatever of a man that causes damage to another obliges by him whose fault it happened to repair it.'

*Joyner v. Ensco Offshore Co.*, 2001 WL 118599, at *3–4 (E.D. La. Feb. 9, 2001).

Here, Sepulvado admits (a) it is his duty to ensure operations aboard the *West Neptune* are executed safely; (b) he has the authority to stop any operation taking place aboard the *West Neptune*; and (c) he can prevent anyone on the *West Neptune* from working if they do not have the necessary training. *See* Exhibit 3 at 16:18-22; 17:12-24; 114:23-115:1 (Sepulvado Depo). Sepulvado does not know where he was when he learned about the Incident. *See* Exhibit 3 at 57:1-4 (Sepulvado Depo) (Sepulvado admitting he does not recall where he was when he learned about the Incident.) Therefore, a reasonable inference is that he was not supervising the offloading operation involving the *Maggie A* as he should have been. Had Sepulvado been supervising the offloading operation, he could have stopped the operation.

Sepulvado's own admissions establish the duty element challenged by LLOG.

- 16 -

E. LLOG WAS GROSSLY NEGLIGENT

Gross negligence is willful, wanton, and reckless conduct that falls between intent to do wrong and ordinary negligence. *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 493, 128 S. Ct. 2605, 2621, 171 L. Ed. 2d 570 (2008). "Gross negligence is a fact intensive question that cannot be resolved pursuant to summary judgment." *Franklin v. Regions Bank*, CV 5:16-1152, 2021 WL 786002, at *4 (W.D. La. Mar. 1, 2021). Whether LLOG's "conduct constitutes gross negligence is a material issue of fact that must be resolved by the trier of fact." *Franklin v. Regions Bank*, CV 5:16-1152, 2021 WL 786002, at *4 (W.D. La. Mar. 1, 2021).

LLOG was grossly negligent. Despite being responsible for overseeing safety (*see* argument *supra* regarding Sepulvado's responsibilities and LLOG's liability for his actions and/or inactions due to: (a) Sepulvado being LLOG's borrowed servant and (b) LLOG's obviated independent contractor defense), LLOG provided no training to the crane operator aboard the *West Neptune* and did not ensure the appropriate stringer was used. *See* Exhibit 7 at 70:25-71:2 (Bassi Depo); *see also* Exhibit 1 at 108:7-10 (Flora Depo). Despite its responsibility for ensuring operations are carried out safely, LLOG took no steps to inspect the equipment that was being used at the time of the Incident. *See* Exhibit 7 71:3-6 (Bassi Depo). LLOG failed to inspect the crane, headache ball, and stringer used in the offloading operation. *See* Exhibit 7 (Bassi Depo).

Despite being responsible for ensuring operations are carried out safely, LLOG, as an organization, does not know how to carry out operations safely, despite its obvious duty to do so. Plaintiff noticed a deposition of LLOG's corporate representative on April 5, 2021. *See* Exhibit 8 (Deposition Notice). The deposition notice contained 20 topics. LLOG failed to present a witness on any of the following topics:[10]

> 12. Defendant's policies and procedures regarding the work being performed at the time of the Incident.
> 13. Defendant's policies and procedures regarding the use of the cranes, headache balls, d-rings, and all associated equipment.
> 14. The nature of the vessel, what type of work and services are performed by the vessel, and what type of work and services were being performed on the day of the Incident.
> …
> 16. Policies and procedures for safely transporting, arranging, lifting, moving, and adjusting Conex boxes, including but not limited to whether and how what equipment should be used, where people should be placed to supervise the work, weather or sea conditions that crew should not work in.
> 17. Policies and procedures for the moving of equipment by persons with physical labor as opposed to with tools or other means.

---

[10] LLOG was required under the Federal Rules of Civil Procedure to designate someone to testify on these topics. Fed. R. Civ. P. 30(b)(6). Moreover, LLOG was required to prepare for the deposition by seeking information from "documents past employees, or other sources." *See Brazos River Auth. V. GE Ionics, Inc.*, 469 F.3d 416, 432-34 (5th Cir.2006). "When a corporation produces an employee pursuant to a rule 30(b)(6) notice, it represents that the employee has the authority to speak on behalf of the corporation with the respect to the areas within the notice of deposition." *Id.* Bassi obviously was not prepared to speak about many of the topics included on the 30(b)(6) notice. As a consequence, the Court may impose sanctions, including the exclusion of evidence. *See Reilly v. NatWest Mkts. Grp.*, 181 F/3d 253, 268 (2d Cir.1999)(when party does not comply with 30(b)(6) notice, the court may impose various sanctions, including preclusion of evidence). LLOG should not be rewarded with dismissing Plaintiff's gross negligence claims when they failed to prepare Bassi on the noticed deposition topics.

*See* Exhibit 7 at 74:20-79:4 (Bassi Depo).

When LLOG's corporate representative James Bassi ("Bassi") was asked about LLOG's policies related to ensuring cargo is safely transported, arranged, and/or lifted, Bassi failed to provide testimony regarding any such policies for LLOG. *See* Exhibit 7 at 77:20-79:1 (Bassi Depo). LLOG failed to provide any testimony regarding how what equipment should be used when transferring cargo, where people should be placed to supervise the work, weather, or sea conditions that crew should not work in. *Id.* The same is true regarding the use of cranes, headache balls, and stringers. *Id.* LLOG has provided no testimony regarding crucial policy, procedures, safety guidelines, and operational guidelines it needs to have in place to ensure the safety of others. It is no wonder LLOG failed to notice how unsafe the unloading operation was—LLOG refused to learn how to perform operations safely. Such a refusal, in the context of the dangerous work it performs, is gross negligence.

As discussed above, there is ample evidence supporting Plaintiff's gross negligence claim. However, as a sanction to LLOG for its failure to prepare for the topics contained on the 30(b)(6) notice, the Court can find that there is evidence of gross negligence. *Id.*

### IV. CONCLUSION AND PRAYER

Plaintiff respectfully requests that the Court deny LLOG Motion for Summary Judgment and for all other relief Plaintiff may be justly entitled.

Respectfully submitted,

MORROW & SHEPPARD LLP

/s/ *Daniel E. Sheppard*
John D. Sheppard
State Bar No. 24051331
Federal I.D. 635193
Daniel E. Sheppard
State Bar No. 24103929
Federal I.D. 3120079
*msfiling@morrowsheppard.com*
*jsheppard@morrowsheppard.com*
5151 San Felipe Street
Houston, Texas 77056
Telephone: (713) 489-1206
Facsimile: (713) 893-8370
*Attorney for Plaintiff*
*Mark Flora*

### Certificate of Service

I hereby certify that on October 8, 2021, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF filing system. Notice of this filing will be sent to counsel for all parties by operation of the Court's electronic filing system.

*/s/Daniel E. Sheppard*
Daniel E. Sheppard