IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARK FLORA | § | |
| | § | |
| VS. | § | C.A. NO. 4:19-CV-2328 |
| | § | |
| TRANSOCEAN DRILLING | § | |
| (USA), INC., ET AL. | § | |

**PLAINTIFF'S RESPONSE TO GULF LOGISTICS, LLC, GULF LOGISTICS OPERATING, INC., AND LLOG EXPLORATION OFFSHORE, LLC'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT**

The Court should deny Gulf Logistics, LLC and Gulf Logistics Operating, Inc.'s (collectively, "Gulf Logistics") Motion for Partial Summary Judgment ("Gulf Logistics' Motion") for the following independent reasons:[1]

- Summary judgment on a maintenance and cure claim is improper when the obligation to pay is ongoing because the injured seaman has not reached maximum medical improvement ("MMI"). *See e.g., Moody v. Noble Drilling* (U.S.) LLC, 2016 WL 6999442, at *3 (W.D. La. Nov. 28, 2016). Here, Plaintiff did not reach MMI prior to Gulf Logistics terminating his cure.

---

[1] Plaintiff does not oppose LLOG Exploration Offshore, LLC's ("LLOG") Motion for Partial Summary Judgment Regarding Punitive Damages (filed October 29, 2021) ("LLOG's Motion"). In an effort to obviate the need for a ruling on LLOG's Motion, Plaintiff's counsel emailed counsel for Defendants and asked whether they are opposed to Plaintiff amending his complaint to withdraw his claim for punitive damages against LLOG. Plaintiff has not yet received a response from Defendants' counsel.

Further, Gulf Logistics has not paid nor promised to pay Plaintiff's outstanding medical expenses. Moreover, Plaintiff's necessary cure includes future-medical treatment recommended by Dr. Michael Roberts, D.C. that Gulf Logistics has not promised to pay.

- Gulf Logistics willfully and wantonly failed to satisfy their maintenance and cure obligations by failing to pay for Plaintiff's necessary medical care.

- Whether a failure to pay maintenance and cure is "willful and wanton" is an inherently factual question for the jury. *Meaux v. Cooper Consol.*, LLC, 477 F. Supp. 3d 515, 528 (E.D. La. 2020) (*citing McWilliams v. Texaco, Inc.*, 781 F.2d 514, 517-18 (5th Cir. 1986).

- Gulf Logistics incorrectly represents to the Court that Plaintiff has not pled facts to support his maintenance and cure claims.

### I. FACTUAL BACKGROUND

Plaintiff was injured on May 25, 2017, while working aboard the *Maggie A* as a deckhand, when a headache ball weighing several hundred pounds struck his shoulder and foot (the "Incident"). Following the Incident, Plaintiff was initially "examined" by a physician's assistant at Complete Occupational Health Services. *See* Exhibit 1 (Records from Complete Occupational Health Services).[2] The record

---

[2] The "Release" is signed by a physician's assistant—not a licensed physician. *See* Exhibit 1 (Excerpt from Complete Occupational Health Services Records).

notes suggest that the physician's assistant told Plaintiff he could return to work. *See* Exhibit 1 at pp. 7 (Records from Complete Occupational Health Services). Plaintiff was then brought back to the *Maggie A*. However, after returning to the *Maggie A*, Plaintiff continued to experience pain and was unable to perform his duties adequately. *See* Exhibit 3 at 174:14-175:15 (Flora Depo) (Plaintiff describing that he would perform his work with one hand, that he was concerned the pain from the Incident had not subsided and that his shoulder was making noises, that he left the vessel early). Plaintiff left the vessel before his hitch ended. *Id.* Following his early departure from the vessel, Gulf Logistics' "safety fellow" took Plaintiff back to Gulf Coast Orthopedics. *See* Exhibit 3 at 176:3-6 (Flora Depo).

Dr. Michael LaSalle of Gulf Coast Orthopedics "examined" Mr. Flora on a few occasions between June 2018 and August 2018 and released Plaintiff back to work despite Plaintiff's repeated complaints of continued pain. *See* Exhibit 2 (Gulf Coast Orthopedics Records). Dr. LaSalle did not order an MRI to determine the source of Plaintiff's shoulder pain or whether his pain would continue or resolve on its own. *See* Exhibit 2 (Gulf Coast Orthopedics Records). Moreover, Dr. LaSalle's records do not identify any of the specific tests (*e.g.* O'Brien's Test, the Hawkins Test, and etc.) that he performed when he "examined" Plaintiff. *See* Exhibit 2 (Gulf Coast Orthopedics Records). Plaintiff would learn in early-2018, after leaving Gulf

Logistics, that he sustained a microtrabecular fracture in his left shoulder as a result of the Incident.

Gulf Logistics has not paid Plaintiff maintenance or cure since his employment with Gulf Logistics terminated. *See* Exhibit 7 (Sheppard Declaration). "Cure" refers to Gulf Logistics' obligation to pay medical expenses, in full. *Townsend*, 557 *U.S*. at 413; *Alario*, 477 Fed. Appx. at 188.

On January 8, 2018, Plaintiff visited Southeast Injury Clinic to begin physical therapy with Dr. Michael Roberts, DC for injuries sustained as a result of the Incident. *See* Exhibit 4 (Southeast Injury Clinic Records).[3] Dr. Roberts recommended additional treatment for Plaintiff, including active therapy and, depending on his response to the therapy, a future course of injections. *See* Exhibit 5 at 46:23-47:9 (Dr. Roberts' Depo).[4] Gulf Logistics has neither paid nor agreed to pay for any of the treatment Plaintiff received at Southeast Injury Clinic. *See* Exhibit 6 (Billing Affidavit from Southeast Injury Clinic); *see also* Exhibit 7 (Sheppard

---

[3] Plaintiff received physical therapy periodically from January 8, 2018 until January 2, 2019. *See* Exhibit 4 (Southeast Injury Clinic Records). During these treatment sessions, Plaintiff noted pain in his shoulder, a burning sensation in his shoulder, neck and cervical spine, and numbness and tingling radiating into his upper extremity. *See* Exhibit 4 at pps. 11, 13, 15 (Southeast Injury Clinic Records). Plaintiff's medical records indicate that his range of motion is limited due to pain and that his pain increases with physical activity. *See* Exhibit 4 at pp. 14 (Southeast Injury Clinic Records).

[4] In candor to the Court, Dr. Roberts also testifies that he would want to see the Plaintiff again to see how he is performing.

Declaration).  Gulf Logistics has not agreed to pay for the additional treatment recommended by Dr. Roberts.  *See* Exhibit 7 (Sheppard Declaration).

On January 12, 2018, Plaintiff obtained an MRI of his shoulder.  *See* Exhibit 8 (MRI Centers of Texas Records).  The MRI revealed a "linear defect within the superior labrum which could be a subtle SLAP superior labral tear…extensive bone edema…bone contusion and microtrabecular fracture.  *See* Exhibit 8 (MRI Centers of Texas Records).  Bone marrow edema refers to swelling to the bone and a microtrabecular fracture[5] is a fracture of Plaintiff's trabeculae.  *See* Exhibit 9 at 18:21-19:2; 19:5-16 (Dr. Harvey Deposition).  This is the first time that Plaintiff learned that he sustained a microtrabecular fracture to his shoulder.[6]  Gulf Logistics has neither paid nor agreed to pay for any of the costs associated with the diagnostic imaging studies Plaintiff obtained from MRI Centers of Texas.  *See* Exhibit 10 (Billing Affidavit from MRI Centers of Texas); *see also* Exhibit 7 (Sheppard Declaration).

On January 25, 2018, Plaintiff visited Spine & Orthopedic Surgical Institute and was evaluated by orthopedic surgeon, Andrew Lee, MD.  *See* Exhibit 11 (SOS Institute Records).  Dr. Lee observed a positive impingement sign, weakness, and

---

[5] Microtrabecular fractures generally cannot be seen on an x-ray.  *See* Exhibit 9 at 19:17-20:2 (Dr. Harvey Deposition).  To see a microtrabecular fracture, an MRI is typically needed.  *Id.*
[6] Plaintiff mentions this fact because Gulf Logistics appears to criticize Plaintiff in their Motion for not noting medical conditions on medical forms that he completed before he was made aware of the microtrabecular fracture.

- 5 -

tenderness in Plaintiff's shoulder area.  *See* Exhibit 11 (SOS Institute Records).  Dr. Lee made the following diagnoses:

    1. Superior glenoid labrum lesion of left shoulder;

    2. Impingement syndrome of left shoulder; and,

    3. Biceps tendinitis of left upper extremity.

*See* Exhibit 11 (SOS Institute Records).  After examining Plaintiff and reviewing his MRI, Dr. Lee concluded that "Given the mechanism of injury and temporal correlation of symptoms onset following traumatic incident, these injuries are in all reasonable medical probability related to the accident."  *See* Exhibit 11 (SOS Institute Records).  Dr. Lee has concluded that if Plaintiff is still in pain (which he is), it would be reasonable and necessary to treat Plaintiff by providing him with injections to his shoulder.  *See* Exhibit 12 at 48:1-50:7 (Dr. Lee Depo).  Dr. Lee has stated that if Plaintiff's pain is persistent then a procedure called an arthroscopy may need to be performed.  *See* Exhibit 12 at 48:16-49:8 (Dr. Lee Depo).  Gulf Logistics has neither paid nor agreed to pay for the treatment Plaintiff received at Spine & Orthopedic Surgical Institute.  *See* Exhibit 13 (Billing Affidavit from Spine & Orthopedic Surgical Institute).  Gulf Logistics has not agreed to pay for the arthroscopy.  *See* Exhibit 7 (Sheppard Declaration).

    On June 27, 2018, Plaintiff received further medical treatment in connection with the Incident.  *See* Exhibit 14 (Patient First Orthopedics Records).  Plaintiff had

his shoulder examined by Dr. Gregory Harvey, a board-certified orthopedic surgeon of Patient First Orthopedics.  Dr. Harvey's examination revealed that Plaintiff still had tenderness in his shoulder.  *See* Exhibit 9 at 16:15-22 (Dr. Harvey Deposition).  Dr. Harvey's examination revealed that Plaintiff had restrictions to his range of motion.  *See* Exhibit 9 at 16:24-17:5 (Dr. Harvey Deposition).  Dr. Harvey's examination revealed an impingement in Plaintiff's shoulder that was *still* causing him pain.  *See* Exhibit 9 at 17:6-9 (Dr. Harvey Deposition).  As part of his examination, Dr. Harvey reviewed the January 12, 2018 MRI.  *See* Exhibit 14 (Patient First Orthopedics Records).  As previously discussed, the MRI revealed extensive bone marrow edema and a microtrabecular fracture and possible SLAP tear.  *See* Exhibit 9 at 18:21-19:2; 19:5-16 (Dr. Harvey Deposition).[7] Microtrabecular fractures are painful and can be as painful as a regular fracture.  *See* Exhibit 9 at 20:3-5 (Dr. Harvey Deposition).  Dr. Harvey has testified that Plaintiff should not have been released to full-duty because it would be too difficult to fulfill the full-duty requirements.  *See* Exhibit 9 at 29:21-30:2 (Dr. Harvey Depo).  Dr. Harvey testified that the treatment he provided, including the epidural steroid injection that he provided, was medically necessary.  *See* Exhibit 9 at 36:10-15 (Dr.

---

[7] Plaintiff was sent to another MRI facility, Galleria MRI, for an arthrogram to rule out the SLAP tear.  *See* Exhibit 18 (Galleria MRI Medical Records).  Gulf Logistics has neither paid nor agreed to pay for the treatment Plaintiff received at Galleria MRI.  *See* Exhibit 19 (Billing Affidavit from Galleria MRI); *see also* Exhibit 7 (Sheppard Declaration).

Harvey Depo). Gulf Logistics has neither paid nor agreed to pay for the treatment Plaintiff received at Patient First Orthopedics. *See* Exhibit 15 (Billing Affidavit from Patient First Orthopedics); *see also* Exhibit 7 (Sheppard Declaration).

## II. LEGAL STANDARD

### A. SUMMARY JUDGMENT STANDARDS

Summary judgment is only proper if the movant shows that there are no genuine disputes of material fact and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Tolan v. Cotton,* 572 U.S. 650, 657, 134 S. Ct. 1861, 1866, 188 L. Ed. 2d 895 (2014); *Rogers v. Bromac Title Servs., L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014). The purpose of summary judgment is to pierce the pleadings and to assess the proof offered by the parties to determine whether there is a genuine need for a trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). It is designed to isolate and dispose of factually unsupported claims and defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

A defendant moving for summary judgment must demonstrate the absence of a genuine dispute of material fact by either (1) submitting summary-judgment evidence that negates the existence of a material element of the plaintiff's claim or (2) showing there is no evidence to support an essential element of the plaintiff's claim. *J. Geils Band Emp. Benefit Plan v. Smith Barney Shearson, Inc.*, 76 F.3d 1245, 1251 (1st Cir. 1996); *see Celotex Corp.*, 477 U.S. at 324-25. Only if

Defendant meets this burden is Plaintiff required to respond by summary-judgment proof to show genuine disputes of material fact. *See* FED. R. CIV. P. 56(e)(3).

In determining whether there are genuine disputes of material fact that prevent summary judgment, the Court must consider all evidence and inferences in the light most favorable to plaintiffs as the nonmovants. *Rogers*, 755 F.3d at 350; *Garcia v. Pueblo Cty. Club*, 299 F.3d 1233, 1236-37 (10th Cir. 2002). Similarly, the Court must resolve all reasonable doubts about the acts in favor of plaintiffs as the nonmovant. *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 455-56 (5th Cir. 2005). If, however, the party moving for summary judgment fails to satisfy its initial burden of demonstrating the absence of a genuine issue of material fact, the motion must be denied, regardless of the nonmovant's response. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). Also, a court may make no credibility determinations or weigh any evidence, and must disregard all evidence favorable to the moving party that the jury is not *required* to believe. *Rivas de Rios v. Wal-Mart Stores Texas, L.L.C.*, No. 1:15-217, 2017 WL 1032118, at *2 (S.D. Tex. Feb. 8, 2017) (emphasis added).

Summary judgment may be appropriate when the questions to be decided are issues of law. *Flath v. Garrison Pub. Sch. Dist.*, 82 F.3d 244, 246 (8th Cir. 1996). When the application of a rule of law depends on the resolution of disputed facts, the motion presents a mixed question of law and fact. In that situation, the granting

of summary judgment is not appropriate. *See*, *e.g.*, *Lujan v. National Wildlife Fed'n*, 479 U.S. 871, 889 (1990) (plaintiff's standing to sue depended on disputed activities of plaintiff); *St. Romain v. Indus. Fabrication & Repair Serv., Inc*., 203 F.3d 376, 378 (5th Cir. 2000).

### III. THE COURT SHOULD DENY DEFENDANT'S MOTION

#### A. Gulf Logistics Refuses to Pay Plaintiff's Maintenance and Cure, Which Subjects Them to Punitive Damages

The United States Supreme Court has recognized that a plaintiff's ability to recover punitive damages under maritime law depends "on the particular claims involved." *The Dutra Grp. v. Batterton*, 139 S. Ct. 2275, 2278 (2019). Gulf Logistics cannot and does not dispute that punitive damages are available "for the willful and wanton disregard of the maintenance and cure obligations." *See Atlantic Sounding Co. v. Townsend*, 557 U.S. 404, 424-25 (2009); *see also Morales v. Garijak, Inc*., 829 F.2d 1355, 1358 (5th Cir. 1987) (abrogated on other grounds by *Guevara v. Maritime Overseas Corp*., 59 F.3d 1496 (5th Cir. 1995) ("If the shipowner, in failing to pay maintenance and cure, has not only been unreasonable but has been more egregiously at fault, he will be liable for punitive damages and attorney's fees. We have described this higher degree of fault in such terms as callous and recalcitrant, arbitrary and capricious, or willful, callous and persistent.")). "Maintenance" refers to the obligation to provide "food and lodging" to Plaintiff following his injury. *Alario v. Offshore Service Vessels*, LLC, 477 Fed. Appx. 186,

188 (5th Cir. 2012). "Cure" refers to Gulf Logistics' obligation to pay medical expenses, in full. *Townsend, 557 U.S.* at 413; *Alario*, 477 Fed. Appx. at 188.

Until an injured seaman reaches the point of Maximum Medical Improvement ("MMI") or maximum medical cure, he is entitled to maintenance and cure benefits for injuries incurred in the course of his employment. *Vaughan v. Atkinson*, 369 U.S. 527 (1962). A seaman reaches MMI when it is probable that further treatment will result in no betterment of the seaman's condition. *Springborn v. American Commercial Barge Lines, Inc.*, 767 F.3d 89, 95 (5th Cir.1985). "It is the medical, not the judicial, determination of permanency that terminates the right to maintenance and cure." *Tullos v. Resource Drilling, Inc.*, 750 F.2d 380, 388 (5th Cir.1985) (*citing Hubbard v. Faros Fisheries, Inc.*, 626 F.3d 196, 202 (1st Cir.1980)). Ambiguities or doubts about the seaman's right to maintenance and cure should be resolved in favor of the seaman. *Alario*, 477 Fed. Appx. at 188. In fact, when the opinions of doctors conflict on the seaman's condition, the court must resolve the conflict in favor of the seaman's right to maintenance and cure. *Rowan v. Chem Carrier Towing, LLC*, 2015 WL 2097572, at *6 (E.D. La. May 5, 2015) (*citing Tullous v. Resources Drilling Inc.*, 750 F.2d 380, 389 (5th Cir. 1985); *Breese v. AWI, Inc.*, 823 F.2d 100, 104 (5th Cir. 1987) ("The Fifth Circuit has repeatedly held that conflicting diagnoses and prognoses from various physicians present a question of fact as to the seaman's entitlement to maintenance and cure benefits and

as to whether an employer's termination of maintenance and cure benefits was arbitrary or capricious.")).

Gulf Logistics suggests that they have satisfied their maintenance obligations because they continued to employ and pay Plaintiff until he reached MMI. The evidence in this case shows: (a) Plaintiff did not reach MMI before his employment ended; (b) Plaintiff did not reach MMI before he began treating with Southeast Injury Clinic, Patient First Orthopedics, and Spine & Orthopedic Surgical Institute; and (c) Plaintiff still has not reached MMI. As Plaintiff may require future treatment, dismissal of Plaintiff claim for maintenance would not be proper.

Gulf Logistics still owes maintenance duties towards Plaintiff. The Western District of Louisiana's decision *Moody v. Noble Drilling (U.S.) LLC* is instructive on this issue. 2016 WL 6999442, at *3-4 (W.D. La. Nov. 28, 2016). In *Moody*, a shipowner moved for summary judgment on its employee's claims for punitive damages for failure to pay maintenance. *Id*. at *3. At the time of the shipowner's motion, it was undisputed that the shipowner had paid its employee $35 a day post-accident and there was "no basis, at [that] time, for a claim that maintenance ha[d] not been properly paid." *Id*. But the Court still denied the shipowner's motion as "premature" because "[t]he possibility exist[ed], however, that such a claim could arise in the future." *Id*. The same is true here. While Gulf Logistics paid Plaintiff for the work he performed during his employment, Plaintiff may find himself unable

to work for periods of time in order to obtain medical treatment recommended to him.

Gulf Logistics has neither paid nor agreed to pay for the treatment Plaintiff received at Southeast Injury Clinic, Patient First Orthopedics, Spine & Orthopedic Surgical Institute, MRI Centers of Texas, and Galleria MRI. *See* Exhibit 6, 10, 15, and 19 (Billing Affidavits from Southeast Injury Clinic, Patient First Orthopedics, and Spine & Orthopedic Surgical Institute); *see also* Exhibit 7 (Sheppard Declaration). Gulf Logistics argues they are not required to pay cure on the medical treatment provided to Plaintiff by Southeast Injury Clinic, Patient First Orthopedics, and Spine & Orthopedic Surgical Institute. *See* Gulf Logistics' Motion. Gulf Logistics suggests that Plaintiff's initial return to work, despite his complaints, demonstrates he reached MMI. There argument is conjecture and is not the law. Moreover, as Dr. Harvey testified, Plaintiff should not have been released to full-duty because it would be difficult to adequately fulfill the full-duty requirement. *See* Exhibit 9 at 29:21-30:2 (Dr. Harvey Depo). Plaintiff had not reached MMI when he received physical therapy. Plaintiff had not reached MMI when he obtained an MRI that revealed a microtrabecular fracture. Plaintiff had not reached MMI when he received care from orthopedic surgeons. Plaintiff had not reached MMI when he received an injection in his shoulder. Dr. Lee has testified that it would be reasonable and necessary to provide future treatment to Plaintiff by providing him with

additional injections to his shoulder. *See* Exhibit 12 at 48:1-50:7 (Dr. Lee Depo). If treatment is still an option, a person has not reached MMI. Dr. Lee has stated that if Plaintiff's pain is persistent then there is an option to perform an outpatient procedure called an arthroscopy to discovery if there are any other underlying issues. *See* Exhibit 12 at 48:16-49:8 (Dr. Lee Depo). These facts demonstrate that Plaintiff had not reached MMI when Gulf Logistics stopped paying for his cure and Plaintiff still has not reached MMI.

### B. Gulf Logistics Has Failed to Pay Maintenance and Cure; Punitive Damages Are a Question for the Jury

As demonstrated, Plaintiff had not reached MMI when Gulf Logistics denied him cure. Plaintiff still has not reached MMI. The summary judgment evidence shows that Plaintiff may require additional treatment and that Gulf Logistics has failed to guarantee payment of Plaintiff's existing and potential future-medical costs. A jury could award punitive damages based on this evidence alone.

Whether Gulf Logistics' failures amount to a willful and wanton refusal is a subjective determination that includes assessing whether it is in "bad faith." *Alexander v. CHS Inc. of Minnesota*, 2018 WL 3548484, at *4 (E.D. La. July 24, 2018) ("A seaman may recover punitive damages under general maritime law for the willful and wanton disregard of the maintenance and cure obligation. Such conduct requires an element of bad faith.") (*citing Atl. Sounding Co. v. Townsend*, 557 U.S. 404, 424 (2009)) (internal quotations omitted). Under well-established

precedent, such determinations are the near-exclusive province of the jury. *See*, *e.g.*, *Meaux v. Cooper Consol.*, LLC, 477 F. Supp. 3d 515, 528 (E.D. La. 2020), reconsideration denied, 2020 WL 5436572 (E.D. La. Sept. 10, 2020) and motion to certify appeal granted, reconsideration denied, 2021 WL 2635469 (E.D. La. June 25, 2021) ("Whether the refusal to pay benefits based on a medical report was done in bad faith is a question of fact for trial.") (*citing Tullos v. Res. Drilling, Inc.*, 750 F.2d 380, 385 (5th Cir. 1985). Willful and wanton negligence (i.e., gross negligence) has a subjective element inquiring into the defendant's state of mind—and because issues of intent are usually best left to the trier of fact to resolve based on all the evidence and surrounding circumstances—determining that issue by summary judgment usually will be inappropriate. The Fifth Circuit has held that "Summary judgment is particularly inappropriate where the issue involved is the state of mind of the defendant. *Ross v. John's Bargain Stores Corp.*, 464 F.2d 111, 115 (5th Cir. 1972). Summary judgment is thus improper.

Gulf Logistics' failure to guarantee payment of Plaintiff's existing and unpaid medical expenses supports a finding of punitive damages. Gulf Logistics' failure to guarantee payment of medical treatment Plaintiff will require in the future, can absolutely support punitive damages. Moreover, Dr. Roberts, Dr. Lee, and Dr. Harvey have been deposed and have expressed opinions that Plaintiff's treatment was reasonable and necessary and/or that he may require additional treatment in the

future. Maritime law recognizes that a defendant's decision to ignore treatment recommended by a physician subjects the defendant to exposure punitive damages. *See Breese*, 823 F.2d at 104 (5th Cir. 1987) ("The Fifth Circuit has repeatedly held that conflicting diagnoses and prognoses from various physicians present a question of fact … as to whether an employer's termination of maintenance and cure benefits was arbitrary or capricious.")); *see also Tullous*, 750 F.2d at 389; *Rowan*, 2015 WL 2097572, at *6 (denying summary judgment on issue of fact about whether defendant's denial of cure based solely on its own expert's opinion was arbitrary and capricious).

- Gulf Logistics has been on notice for years that Plaintiff incurred additional medical expenses as a result of the Incident.
- Gulf Logistics' blind justification for denying maintenance and cure conveniently ignores the facts.
- Gulf Logistics does not mention that a physician's assistant, not a physician, first suggested that Plaintiff could return to work. *See* Exhibit 1 (Complete Occupational Health Records).
- Gulf Logistics does not mention that Dr. LaSalle did not document the physical testing he performed (*e.g.* whether he performed the O'Brien's or Hawkins tests, or any tests necessary to identify a microtrabecular fracture). *See* Exhibit 2 (Gulf Coast Orthopedics Records).
- Gulf Logistics suggests Plaintiff's responses on an application for a merchant mariner medical certificate are inconsistent with his claims of permanent injuries. *See* Gulf Logistics' Motion.
- Gulf Logistics ignores the fact that Dr. Platt (the physician that examined Plaintiff in connection with his application for merchant mariner medical certificate) did not perform the physical tests you should perform to identify a microtrabecular fracture and/or other problems in a person's shoulder (*e.g.* the O'Brien's and Hawkins tests). *See* Exhibit 16 at 43:3-44:4 (Dr. Platt Depo).

- Gulf Logistics suggests Plaintiff's failure to note joint pain on some medical history forms somehow obviates their responsibility to provide Plaintiff with maintenance and cure. *See* Gulf Logistics' Motion. That is not the law.
- Gulf Logistics conveniently does not mention that the microtrabecular fracture Plaintiff sustained was not to a joint. *See* Exhibit 9 at 20:6-11 (Dr. Harvey Depo).
- Gulf Logistics does not mention that Dr. Platt admitted that the categories in the medical conditions section of the form he had Plaintiff complete are vaguely described, could be written better, could be more specific, and that lay persons (like Plaintiff) may not even consider certain areas of the body, including the shoulder, to be a joint. *See* Exhibit 16 at 37:10-38:11 (Platt Depo); *compare with* Gulf Logistics Motion.
- Gulf Logistics ignores the fact that Dr. LaSalle failed to order an MRI to determine whether Plaintiff had an underlying issue that was causing his pain (which turned out to be the case). *See* Exhibit 2 (Gulf Coast Orthopedics Records).

The takeaway from Gulf Logistics repeated omission of these facts is that they did not consider any of these facts when denying Plaintiff's maintenance and cure. The jury could find on this record that the facts Gulf Logistics considers and/or ignored was arbitrary and capricious.

For this reason, Gulf Logistics Motion should be denied.

C. **Plaintiff has Pled Facts Supporting His Maintenance-and-Cure Claims**

Gulf Logistics suggests that Plaintiff has not pled a maintenance and cure claim. Gulf Logistics' Motion suggests that Plaintiff only included past and future maintenance and cure in his "Prayer" but did not "plead factual allegations that Gulf Logistics failed to pay maintenance and cure or any factual allegations giving rise to

- 17 -

punitive damages for the alleged failure to pay maintenance and cure on the facts did not support same." *See* Gulf Logistics' Motion a pp. 7. Gulf Logistics clearly did not read Plaintiff's Amended Complaint which, in the Facts section, states:

> "Plaintiff suffered serious and permanent injuries on or about May 24, 2017 when he was working as a seaman for Defendant Gulf Logistics, LLC, Defendant Gulf Logistics Operating, Inc., and/or Defendant Gulf Logistics Services, LLC, (collectively referred to as "Gulf Logistics") aboard the vessel Maggie A, which was owned, operated, and/or managed by Defendant Gulf Logistics, LLC, Defendant Gulf Logistics Operating, Inc., and/or Defendant Gulf Logistics Services, LLC…Plaintiff suffered serious and debilitating injuries to his head, neck, shoulder, back, knee, and other body parts …[Gulf Logistics]…are negligent, negligent per se, grossly negligent and violated the applicable standards of care and laws for the following reasons:…g. failure to provide adequate medical treatment and maintenance and cure… Plaintiff sustained severe injuries, which resulted in physical pain, physical disfigurement, mental anguish, physical impairment, discomfort, and illness. In all reasonable probability, Plaintiff's physical pain, physical impairment, physical disfigurement and mental anguish and distress will continue indefinitely…Plaintiff has incurred and will continue to incur pharmaceutical and medical expenses in connection with his injuries."

*See* Plaintiff's Amended Complaint at pp. 4-7. Plaintiff has pled facts stating (a) he is a seaman; (b) he suffered serious and permanent injuries as a result of, *inter alia*, Gulf Logistics' negligence while working aboard a vessel owned, operated, and/or managed by Gulf Logistics; (c) that his significant and permanent injuries are likely to continue indefinitely; (d) that he has incurred and will continue to incur both pharmaceutical and medical expenses in connection with his injuries; and (e) that Gulf Logistics has failed to provide Plaintiff with the cure that he is entitled to receive.

Plaintiff has pled facts supporting his claim for maintenance and cure.[8]

Gulf Logistics' Motion for Partial Summary Judgment should be denied.

## IV. CONCLUSION AND PRAYER

Plaintiff respectfully requests that the Court DENY Gulf Logistics' Motion and for all other relief Plaintiff may be entitled.

---

[8] In the alternative, if the Court finds Plaintiff's pleadings to be defective, Plaintiff requests leave of Court to amend his pleadings accordingly. Gulf Logistics is well aware of Plaintiff's maintenance and cure claims and would not be prejudiced by an amendment. *See* Exhibit 17 (emails from A. Meche).

MORROW & SHEPPARD LLP

*/s/ Daniel E. Sheppard*

Daniel E. Sheppard
Attorney-In-Charge
State Bar No. 24103929
John Sheppard
State Bar No.  24051331
Nicholas A. Morrow
State Bar No.  24051088
5151 San Felipe Street, Suite 100
Houston, TX  77056
713.489.1206 tel
713.893.8370 fax
All E-Service To:
msfiling@morrowsheppard.com
nmorrow@morrowsheppard.com
jsheppard@morrowsheppard.com
dsheppard@morrowsheppard.com

COUNSEL FOR PLAINTIFF

## Certificate of Service

I hereby certify that on November 19, 2021, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF filing system.  Notice of this filing will be sent to counsel for all parties by operation of the Court's electronic filing system.

*/s/Daniel E. Sheppard*
Daniel E. Sheppard